**Fill in this information to identify your case:**

Debtor 1: Darina Talanga
First Name / Middle Name / Last Name

Debtor 2: _____
(Spouse, if filing) First Name / Middle Name / Last Name

United States Bankruptcy Court for the: Middle District of Florida (State)

Case number (If known): 17-09357

# Official Form 427
## Cover Sheet for Reaffirmation Agreement 12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

1. **Who is the creditor?** Sheffield Financial
   Name of the creditor

2. **How much is the debt?**
   On the date that the bankruptcy case is filed $ 6,083.89
   To be paid under the reaffirmation agreement $ 6,083.89
   $ 212.39 per month for 33 months (if fixed interest rate)

3. **What is the Annual Percentage Rate (APR) of interest?** (See Bankruptcy Code § 524(k)(3)(E).)
   Before the bankruptcy case was filed 10.90 %
   Under the reaffirmation agreement 10.90 % ☑ Fixed rate
   ☐ Adjustable rate

4. **Does collateral secure the debt?**
   ☐ No
   ☑ Yes. Describe the collateral. 2015 Sea Doo PWC
   Current market value $ 3,950.00 NADA Clean Retail Value

5. **Does the creditor assert that the debt is nondischargeable?**
   ☑ No
   ☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

6. **Using information from Schedule I: Your Income** (Official Form 106I) and **Schedule J: Your Expenses** (Official Form 106J), fill in the amounts.

   Income and expenses reported on Schedules I and J | Income and expenses stated on the reaffirmation agreement

   6a. Combined monthly income from line 12 of Schedule I   $ 7,400.00
   6e. Monthly income from all sources after payroll deductions   $ 7,400.00

   6b. Monthly expenses from line 22c of Schedule J   $ 9,636.00
   6f. Monthly expenses   − $ 9,636.00

   6c. Monthly payments on all reaffirmed debts not listed on Schedule J   − $ 0
   6g. Monthly payments on all reaffirmed debts not included in monthly expenses   − $ 0

   6d. Scheduled net monthly income   $ (2,236)
   Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets.
   6h. Present net monthly income   $ (2,236)
   Subtract lines 6f and 6g from 6e. If the total is less than 0, put the number in brackets.

| | | |
|---|---|---|
| 7. **Are the income amounts on lines 6a and 6e different?** | ☑ No<br>☐ Yes. | Explain why they are different and complete line 10. _____ |

| | | |
|---|---|---|
| 8. **Are the expense amounts on lines 6b and 6f different?** | ☑ No<br>☐ Yes. | Explain why they are different and complete line 10. _____ |

| | | |
|---|---|---|
| 9. **Is the net monthly income in line 6h less than 0?** | ☐ No<br>☑ Yes. | A presumption of hardship arises (unless the creditor is a credit union).<br>Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10.<br><br>Family Assistance |

10. **Debtor's certification about lines 7-9**

    If any answer on lines 7-9 is *Yes*, the debtor must sign here.

    If all the answers on lines 7-9 are *No*, go to line 11.

    I certify that each explanation on lines 7-9 is true and correct.

    X /s/ [signature] _____   X _____
    Signature of Debtor 1                                                  Signature of Debtor 2 (Spouse Only in a Joint Case)

    DARINA JA/ANGA

11. **Did an attorney represent the debtor in negotiating the reaffirmation agreement?**
    ☐ No
    ☑ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?
    ☐ No
    ☑ Yes

## Part 2: Sign Here

**Whoever fills out this form must sign here.**

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement.*

X /s/ [signature] _____   Date 12/14/2017
   Signature                                                                              MM / DD / YYYY

Lindsay Holt, Bankruptcy Officer II
Printed Name

Check one:
☐ Debtor or Debtor's Attorney
☑ Creditor or Creditor's Attorney

B2400A (Form 2400A) (12/15)

> Check one.
> ☑ Presumption of Undue Hardship
> ☐ No Presumption of Undue Hardship
> *See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
### __Middle__ District of __Florida__

In re __Darina Talanga__,                    Case No. __17-09357__
*Debtor*

                                              Chapter __7__

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** __Sheffield Financial__

☐ Check this box if Creditor is a Credit Union

### I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this Reaffirmation Documents packet.**

1. Brief description of the original agreement being reaffirmed: __Installment/Revolving Loan__

   *For example, auto loan*

2. ***AMOUNT REAFFIRMED***:    $ __6,083.89__

   The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before the date you sign this Reaffirmation Agreement.

   *See the definition of "Amount Reaffirmed" in Part V.C below.*

3. The ***ANNUAL PERCENTAGE RATE*** applicable to the Amount Reaffirmed is __10.90__ %.

   *See definition of "Annual Percentage Rate" in Part V.C below.*

   This is a *(check one)*  ☑ Fixed rate          ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

4. Reaffirmation Agreement Repayment Terms:

☑ If fixed term, $ 212.39 per month for 33 months starting on 08/02/2017.

☐ If not fixed term, describe repayment terms: This is a simple interest loan. Continuing payments will be the same amount. However, the final payment may be more or less than the normal monthly payment amount depending on the timeliness of future payments paid.

5. Describe the collateral, if any, securing the debt:

Description: 2015 Sea Doo PWC
Current Market Value $ 3,950.00 NADA Clean Retail Value

6. Did the debt that is being reaffirming arise from the purchase of the collateral described above?

☑ Yes    ☐ No

If yes, what was the purchase price for the collateral? $ 9,775.03
If no, what was the amount of the original loan? $ _____

7. Detail the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due (including fees and costs) | $ 6,083.89 | $ 6,083.89 |
| Annual Percentage Rate | 10.90 % | 10.90 % |
| Monthly Payment | $ 212.39 | $ 212.39 |

8. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit: _____

## II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

1. Were you represented by an attorney during the course of negotiating this agreement?

Check one.    ☑ Yes    ☐ No

2. Is the creditor a credit union?

Check one.    ☐ Yes    ☑ No

3. If your answer to EITHER question 1. or 2. above is "No" complete a. and b. below.

  a.. My present monthly income and expenses are:

    i. Monthly income from all sources after payroll deductions (take-home pay plus any other income)    $ 7,400.00

    ii. Monthly expenses (including all reaffirmed debts except this one)    $ 9,424.00

    iii. Amount available to pay this reaffirmed debt (subtract ii. from i.)    $ 0

    iv. Amount of monthly payment required for this reaffirmed debt    $ 212.39

*If the monthly payment on this reaffirmed debt (line iv.) **is greater than** the amount you have available to pay this reaffirmed debt (line iii.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

  b. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or on me because:

    Check one of the two statements below, if applicable:

    ☐ I can afford to make the payments on the reaffirmed debt because my monthly income is greater than my monthly expenses even after I include in my expenses the monthly payments on all debts I am reaffirming, including this one.

    ☑ I can afford to make the payments on the reaffirmed debt even though my monthly income is less than my monthly expenses after I include in my expenses the monthly payments on all debts I am reaffirming, including this one, because: __Family Assistance__

    Use an additional page if needed for a full explanation.

4. If your answers to BOTH questions 1. and 2. above were "Yes," check the following statement, if applicable:

    ☐ I believe this reaffirmation agreement is in my financial interest and I can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I (We) hereby certify that:

    i. I (We) agree to reaffirm the debt described above.

    ii. Before signing this reaffirmation agreement, I (we) read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

    iii. The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

    iv. I am (We are) entering into this agreement voluntarily and fully informed of my (our) rights and responsibilities; and

    v. I (We) have received a copy of this completed and signed Reaffirmation Documents packet.

SIGNATURE(S):

Date 12-7-2017    Signature X _[signed]_ Darina Talavkyn
                                                                       _Debtor_

Date _____    Signature _____
                                                             _Joint Debtor, if any_

If a joint reaffirmation agreement, both debtors must sign.

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor **Sheffield Financial**     PO Box 1847 Wilson, NC 27894-1847
              _Print Name_                            _Address_

Lindsay Holt, Bankruptcy Officer II    _[signed]_    12/14/17
   _Print Name of Representative_         _Signature_         _Date_

## IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 12-7-2017 Signature of Debtor's Attorney _[signed]_

        Print Name of Debtor's Attorney    Herbert R. Donica

# V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, detailed in Part B below, are not completed, the reaffirmation agreement is not effective, even though you have signed it.

### A.   DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the reaffirmation agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this Reaffirmation Documents packet requiring signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required.

5. **Can you cancel the agreement?** You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this reaffirmation agreement be effective?**

   a. **If you *were represented* by an attorney during the negotiation of your reaffirmation agreement**

   i. **if the creditor is not a Credit Union**, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship in which case the agreement becomes effective only after the court approves it;

   ii. **if the creditor is a Credit Union**, your reaffirmation agreement becomes effective when it is filed with the court.

   b. **If you *were not represented* by an attorney during the negotiation of your reaffirmation agreement**, the reaffirmation agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing, at which time the judge will review your reaffirmation agreement. If the judge decides that the reaffirmation agreement is in your best interest, the agreement will be approved and will become effective. However, if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your reaffirmation agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the reaffirmation agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B.  **INSTRUCTIONS**

1. Review these Disclosures and carefully consider the decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney section (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement unless your reaffirmation agreement is for a consumer debt secured by a lien on your real property, such as your home. You can use Form B2400B to do this.*

B2400A (Form 2400A) (12/15)            Page 7

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The amount of debt includes any unpaid fees and costs arising on or before the date you sign this agreement that you are agreeing to pay. Your credit agreement may obligate you to pay additional amounts that arise after the date you sign this agreement. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this agreement.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage Rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

**SHEFFIELD FINANCIAL**
A Division of Branch Banking and Trust Company
P.O. Box 1704, Clemmons, NC 27012
This is a consumer credit transaction.

Date: March 28, 2015

NOTE & SECURITY AGREEMENT ("Contract") - Consumer
DEBTOR/BORROWER'S NAME AND ADDRESS:
DARINA TALANGA

1. PROMISE TO PAY — "Debtor" (which means all debtors jointly and severally) promises to pay to the order of Sheffield Financial, a division of Branch Banking and Trust Company ("Sheffield") any and all amounts due under this Contract including but not limited to the Amount Financed shown below plus the Total Prepaid Finance Charges shown below (collectively, the "Principal"), and daily simple interest on the Principal at the rate of 10.90% per annum ("Interest"). Interest shall begin to accrue on 3/28/2015 and continue to accrue at the aforementioned rate until the unpaid balance of the Principal has been paid in full. Debtor also agrees to pay any Returned Item Charges, Late Charges and other fees, charges, and costs as provided in this Contract. You promise to make payments in accordance with the "Payment Schedule" shown below in U.S. Dollars. You promise to make payments on or before the same day each month as the first payment due date shown in the Payment Schedule below. You promise to pay all other amounts that may become due under the terms of the Note. Each payment shall be applied first to any other charges including Late Charge, then to Interest accrued, then to the unpaid balance of the Principal.

2. PROPERTY OFFERED AS SECURITY. To secure the payment and performance of any obligations arising under this Contract, Debtor gives Sheffield a security interest in the personal property described below and as may be more specifically described in the Bill of Sale or invoice evidencing the sale of the personal property to Debtor, which Bill of Sale or invoice are incorporated herein by reference thereto ("Property Collateral"). The Property Collateral will be principally kept at the physical address of Debtor named above until all amounts due under this Contract are paid in full unless agreed to otherwise by Sheffield. (Please attach separate sheet, Bill of Sale or invoice listing additional equipment)

| Model Yr | Manufacturer | Model | Serial Number or VIN |
|---|---|---|---|
| 2015 | BRP | 39FA | YDV19597L415 |
| | | | |

## TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 10.90 % | U S $ 2,968.37 | $ 9,775.03 | U S $ 12,743.40 |

**PAYMENT SCHEDULE**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENT | WHEN PAYMENTS ARE DUE | NUMBER OF PAYMENTS | AMOUNT OF PAYMENT | WHEN PAYMENTS ARE DUE |
|---|---|---|---|---|---|
| 60 | $ 212.39 | Monthly beginning: 05/02/2015 | | $ | Monthly beginning: |

IF THIS BLOCK IS CHECKED ☐ SEE ATTACHED SCHEDULE A.
**Late Charge.** If a payment is not paid on or before the 15th day after it is due, Debtor may be charged 4% of the amount of the payment due.
**Prepayment.** You may prepay all or any portion of your debt under this Contract at any time without incurring a prepayment penalty, but you will not be entitled to a refund of the Total Prepaid Finance Charges.
**Security Interest.** You are giving a security interest in the Property Collateral being purchased.
**Additional Information:** See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled due date, and prepayment refunds and penalties. ["E" means an estimate.]

## ITEMIZATION OF AMOUNT FINANCED
The Amount Financed of $ 9,775.03 is distributed as follows:
$ 9,740.73 Amount paid on your account.
Amount paid to others on your behalf:
$ 0.00 Public Officials
$ 0.00 Insurance Companies for Property Insurance*
$ 0.00 Extended Warranty or Breakdown Insurance*
$ 34.30 Florida for Documentary Stamp Tax
$ 0.00 Other*

Prepaid Finance Charges:
$ 0.00 Loan Origination Fee*
$ 0.00 Other*
$ 0.00 Total Prepaid Finance Charges*

* Sheffield may be retaining a portion of this amount.
WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT.

The undersigned agrees to the terms hereof and acknowledges, before signing, receipt of a copy of all pages of this Contract to keep, and that each such was completely filled in before signing. If any of the undersigned is signing this Contract as a cosigner, the undersigned acknowledges receipt of the Cosigner Notices contained in this Contract and of each writing that obligates each Debtor on this debt.
**CAUTION- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**
The foregoing Note and Security Agreement is hereby witnessed by:

_____ (SEAL)           _____ (SEAL)
Authorized Dealer Representative                  Debtor/Borrower #1
                                                  _____ (SEAL)
                                                  Debtor/Borrower #2 and/or Cosigner

Page 1 of 3
Doc ID: 10005     Lender No: 01-002958636                            Installment Loan Contract-Consumer-FL-January, 2013

BB&T CONFIDENTIAL

3. **TRUTH-IN-LENDING DISCLOSURES.** The amounts disclosed as "FINANCE CHARGE" and "TOTAL OF PAYMENTS" have been computed on the assumption that all payments will be received on the exact scheduled due dates. If payments are made early, these amounts will decrease. Payments made after due dates will increase these amounts. The amount of any net increase or decrease will be reflected in the amount of the final payment, or may increase or reduce the number of payments necessary to pay the Contract in full. If Debtor pays the loan in full early, Debtor will not be charged a penalty for such prepayment.

4. **PAYMENTS.** Except as may be provided in this section or as may be otherwise agreed upon by Sheffield, all payments must be mailed or delivered to Sheffield at the payment processing center address on the billing statement. Payments received after 5:00 p.m. EST on any banking day will be credited on the next banking day. Credit to the account may be delayed up to five days if payment is (i) not received at the payment processing center address shown on the billing statement; or (ii) not accompanied by a remittance coupon. Debtor agrees that any payment may not be deemed received by Sheffield and may be returned to Debtor if the check or money order is: (i) not drawn in U.S. dollars on funds on deposit in the U.S.; (ii) missing a signature; (iii) drawn with different numeric and written amounts; (iv) restrictively endorsed; (v) postdated; or (vi) not paid on presentment. Delayed crediting may cause Debtor to incur a Late Fee and additional interest. Debtor understands and agrees that payments will be posted first to Late Charges and other charges, next to accrued Interest due and then to principal. Sheffield can accept late or partial payments without losing any of its rights under this Contract. Debtor agrees not to send Sheffield partial payments marked "paid in full", "without recourse", or similar language. If Debtor sends such a payment, Sheffield may accept it without losing any of its rights under this Contract. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount, must be sent to Sheffield Financial, P.O. Box 1704, Clemmons, NC 27012.

5. **SECURITY INTEREST.** To secure the indebtedness evidenced by this Contract, Debtor hereby pledges, assigns and conveys to Sheffield, and grants to Sheffield a security interest in the Property Collateral described on Page 1, together with all spare or replacement parts or accessories now or hereafter incorporated on or into the Property Collateral, together also with any insurance or extended warranty written in connection therewith, and all proceeds thereof, additions thereto or substitutions therefore. Debtor further agrees that Sheffield may file any financing statements, lien entry form or other document showing the security interest of Sheffield in the Property Collateral and proceeds thereof without Debtor's signature. In the event state law requires Debtor's signature, Debtor agrees to join in executing all necessary financing statements or other documents in a form satisfactory to Sheffield. Debtor also authorizes Sheffield to charge Debtor's account for any necessary fees to effect the filing of any financing statement or the recording of any lien. If Debtor defaults under this Contract, Sheffield may, to the extent permitted by law, take possession of the Property Collateral, sell the Property Collateral and apply the proceeds to the Debtor's unpaid balance.

6. **INSURANCE.** Debtor agrees to insure the Property Collateral at Debtor's expense against damage, loss, or destruction with policies acceptable to Sheffield, with loss payable to Debtor and Sheffield as their interests may appear. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT. Debtor will keep the Property Collateral insured at all times with the type of insurance and in such manner as Sheffield requires. Debtor shall pay all premiums for such insurance when they are supposed to be paid so the insurance will not lapse. If the Property Collateral is damaged or destroyed, Debtor understands that it is Debtor's loss and not Sheffield's. All insurance proceeds under any insurance policy shall be payable to Sheffield for the amount of any money Debtor owes to Sheffield. Debtor will deliver to Sheffield the insurance policy or policies or a certificate of insurance, which may be applicable for insurance which Debtor obtains. Debtor gives and assigns to Sheffield any unearned insurance premiums which may be returned on cancellation of any insurance policy. Debtor appoints Sheffield as Debtor's attorney-in-fact to settle any insurance claim and to endorse any draft or check which may be payable to Debtor so as to collect any unearned insurance premiums or insurance proceeds. Debtor understands that all insurance proceeds and returned insurance premiums received by Sheffield will be applied against the money Debtor owes Sheffield and any balance remaining will be paid to Debtor.

7. **DEBTOR'S AGREEMENTS, OBLIGATIONS AND AFFIRMATIONS.** Each Debtor acknowledges that time is of the essence and that Debtor will pay to Sheffield when due all amounts due hereunder. Each Debtor covenants that all information supplied to Sheffield is true and correct; that the Property Collateral will be used for personal, family or household purposes; that the Property Collateral will be kept free of all other liens and encumbrances; that the Property Collateral will be maintained in good condition and not allowed to deteriorate, reasonable wear and tear excepted; and that the Property Collateral will not be sold and will be kept at the place shown on Page 1 except upon Sheffield's prior written consent. Any loss, theft or destruction of the Property Collateral shall not relieve Debtor from any obligation to make payments as agreed. In the event that any Debtor has not received any proceeds under this Contract, received title to the Property Collateral or is otherwise deemed to be a guarantor under state or federal law, the parties agree that such Debtor shall be deemed a cosigner of this Contract. All parties to this Contract hereby waive presentment for payment, demand, protest, notice of nonpayment or dishonor and of protest, and any and all other notices and demands whatsoever, and agree to remain bound until the Principal, all accrued interest, and any other charges due hereunder have been paid in full, notwithstanding any release or transfer of the Property Collateral. In the event that suit is instituted to collect any balance due hereunder, Debtor agrees to pay all costs of collection, including reasonable attorneys' fees to the extent allowed by law, plus any additional costs incurred (including attorneys' fees) in protecting or repossessing the Property Collateral. Such attorneys' fees shall include any attorneys' fees awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding. Each Debtor also agrees to reimburse Sheffield for any costs incurred as a result of any breach of the foregoing, and that any costs not immediately so reimbursed may be added to the unpaid balance of the Principal and subjected to Interest accruing at the rate herein provided or such lesser rate as may be the highest rate allowed by law, or if no such maximum rate is specified, at 18% per annum. The Debtor hereby warrants that this Contract is genuine and what it purports to be; that all signatures are the genuine signatures of the persons they purport to be; that all parties to it have capacity to contract; that the Contract is duly executed with proper authority; that the Debtor has no knowledge of any fact which impairs the validity hereof; that the Property Collateral mentioned herein was sold to the Debtor(s) for his, her, their or its own personal ownership and not for another person; and Debtor will not sell, lease, make a gift of, create a lien upon, or otherwise dispose of the property collateral without Sheffield's written consent.

8. **DEFAULT.** Except as provided below and to the extent permitted by applicable law, Debtor will be in default under this Contract, if at any time: (1) Debtor does not make a payment or pay any other sum when due under this Contract; (2) Sheffield receives reasonable evidence that any representation by any Debtor was inaccurate or false; (3) Debtor is in noncompliance with or nonperformance of any obligation or agreement to Sheffield or its affiliates; (4) Sheffield reasonably believes that its security is in danger of being lost or destroyed; (5) Debtor fails to provide adequate and continuous insurance on any Property Collateral as required by this Contract or any other agreement with Sheffield; (6) Sheffield believes that the balance of the debt due herein has become unsecured in whole or in part, or that the prospect of full payment of all amounts due under this Contract is impaired; (7) Debtor moves out of the U.S. or provides Sheffield with a non-U.S. mailing address;(8) unless Debtor lives in Connecticut, the Debtor institutes bankruptcy or insolvency proceedings or such proceedings are instituted against Debtor; (9) the death or incompetency of any individual Debtor; (10) Debtor fails to comply with any agreement or covenant in this Contract; or (11) the actual or defacto dissolution of any corporate Debtor.

9. **REMEDIES IN THE EVENT OF DEFAULT.** Upon default all amounts due hereunder shall, at the option of Sheffield and without notice to the Debtor except as may be required by applicable law, become immediately payable but if the Debtor lives in Virginia no sooner than 10 days after the payment due date and if the Debtor lives in the District of Columbia no sooner than 30 days after the payment due date. Sheffield may enter upon the premises of the Debtor to take possession of any Property Collateral or render it unusable except to the extent prohibited by applicable law. Sheffield may set-off Debtor's liability against or foreclose any funds of Debtor's held by Sheffield or its affiliates in an account of general deposit (other than IRA accounts, Keogh pension plan accounts or similar accounts). Sheffield shall have such additional rights and remedies as may be provided by law. Sheffield may sell any Property Collateral at one or more public or private sales, at any time or place, or through any broker and Sheffield may become the purchaser at any public sale. After deducting all costs and expenses of sale, Sheffield shall apply all proceeds and other credits to the payment of any obligations due to Sheffield and pay any surplus to the Debtor (jointly if more than one), and the Debtor shall remain liable to Sheffield for any deficiency.

**Waiver.** Sheffield may delay enforcing any of Sheffield's rights or elect not to enforce Sheffield's rights without losing any of them. To the extent permitted by applicable law, Debtor agrees that Sheffield is not required to: (a) Demand payment of amounts due; (b) Give notice that amounts due have not been paid or have not been paid in the correct amount, time or manner; or (c) Give notice that Sheffield intends to make, or is making, this Contract immediately due.

**Late Fee; Returned Item charge:** If any portion of a payment (other than a late fee that Sheffield charged on a previous late payment) is more than 15 days past due, Debtor will pay Sheffield a late fee of 4% of the payment due. Debtor will not be charged a late fee more than once for the same payment. If any non-cash item (e.g., check, draft, etc.) presented to Sheffield as payment on this account is dishonored, Debtor may be charged a returned item charge of $40.00.

Page 2 of 3
Doc ID: 10006   Lender No: 01-002956838   Installment Loan Contract-Consumer-FL-January, 2013

BB&T CONFIDENTIAL

**Deferral Charge:** Upon request by the Debtor, Sheffield may extend the scheduled due date of all or any part of an installment payment. If Sheffield agrees to the request of the Debtor, the Debtor will be required to pay a deferment fee not to exceed the greater of 5% of each payment deferred or $50.00 for each extension. The cost of extending required or optional insurance and additional finance charges as a result of the extension may be added to the unpaid balance of the Principal.

**10. RELEASE OF LIEN.** Upon Debtor's payment in full of all sums due hereunder, Sheffield will release its lien, if any, against the Property Collateral. Debtor shall pay the recordation costs assessed by public officials to effectuate the release.

**11. GOVERNING LAW, MISCELLANEOUS.** Sheffield may assign this Contract and the Assignee Creditor shall be entitled to all of the rights and remedies of Sheffield hereunder. This Contract shall be governed by and construed in accordance with the laws of the United States and the State of North Carolina, for all matters related to interest and the exportation of interest. For all other matters, the Contract will be governed by the laws of the United States and the State of North Carolina to the extent permitted by applicable law. This is the entire Contract between Sheffield and Debtor. No other agreements or understandings exist outside of this document.

**12. ARBITRATION: IT IS IMPORTANT THAT YOU READ THIS ARBITRATION PROVISION CAREFULLY. IT PROVIDES THAT YOU MAY BE REQUIRED TO SETTLE A CLAIM OR DISPUTE THROUGH ARBITRATION, EVEN IF YOU PREFER TO LITIGATE SUCH CLAIMS IN COURT. YOU ARE WAIVING RIGHTS YOU MAY HAVE TO LITIGATE THE CLAIMS IN COURT OR BEFORE A JURY. YOU ARE WAIVING YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT, CLASS ACTION ARBITRATION OR OTHER REPRESENTATIVE ACTION WITH RESPECT TO SUCH CLAIMS. IN NO EVENT AND UNDER NO CIRCUMSTANCES SHALL A PARTY BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR INDIRECT DAMAGES, INCLUDING, WITHOUT LIMITATION LOSS OF PROFITS, EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.**

Any claim or dispute ("Claim") by either you or us against the other arising from or relating in any way to your Account, this Contract or any transaction conducted with Sheffield or any of its affiliates, will, at the election of either you or us, be resolved by binding arbitration. This arbitration provision governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any other legal theory and whether such Claim seeks as remedies money damages, penalties, injunctions or declaratory or equitable relief. Claims subject to this arbitration provision include Claims regarding the applicability of this provision or the validity of this Contract. As used in the provision, the term "Claim" is to be given the broadest possible meaning, and includes Claims that arose in the past or arise in the present or future. If a party elects to arbitrate a Claim, the arbitration will be conducted as an individual action. This means that even if a class action lawsuit or other representative action, such as those in the form of a private attorney general action, is filed, any Claim related to the issues of such lawsuits will be subject to arbitration if you or we so elect. Claims subject to arbitration also include Claims that are made as counter claims, crossclaims, third party claims, interpleaders or otherwise. Notwithstanding this arbitration provision, if you have a Claim that is within the jurisdiction of the small claims court, you may file your Claim there. Any appeal from a decision of a small claims court shall be subject this arbitration provision.

The arbitration, including the selection of the arbitrator, shall be administered by the American Arbitration Association ("AAA"), according to the Commercial Arbitration Rules and the Supplemental Procedures for Consumer-Related Disputes. To start an arbitration, you or we must give notice of an election to arbitrate. This notice may be given after a lawsuit has been filed and may be given in papers or motions in the lawsuit. Our notice to you may be provided to you at your last known address or at such other address as we may have in our records; your notice to us shall be given to: Arbitration Administrator, BB&T Legal Department, P.O. Box 1255, Winston-Salem, NC 27102. All fees and costs are allocated pursuant to the rules of the AAA. The arbitrator may award any fees, cost, and expenses including attorney's fees, as permitted by the administrator's rules. If there is a conflict between the rules and procedures of the administrator and any term in this arbitration provision, the terms of this arbitration provision shall prevail. You or the Bank may bring a summary or expedited motion to compel arbitration of any Claim or to stay the litigation of any Claims pending in any court. Such a motion or action may be brought at any time. The failure to initiate or request arbitration at the beginning of a dispute or claim shall not be construed as a waiver of the right to arbitration.

You may obtain a copy of the current rules of the arbitration administrator, including information about arbitration, fees, and instructions for initiating arbitration by contacting the American Arbitration Association, 1633 Broadway, 10th Floor, New York, NY 10019. Phone: 800-778-7879. Web site: www.adr.org.

You and the Bank each agree that under this Contract, you and the Bank are participating in transactions involving interstate commerce which shall be governed by the provisions of the Federal Arbitration Act, Title 9 of the United States Code ("FAA") and not by any state law concerning arbitration. The arbitrator shall follow applicable substantive law to the extent consistent with the FAA, applicable statutes of limitation and applicable privilege rules, and shall be authorized to award all available remedies, including without limitation, damages (to the extent not limited by this Contract), declaratory, injunctive and other equitable relief, and attorneys' fees and costs. The arbitrator shall follow rules of procedure and evidence consistent with the FAA, this provision and the administrator's rules.

Any court with jurisdiction may enter judgment upon the arbitrator's award. The arbitrator's award will be final and binding, except for any appeal right under the FAA. Unless applicable law provides otherwise, the appealing party will pay the cost of appeal, regardless of its outcome. However, we will consider in good faith any reasonable written request for us to bear the cost of your appeal. We will pay any fees or expenses we are required by law to pay or in order to make this arbitration provision enforceable.

This arbitration provision shall survive termination or suspension of the Account or this Contract. If any portion of this arbitration provision is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this arbitration provision or Contract; provided, however, if the limitations on class actions are struck in a proceeding brought on a class, representative or private attorney general basis, without impairing the right to appeal such decision, this entire arbitration provision (other than this proviso) shall be null and void in such proceeding.

---

**NOTICE**
**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

---

**Notice to Cosigner**

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of *your* credit record.

This notice is not the contract that makes you liable for the debt.

---

Florida documentary stamp tax required by law in the amount shown in the Itemization of Amount Financed on page 1 hereof has been paid or will be paid directly to the Department of Revenue. Certificate of Registration # 788013944680-0.

Page 3 of 3
Doc ID: 10005        Lender No: 01-002956639              Installment Loan Contract-Consumer-FL-January, 2013

BB&T CONFIDENTIAL



# Lien and Title Information Report
2949-BB&T Financial FSB

| | | | |
|---|---|---|---|
| **Account No.** | | **VIN** | YDV19597L415 |
| **Loan No.** | | **Branch** | |
| **Loan Suffix** | | | |
| **Customer** | | | |
| **Organization ID** | 2949 | **Organization Name** | BB&T Financial FSB |
| **Lien Start** | | **Lien End** | |
| **Original Loan Amount** | $0.00 | **Lien Balance Amount** | $0.00 |
| **Lien Type** | | **Dealer ID** | |

## Last ELT Transactions

| | |
|---|---|
| **Received On** | |
| 2015-04-07 00:02:04.0 | Add Record - Perfection of Lien |

## Borrower / Lesee Details

**Name**
**Address**

## Vehicle Information

| | | | |
|---|---|---|---|
| **Vehicle Type** | | **Make** | |
| **Model** | | **Year** | |
| **Mileage** | 0 | | |

## Title Information

| | | | |
|---|---|---|---|
| **Title Number** | 118370517 | **Title State** | FL |
| **Tag Number** | FL8684PW | **VIN** | YDV19597L415 |
| **Status** | UNMATCHED | **Match Date** | |
| **Lien Expiration Date** | | **Media Type** | Electronic |

## State Information

| | | | |
|---|---|---|---|
| **Name** | TALANGA,DARINA | **Lessee** | |
| **Address** | | | |
| **Vehicle Type** | | **Make** | YDV |
| **Model** | | **Year** | 2015 |
| **Mileage** | 0 | | |
| **Title State** | FL | **Title Number** | 118370517 |
| **Brands** | | | |

BB&T CONFIDENTIAL