## LEASE AGREEMENT

THIS LEASE made this 10th day of December, 2015 by and between IOANNIS TAGARAS and EVA TAGARAS, with offices located at 2270 Lancaster Drive, Clearwater, Florida 34624, hereinafter referred to as Lessor, and ELITE HOLDINGS, LLC., A Florida Limited Liability Company, whose address is 2241 Nursery Road, Clearwater, Florida 33764, hereinafter referred to as Lessee:

## W I T N E S S E T H:

THAT for and in consideration of the rentals and other sums herein to be paid as rentals by Lessee to Lessor, and further in consideration of the covenants, agreements, conditions and terms on the part of the Lessee and Lessor to be performed, kept, fulfilled as herein set forth, the Lessor does hereby demise and lease unto the Lessee, and the Lessee does hereby lease, hire and rent of and from the Lessor hereof that certain space consisting of approximately 2300 square feet located at 2241 Nursery Road, Clearwater, Florida, said space hereinafter referred to as the "leased premises", all for the lease term set forth hereinafter, upon, under and subject to the terms and conditions and mutual and several covenants and agreements following:

SECTION 1: **TERM.** The term of this Lease shall be for a period of **three (3) years** commencing **December 10, 2015** and terminating on **December 9, 2018**, unless sooner terminated or cancelled pursuant to a provision hereinafter contained. All references to the "term" of the Lease herein shall be deemed to include renewal periods, if any. Provided the Lessee has faithfully and punctually performed all of the terms, conditions and agreements to be kept by the Lessee hereunder, Lessee shall have an option to renew this lease for one (1) additional three (3) year term on the same terms and conditions except that rental payments shall be increased as hereinafter set forth in Section 2. In the event Lessee desires to exercise the option to renew, Lessee shall give Lessor written notice thereof at least ninety (90) days prior to expiration of the initial term of this Lease.

1



EXHIBIT
A
tabbies

SECTION 2: **RENTAL AND OTHER PAYMENTS BY LESSEE.**    In consideration of the rights granted to Lessee hereunder, Lessee shall and hereby agrees to pay to Lessor, without any deduction or offset whatsoever, a minimum gross rental, excluding sales tax, of $74,800.00 due under this Lease.   There shall be no rent due for the period of December 10, 2015 through February 9, 2016.   Commencing on February 10, 2016, Lessee shall pay to Lessor monthly rental payments of $2,200.00, plus Florida State Sales Tax currently seven (7%) percent, in advance, on the tenth day of each and every month through the term of this lease.

Lessee shall pay a late fee equal to Ten (10%) of any monthly installment of the Basic Monthly Rent received by Lessor more than three (3) days after the due date.

Thereafter, in the event Lessee exercises the option to renew this Lease as set forth hereinabove in in Section 1, the monthly rental payment then being paid to the Lessor shall be increased for each ensuing three (3) year terms to $2,400.00, plus Florida State Sales Tax currently seven (7%) percent.

Upon the execution of this Lease, Lessee shall pay to Lessor the sum of $4,554.00 which consists of the first months' rent in the sum of $2,200.00, sales tax of $154.00 and a Security Deposit of $2,200.00.

SECTION 3: **ABATEMENT.** No abatement, diminution or reduction or rents or other charges payable by Lessee under this lease shall be claimed or allowed to Lessee for any inconvenience, interruption, cessation or loss of services or business, or otherwise caused directly or indirectly by any present or future laws, rules, requirements, orders, directives, ordinances or regulations or any governmental authority having jurisdiction of the Premises, or by priorities, rationing, or curtailment of labor or materials or by war or any matter or things resulting therefrom or by any other cause or causes, unless otherwise specifically provided in this lease.

SECTION 4: **SUBORDINATION.**    Lessee's rights under this lease are subordinate to the operation and effect of any mortgages or deeds or trust now or hereafter placed upon the parcel or any part thereof by Lessor, or any renewal, modification, consolidation, replacement or extension of any such mortgages or deeds of trust.   This section shall be self-operative and no further instrument of subordination shall be necessary, but Lessee shall execute promptly any instrument of subordination that may be requested.   Lessee hereby constitutes and appoints Lessor as Lessee's attorney-in-fact to

2

execute any such instrument for and on behalf of Lessee.    Lessee further acknowledges that Lessor may assign or pledge its interest under this lease as security and agrees to abide by the terms of any such assignment or pledge by Lessor.

Lessee shall from time to time, upon ten (10) days' prior written notice requested by Lessor, execute, acknowledge and deliver to Lessor a statement in writing certifying that this lease is unmodified and in full force and effect (or if there have been modifications, that said lease is in full force and effect as modified and stating the modification); the dates to which rent and other charges have been paid; that rent is being paid without claim or offsets and no advance payments have been made, except in accordance with this lease; and that there are no currently pending actions, whether voluntary or involuntary against Lessee under the Bankruptcy laws of the United States or any State law.    It is intended that any such statement delivered pursuant to this provision may be relied upon by any prospective purchaser or mortgagee of Lessor's interest or assignee of any mortgage upon Lessor's interest in the premises.

SECTION 5:        **REAL ESTATE TAXES AND UTILITIES.**    Lessor covenants and agrees to pay and discharge all the real estate taxes and any and all assessments levied against the leased premises and other charges of every description which, during the term of this lease may be levied on or assessed against the leased premises and all interests therein and all improvements and other property thereon, belonging to the Lessor.    Lessee shall be responsible for any personal property tax assessed against the property for improvements or fixtures belonging to the Lessee.

Lessor shall pay the cost of lawn maintenance. Lessee agrees to pay all charges for utilities, including but not limited to gas, water, sewer, garbage removal, electricity and/or other services used or charges imposed in or about or supplied to the premises.    Lessee hereby assumes the full and sole responsibility for the conditions, operation, repair, replacement, maintenance, and management of the premises, except as otherwise expressly provided herein.    If Lessee defaults in the payment of any such charges, Lessor may, at its option, pay them for Lessee's account, in which event any amounts so paid by Lessor shall become immediately due and payable as rent by Lessee to Lessor, together with interest thereon at the maximum rate allowed by law from the date of payment by Lessor until paid by Lessee.    Any such payment by Lessor shall not be deemed to be a waiver of any other rights which Lessor may have under the provisions of this lease or as provided by law.

3

SECTION 6: **SECURITY DEPOSIT**.    Lessor hereby acknowledges receipt of TWO THOUSAND TWO HUNDRED AND 00/100 DOLLARS ($2,200.00) as security for the faithful performance and observance by Lessee of the terms and conditions of this lease.    Lessor and Lessee agree that in the event Lessee defaults in respect of any such terms or conditions, including but not limited to, the payment of rent or additional rent, Lessor may use, apply or retain the whole or any part of this security deposit to the extent required for the payment of such rent or other sum as to which Lessee is in default, or for any sum which Lessor may expend by reason of Lessee's default, including, but not limited to, damage to the premises and the expenses of reletting same, regardless of whether such damage or expenses occurred before or after summary proceedings or other reentry by Lessor.    In the event Lessee fully complies with all of the terms and conditions of this lease, the security deposit shall, within thirty (30) days after the expiration of the term of this lease and after delivery of possession of the premises to Lessor, be returned to Lessee.    If Lessee violates any of said terms, covenants and conditions and if this lease be properly and legally cancelled by Lessor as a result of said violation and breach, then in that event the Lessor shall retain whatever sums it still has as security, not as a penalty or forfeiture, but as part of liquidated and stipulated damages sustained by the Lessor hereunder.

SECTION 7: **USE**.    The Lessee agrees to use the premises for a café serving coffee, beer, wine and pastrie and for no other purpose whatever. Lessee specifically acknowledges that the premises may not be used for the sale of any produce, dry goods or packaged food of any kind other than the food served to customers while on the premises of the café.

SECTION 8: **ALTERATIONS**.    Lessee shall not maintain and/or erect any sign and advertising displays nor make any changes, alterations, decorations, additions, or improvements in, about, or to the premises without Lessor's prior written consent.    Any and all such alterations approved by Lessor shall be paid for by Lessee, shall not damage the premises, and shall be made in good and workmanlike manner and in compliance with all applicable permits and authorizations, building and zoning laws and all other laws, ordinances and regulations.    Lessee shall prevent any lien or charges from being created on or against the premises, and shall discharge all such liens or charges for services rendered or materials furnished immediately after said liens arise or said charges become due and payable.    Should

4

Lessee fail to satisfy said liens or charges within ten (10) days of when said liens or charges become payable, then Lessee shall be considered in default in the same manner as if Lessee failed to make a rental payment.  If any claim or lien shall be filed against the premises or equipment therein which is Lessor's property, or the building or group of buildings of which said premises form a part, arising out of any labor or material furnished or alleged to have been furnished to, or for any change, alteration or addition made by Lessee, Lessee shall cause it to be cancelled and discharged of record by payment, bond or otherwise as allowed by law, at Lessee's expense within ten (10) days after the filing thereof.  Lessee shall also defend on Lessor's behalf, at Lessee's sole cost and expense, any action, suit or proceeding for the enforcement of any such lien, and Lessee shall pay any damages and satisfy and discharge any judgment entered thereon and save Lessor harmless from any claim or damage resulting therefrom.  Any such alterations, additions or improvements by Lessee shall automatically become the property of Lessor without expense to Lessor.

SECTION 9: **BUILDING RULES AND REGULATIONS.**  Lessee agrees to observe and abide by such reasonable rules and regulations for the governance of the Building and Common Areas as Lessor may from time to time adopt and distribute to Lessee by written communication. Lessee further agrees to see that its employees, servants, visitors, agents and customers comply with said rules and regulations.  The failure of Lessor to enforce any such rules and regulations against Lessee shall not be deeded a waiver of its right to do so.

Lessee shall conduct its' business and the storage of materials in such a manner as not to interfere with the operation of the business of any other tenant on the Lessors' property.

SECTION 10:    **MAINTENANCE AND REPAIRS.**  During the term of this lease, Lessor shall have no obligation to make any repairs or to maintain any portion of the leased premises except for roof and structural repairs, which shall be the responsibility of the Lessor. Lessee accepts such premises "as is" on the commencement date of this lease.

Lessee agrees to maintain the exterior of the leased premises in a neat and clean condition, and to keep and maintain the leased premises and all fixtures, plumbing, electrical wiring and equipment, doors, windows and all equipment and appurtenances affixed or used in connection with the leased premises in good and substantial repair and to make all repairs promptly when needed so as to maintain

the leased premises in the same condition and state of repair as existed at the commencement of this lease.   Lessee further agrees to indemnify and save harmless the Lessor from and against any and all judgments, decrees, penalties, costs and expenses, by reason of any noncompliance.   Lessor shall under no circumstances be liable to Lessee in damages or otherwise for interruption in service of electricity, water, heat, telephone and sewer service or air-conditioning caused by the making of any repairs or improvements in the premises.

In the event Lessee shall not proceed promptly and diligently to make any repairs, perform or comply with any obligations set forth in the preceding paragraphs, then in such event Lessor may, at its option, enter the premises and take all such action and do all such work in or to said premises as may be necessary in order to comply with such laws, rules, regulations; without liability on the part of Lessor for any loss or damage resulting from any such action by Lessor. Lessee agrees to pay, as additional rent, within ten (10) days upon demand any costs or expense incurred by Lessor in taking such action.

Lessee agrees, its own cost, to execute and comply with all laws, rules, regulations, orders, directions and requirements of all governmental departments, bodies, bureaus, agencies and officers, and with all reasonable rules, directions, requirements, and recommendations of the local board of fire underwriters and other fire insurance rating organizations for the area in which the premises are situated, pertaining to the premises or the use and occupancy thereof. Lessee shall pay the costs of any fines assessed by any governmental agency resulting from the operation of the Lessee's business and/or the maintenance of the leased premises. Lessee shall not do or suffer to be done, or keep or suffer to be kept anything, upon or about the premises which will contravene Lessor's policies insuring against loss or damage by fire or other hazards, including, but not limited to, public liability, or which will prevent Lessor from procuring such policies in companies reasonably acceptable to the Lessor; and if anything done, omitted to be done or suffered to be done by Lessee, or kept, or suffered by Lessee to be kept in, upon or about the premises or other property of Lessor, causes said insurance to be increased beyond the minimum from time to time applicable to the premises for use for the purposes permitted under this lease, or applicable to such other property of Lessor for the use or uses made thereof, Lessee will pay the amount of such increase promptly upon Lessor's demand.

6

Lessee shall:

(a)   not, without the prior written consent of Lessor, place or maintain any merchandise or other articles on the sidewalks, adjacent thereto, or elsewhere on the exterior thereof;

(b)   maintain the premises, entrance, exit, and sidewalks adjacent thereto, at its own expense in a clean, orderly and sanitary condition, free of insects, rodents, vermin and trash, rubbish and other refuse;

(c)   keep refuse in proper containers within the interior of the premises until called for to be removed;

(d)   not have instruments for musical or other sound reproduction or transmission in such manner that the sounds emanating therefrom or caused thereby shall be audible beyond the interior of the premises;

(e)   keep all mechanical apparatus free of vibration and noise which may be transmitted beyond the confines of the premises;

(f)   not cause or permit objectionable odors to emanate or be dispelled from the premises.

SECTION 11:   **ASSIGNMENT - SUBLETTING.**  Lessee may not assign, sublet, mortgage or otherwise encumber or dispose of this lease or any interest therein without Lessor's prior written consent. Notwithstanding any consent by Lessor to any such assignment, transfer, or subletting, Lessee shall continue to be and remain liable thereunder.

Lessor reserves the right to sell, mortgage, assign or otherwise transfer all or any part of its interest in and to the real and personal property, including the Building and other improvements in and upon which the premises are located, and to assign all its rights and obligations under this lease without notice.

SECTION 12:   **INSURANCE.** Lessee agrees to indemnify and save harmless the Lessor from any claim or loss by reason of any accident or damage to any person or property happening in or about the lease premises during the life of this lease and Lessee further agrees

7

to provide and maintain in force during the entire lease term, and to pay the premiums for, public liability insurance, insurance for property damage loss and insurance for personal injuries and deaths resulting from any accidents or occurrences happening in or about the leased premises in an amount not less than $1,000,000.00 combined single limits.

During the term of this lease, the Lessee shall maintain fire and extended coverage insurance in an amount not less than the full insurable value of the leased property and other improvements on the leased premises.

Each such policy of such insurance shall show and name as the insureds thereunder the Lessor and the Lessee.  The originals, or duplicates thereof issued by the insurance company or companies, of the policies of insurance so required to be kept and maintained in force by Lessee shall be delivered to the Lessor by the Lessee and each such policy shall contain an endorsement that same may not be cancelled for any cause without at least fifteen (15) days prior notice, written, to the Lessor, or in lieu of such endorsement there shall be delivered to Lessor separate certificates issued by the insurance company agreeing that the policy will not be cancelled for any cause without at least fifteen (15) days prior written notice to the Lessor.  Lessee further agrees to provide insurance coverage for injury on any employee of Lessee at the lease premises.

All personal property in the premises shall be and remain at Lessee's, or any other person's, sole risk.  Lessor shall not be liable for any damage to the Lessee, or any other person, or loss of such personal property arising from any acts or negligence of any persons, or from the bursting of pipes, leaking or overflowing of water, plumbing, steam, gas, electricity, falling plaster, seepage or dampness, fire, explosion, water, rain, or similar hazards; nor shall the Lessor be liable for any injury to the person of the Lessee or other persons in or about the premises due to any condition.  Should Lessor incur any liability for claims, damages or injury, or costs or expenses of any kind, associated with the demised premises or the business operated therein, then Lessee agrees to indemnify and hold Lessor harmless for same, and to defend or indemnify Lessor for all costs resulting from any claim of liability from which Lessor is exonerated.

During the term of this lease the Lessee shall maintain plate glass insurance for the premises and shall furnish Lessor with

appropriate certificates evidencing same.    Should Lessee fail to provide any of the insurance required by this lease, then Lessor may secure said insurance and same shall be reimbursed and paid by Lessee within ten (10) days as additional rent.

Lessee agrees that all fire and extended coverage insurance policies insuring all the improvements and personal property on the premises shall include a clause waiving its rights of subrogation against the Lessor, its respective heirs, personal representatives, successors, or assigns.

SECTION 13:    **REBUILDING AND REPAIRING AFTER DAMAGE.**    If during the term of this lease the leased premises or any portion thereof shall be damaged by fire or other casualty which renders the premises untenantable, the Lessee shall give immediate notice to Lessor of such occurrence and Lessor shall have the option of repairing or rebuilding the premises or of cancelling this lease.

The option of Lessor to restore or cancel shall be exercised by giving Lessee written notice of its intentions within sixty (60) days of notification by Lessee to Lessor of the occurrence of the fire or other casualty.    In the event Lessor elects to restore and rebuild it shall proceed with due diligence so that after such restoration and rebuilding has been completed, the improvements will be substantially as prior to the occurrence of the fire or other casualty, and the rent shall be abated during said restoration, said abatement shall cease if the Lessee is open for business.    If Lessor shall elect not to restore and rebuild within the sixty (60) day period aforementioned, the Lessee may immediately terminate this lease by notice in writing to Lessor, which notice shall be effective as of the date of the fire or other casualty, and upon the mailing of such notice by Lessee to Lessor, this lease shall be deemed terminated and of no further force or effect.

If pursuant to Subparagraph One or Two of this Section, Lessor elects to restore and rebuild or is required to restore and rebuild, Lessor shall do so at its sole cost and expense but shall have full use and availability of the proceeds of any insurance that has been provided and maintained by Lessor, the proceeds of which are payable in the event of a fire or other casualty.

In the event any damage to the premises shall be attributable in whole or in part to the negligence of Lessee or its contractors, agents, employees, customers, or other visitors, the above provisions