---

**ASSISTED LIVING FACILITY LEASE**
**BETWEEN**
**ANNA DUNEDIN REALTY, LLC.**
**AND**
**VILLA ANNA ASSISTED LIVING FACILITY, LLC.**

---

THIS INDENTURE, made on November 30, 2015 (date), by and between Anna Dunedin Realty, LLC., hereafter called "Lessor", whose address for purposes of notice under this lease is 5210 Webb road, Tampa, Florida 33615, and Villa Anna Assisted Living Facility, LLC., hereafter called "Lessee" identified herein, whose address for purposes of notice under this lease is 1925 Dolphin Drive, Belleair Bluffs, Florida 33770.

WITNESSETH:

WHEREAS, Lessee desires to lease from Lessor and the Lessor desires to lease to the Lessee assisted living facility space in the premises hereafter described, on the terms, covenants, and conditions set forth in this agreement.

NOW, THEREFORE, in consideration of the rents and the mutual covenants, terms, conditions and agreements herein set forth, the parties agree as follows:

1.  DEFINITIONS:
    A.  "Lessor" means Anna Dunedin Realty, LLC.
    B.  "Lessee" means Villa Anna Assisted Living Facility, LLC.

2.  AGREEMENT TO LEASE: DESCRIPTION OF THE PROPERTY.
    The Lessor leases and demises unto the Lessee, and the Lessee rents and hires from the Lessor, certain assisted living facility space located at 353 Colonial Court, Dunedin, Florida 34698.

    A.  Lessee shall have the exclusive use of the space located at 353 Colonial Court, Dunedin Florida 34698.

1.  TERMS OF LEASE: RENT.
    The term of the lease and the rent to be paid by the Lessee in consideration of the lease are as follows:

    1.  This lease shall be for a three- year term, commencing on December 1, 2015 and ending on the last day of the thirty-sixth month thereafter, provided the rent is paid in a timely fashion. Timely fashion is defined as no later than the 5th of each month.
    2.  Provided there is no event of default, the Lessee shall have the right to renew the Lease for additional three-year terms; if the Lessee decides not to re-lease the property, the Lessor must be notified in writing no later than 30 days prior to the termination date.
    C.  Lessee shall pay to Lessor at the address herein set forth, or at such other address, as Lessor from time to time shall designate, as rental for the promises, an agreed-upon fixed annual rent of $36,000.00  The initial annual rent shall be payable in monthly installments of $3,000.00 and

shall be paid in advance on the 1st day of each calendar month during the life of this lease. This rental amount includes the applicable state sales taxes.

4. TAXES.
Lessee agrees to pay all taxes levied against the personal property and trade fixtures of the Lessee in and about the demised premises, provided, however, that if any such taxes of Lessee are levied against Lessor, or Lessor's property, or if the assessed value of Lessor's property is increased by the inclusion of the value placed on Lessee's property, and if Lessor pays those taxes, Lessee, on demand, shall reimburse Lessor for all taxes actually paid on Lessee's behalf, together with interest at 12% per annum.

Lessor shall provide the ad valorem tax bills to Lessee and Lessee shall pay at least 30 days prior to the date upon which they become delinquent real estate taxes imposed during the Initial Term and any Renewal Term upon or against the Premises ("Real Estate Taxes"). Real Estate Taxes for the year in which the initial Term shall begin and in the year in which the Lease shall terminate shall be prorated so that the Lessee shall pay only those portions which correspond with the portion of said years as are within the Initial Term or Renewal Term.

5. HAZARD INSURANCE, PREMISES LIABILITY INSURANCE, PROFESSIONAL LIABILITY INSURANCE
Lessor shall provide the Property Hazard, Premises Liability Insurance, and/or Professional Liability Insurance bills to Lessee and Lessee shall pay at least 30 days prior to the date upon which they become due. Insurance Premiums imposed during the Initial Term and any Renewal Term shall be prorated for the time Lessee is bound by this Lease. But, notwithstanding the foregoing, upon evaluation of insurance coverage obtained by Lessee, Lessor, at its sole discretion, may allow Lessee to obtain its own Hazard, Premises Liability, Professional Liability, or other insurance

6. LESSEE'S MISCELLANEOUS EXPENSES.
In addition to other obligations herein, Lessee shall pay for the following:

A. Tenant's public liability insurance on the premises.
B. Monthly telephone line charges (with applicable taxes thereon).
C. Telephone equipment and telephone charges.
D. Cable and other Internet and Broadcast equipment..
E. Building cleaning and maintenance.
F. Security alarm system monitoring charges.
G. Parking lot maintenance and repaving;
H. Landscape/grounds maintenance and irrigation.
I. Water and sewer.
J. Sanitation and waste removal, including bio-hazardous waste disposal
K. Electricity

7. SUBORDINATION.
This lease and all rights of Lessee under it are, and shall be, subject to and subordinate to the rights of any mortgage holder having a security interest or mortgage lien in the demised premises.

8. LESSEE'S COVENANTS.
Lessee further covenants and agrees as follows:

A. To pay the rent and every installment of it when and as it comes due; to use the premises in a careful and proper manner for the expressed purpose of running an assisted living facility; and to commit or permit no waste or damages to the premises; not to conduct or permit to be conducted on the premises, any business, or commit or permit any act that is a nuisance or is or may be contrary to or in violation of any federal, state or local law or ordinance; to surrender the premises on expiration or termination of this lease in clean condition and good repair, normal wear and tear excepted; provided, however, all alterations, additions and improvements permanently attached and made by Lessee, its successors, sublessees and assigns (excepting movable furniture, equipment, supplies, and inventory) shall become and remain the property of Lessor on the termination of Lessee's occupancy of the premises.

B. To properly dispose of all bio-hazardous waste resulting from the Lessee's use of the promises, at Lessee's expense.

C. To keep and maintain at all times during the lease term, at Lessee's cost, a comprehensive public liability insurance policy protecting Lessor against all claims or demands that may arise or be claimed on account of Lessee's use of the premises, in an amount of at least $1,000,000 for injuries to persons in one accident, $3,000,000 for injuries to any one person and $250,000 for damages to property. The insurance shall be written by a company or companies authorized to engage in the business of general liability insurance in the State of Florida, with a company or companies acceptable to Lessor, and there shall be delivered to Lessor certificates evidencing the paid up insurance on an annual basis, and copies of the insurance policies, issued by the insurance companies. Lessee further agrees to keep and maintain at all times during the lease term at Lessee's cost, broad-coverage fire and casualty insurance on its property (including inventory) and to provide Lessor with a copy of the policy and a certificate evidencing paid up insurance, issued by the insurance company. Lessor, at its option, may request Lessee to obtain a certified statement by each insurance carrier containing a clause providing that the insurance carrier will give Lessor ten (10) days written notice before any cancellation shall be effective. The policies of insurance are to be provided by Lessee and shall be for a period of not less than one (1) year. If Lessee fails to furnish policies or certificates showing policies to be paid in full as provided in this lease, Lessor may obtain the insurance and the premiums on that insurance shall be deemed additional rental to be paid by Lessee to Lessor on demand, together with interest at 12% per annum.

D. To prohibit and refrain from engaging in or allowing any use of the demised premises that will increase Lessor's premiums for insurance on the building, without the express written consent of Lessor.

E. To indemnify and save harmless Lessor and the demised premises from all costs, loss, liability, damage, expense, penalty and fine whatsoever that may arise from or be claimed against Lessor or the demised premises by any person or persons for any injury to person or property, or damage of whatever kind or character consequent on or arising from the use of occupancy of the demised premises by Lessee, or consequent on or arising from any neglect or fault of Lessee or the agents and the employees of Lessee, in the use and occupancy of the premises, or consequent on or arising from any failure by Lessee so to comply and confirm with all laws, statutes, ordinances and regulations of any governmental body or subdivision, now or hereafter in force; if any lawsuit or proceeding shall be brought against Lessor or the demised premises on account of any alleged violations thereof, or failure to comply or conform therewith, or on account of any damage, omission, neglect (or use of the premises) by Lessee, or the agents and employees of Lessee, or any other person on the premises, Lessee agrees that Lessee, or any other person on the premises, will defend it and will pay whatever judgments may be recovered against Lessor or against the premises

on account thereof, and to pay for all attorneys' fees in connection therewith, including attorneys' fees on appeal.

F. Lessee will carry all the expenses to convert the property or maintain it as an assisted living facility. Such expenses include partition of the space, placement of sinks in the patient rooms, carpeting, telephone wiring and computer network and installation. Lessee agrees that Lessee will save harmless Lessor from and against all expenses, liens, claims and damages to either property or person that may or might arise by reason of the making of any repairs, alterations, additions or improvements.

G. To permit Lessor to enter, inspect and make such repairs to the leased property as Lessor may reasonably desire, at all reasonable times.

H. To subordinate any interest in the demised premises to any encumbrance or mortgage that Lessor may desire to place on the property.

9. LESSOR'S COVENANTS.
Lessor covenants and agrees as follows:
A. To warrant and defend Lessee in the enjoyment and peaceful possession of the premises during the term of the lease, in common with other physicians and their employees, in accordance with the attached exhibit. Lessor agrees that the annual rent mentioned above will remained fixed for the life of the lease. Lessor understands that Lessee invested a considerable amount of expenses to convert the place to serve the purpose of the lease. This was done under the preposition that the annual rent will remain stable for the life of the lease to enable Lessee to recoup his initial investment.

B. If the premises are destroyed, or so damaged by fire, casualty, or other disaster that they become untenable, Lessor shall have the right to render the premises tenable by repairs within 90 days from the date of damage with reasonable additional time, if necessary, for Lessor to adjust the loss with insurance companies insuring the premises, or other delay occasioned by conditions beyond the control of Lessor. If the premises are not rendered tenable within that time, it shall be optional with either party to cancel this lease, and in the event of such cancellation, the rent shall be paid only to the date of the damage. If the lease is not canceled, rent nevertheless shall be abated during the period of time from the date of damage to date of physical occupancy by Lessee or date of complete restoration, whichever shall occur first. The cancellation provided for by this paragraph shall be in writing.

10. DEFAULT IN PAYMENT OF RENT.
If any rent required by this lease shall not be paid when due, Lessor shall have the option to:
A. Terminate this lease, resume possession of the property and recover immediately from Lessee the difference between the rent specified in the lease and the fair rental value of the property for the remainder of the term, reduced to present value; or

B. Resume possession and re-lease or rent the property for the remainder of the term for the account of Lessee, and recover from Lessee at the end of the term or at the time each payment of rent comes due under this lease as Lessor may choose, the difference between the rent specified in the lease and the rent received on the re-leasing or renting.

In either event, Lessor shall also recover all expenses incurred by reason of the breach, including reasonable attorney's fees.

11. **DEFAULTS OTHER THAN RENT.**
If either Lessor or Lessee shall fail to perform, or shall breach, any agreement on this lease other than the agreement of Lessee to pay rent, the complaining party may, after 10 days' written notice specifying the performance required, institute action in a court of competent jurisdiction to terminate this lease or to complete performance of the agreement, and the prevailing party in that litigation shall recover all expenses of the litigation, including reasonable attorney's fees. In the alternative, if a party fails to perform or breaches any agreement of this lease other than the payment of rent, the complaining party may, after 10 days' written notice to the other, comply therewith correcting any such breach (without creating any obligation to comply), and the costs of that compliance shall be payable on demand, together with interest of 12% per annum.

12. **LESSOR TO HAVE LIEN.**
Lessor shall have a lien against all goods, equipment, furniture and other personal property of Lessee brought, stored or kept on the leased premises during the lease term, in the aggregate amount of all rent, damages and other sums that may at any time be owed by Lessee to Lessor under the lease. Lessor, in the event of any default by Lessee, may foreclose the lien as a mortgage would be foreclosed, and in that event Lessee shall be obligated to Lessor for all court costs and a reasonable attorney's fee.

13. **ELECTION BY LESSOR NOT EXCLUSIVE.**
The exercise by Lessor of any right or remedy to collect rent or enforce Lessor's rights arising under this lease shall not constitute a waiver of, or a binding election precluding the exercise of, any other right or remedy afforded Lessor by this lease agreement or by statute or law. The failure of Lessor in one or more instances to insist on strict performance or observations of one or more of the covenants or conditions of this lease, or to exercise any remedy, privilege or option conferred by this lease on or reserved to Lessor, shall not operate or be construed as a relinquishment or waiver for the future of the covenant or condition or the right to enforce it or to exercise that privilege, option or remedy, but that right shall continue in full force and effect. The receipt by Lessor of rent, or any other payment required to be made by the Lessee, or any part thereof, shall not be a waiver of any other additional rent or payment then due, nor shall receipt, though with the knowledge of the breach of any covenant of condition of this lease, operate as or be deemed to be a waiver of such breach, and no waiver by Lessor of any of the provisions of this lease, or any of Lessor's rights, remedies, privileges, or options under this lease shall be deemed to have been made unless made by Lessor in writing. No surrender of the premises for the remainder of the term of this lease shall be valid unless accepted by Lessor in writing.

14. **NO ASSIGNMENT OR SUBLETTING.**
Lessee shall not assign nor sublet this lease, as this lease is personal to the Lessee.

15. **ADDRESSES FOR PAYMENTS AND NOTICES.**
Rent, payments and notices to Lessor shall be mailed or delivered to the address of Lessor given at the beginning of this lease, unless Lessor shall advise Lessee differently in writing. Notices to Lessee may be mailed or delivered to the leased premises and proof of mailing or posting of those notices to the leased premises shall be deemed the equivalent of personal service on Lessee.

16. **CAPTIONS.**
The captions and paragraph headings or titles appearing in this lease are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of the sections, articles or paragraphs of this lease nor in any way affect this lease.

17. **FLORIDA LAW.**
This lease shall be governed by the laws of the State of Florida, both as to interpretation and performance. Venue and Jurisdiction shall be in a court in Pinellas County, Florida.

18. **ENTIRE AGREEMENT.**
This lease sets forth all the promises, agreements, conditions and understandings between Lessor and Lessee relative to the leased premises, and there are no other promises, agreements, conditions or understandings, either oral or written, between them other than as set forth in this lease. No subsequent alteration, amendment, change or addition to this lease shall be binding on Lessor or Lessee unless reduced to writing and signed by them, and by direct reference made a part of it.

19. **TERMS INCLUSIVE.**
As used herein, the terms "Lessor" and "Lessee" shall include the plural whenever the context requires or admits.

20. **REPRESENTATIVES, ETC. BOUND HEREBY.**
The terms of this lease shall be binding and obligatory on the respective successors, representatives and assigns of the parties.

IN WITNESS WHEREOF, Lessor and Lessee have duly executed this lease on 3/10/16.

Signed in the presence of:

_____
Witness as to Lessor

_____
Panos Vasiloudes for Anna Dunedin Realty, LLC, Lessor
Date: 3/10/16

_____
Witness as to Lessee

_____
Darina Talanga for Villa Anna ALF, LLC
Date: 3/10/16

8