**U**NITED **S**TATES **B**ANKRUPTCY **C**OURT
**M**IDDLE **D**ISTRICT OF **F**LORIDA
**T**AMPA **D**IVISION

**In Re:**
**ZDRAVKO TALANGA and**   Case No.: 8:17-bk-09357-MGW
**DARINA TALANGA**   Chapter 7
      **Debtors,**
_____/

**AMENDED EMERGENCY MOTION FOR RELIEF OF AUTOMATIC STAY OR, ALTERNATIVELY, TO CONFIRM THAT THE AUTOMATIC STAY DOES NOT APPLY TO THE REAL PROPERTY LOCATED 353 COLONIAL COURT**

    Through undersigned, creditors Anna Dunedin Realty, LLC., and Cygram Heritage LLLP., initially filed this Motion for Relief from Automatic Stay and/or for permission to sell the Real Property located at 353 Colonial Court. The Clerk was unable to file the Motion because it was compound in nature and required that it be revised. <u>The Motion is hereby revised and limited to a Motion For Relief of Automatic Stay or Alternatively to Confirm that the Automatic Stay Does Not Apply</u>.

    This Motion is now filed as an Emergency Motion because the Debtor's actions have immediately jeopardized the property's sale, further injuring the creditors, likely wasting the Estate's Assets and because the Pinellas County Sheriff's Department requires an order from this Court permitting Creditor's entry onto the property after Debtors claimed, through their son Ivan, that there is an Automatic Stay in place for this Action that somehow bars the lawful property owners from rightful entry onto their property.

    Respectfully, Creditors seek this Court's intervention because the Debtors are using this Court to continue to defraud them by requiring that the Creditors alone pay all expenses associated with the property while the Debtors continue to operate their business from the property, deny Creditor's lawful access to the property, and fail to pay their share of the property's expenses;

1

including its taxes (now in default for 2 years) and mortgage (intermittently in default but guaranteed by Creditors).

As explained below, this Court's intervention is respectfully requested, despite Creditor's belief that this property is not subject to any automatic stay, because Debtors are improperly using this Court to essentially allow them to continue squatting on the property. As detailed below, the property itself is owned by one business entity (Anna Dunedin Realty, LLC.) that is in turn owned by two other business entities (Cygram Heritage, LLLP., and Elite Holdings, LLC); one of which (Elite Holdings, LLC) is owned in part (70%) by the Debtors who filed this Chapter 7 Petition, At the present time, to the best of Creditor's information, the Trustee in this Action has taken no action, nor seized any assets, nor sought to intervene in any of the business affairs of any of the Debtors' business entities, including Elite Holdings, LLC. Creditors have, however, entered into discussion with the Trustee's attorney about this property. And through her attorney, the Trustee offered to sell Creditors all Debtors' interests in Debtors' business entities.

But, Debtor's business interests are already significantly encumbered by debt and mortgages against all properties, including the property in question. And such business interests already secure a $1,169,100.00 promissory note that Debtors jointly and severally with their children owe Creditors that has already been defaulted upon. Creditors state:

## **Factual Background**

1. The real property referenced throughout is located at address 353 Colonial Court, Dunedin, Pinellas County, Florida. Pinellas County Property Appraiser Folio Number 34-28-15-17478-000-0160; with property description Lots 16 and 17 Colonial Village, subdivision, according to the plat thereof as recorded in Plat Book 54, page 47 of the public records of

Pinellas County, Florida. (Throughout the property is referenced as, "353 Colonial.") See Exhibit A: Pinellas County Property Appraiser pages 1-3.

2. 353 Colonial is 100% owned by Anna Dunedin Realty, LLC. *Id., pages* 4-5.

3. Anna Dunedin Realty, LLC., (Anna Dunedin) was formed by two members: Cygram Heritage, LLLP (Cygram Heritage) and Elite Holdings, LLC., (Elite Holdings). See Exhibits B and C: Florida Sunbiz listings.

4. In this proceeding, and in the Adverse Proceeding (8:18-ap-00049-MGW), both Cygram Heritage and Anna Dunedin are Creditors.

5. As confirmed by Sunbiz filings and the Debtors' testimony at the four #341 hearings, Elite Holdings is owned by Debtors (70%) and their children (15% each). See Exhibits H (Sunbiz filing for Elite Holdings) and R (Statement of Authority).

6. However, although listed as possessing an Active Status on Sunbiz, Elite Holdings last filed its annual report in January 2017 and may no longer actually be authorized to conduct business in Florida. See Exhibit B.

7. Anna Dunedin's ownership interests were initially 50.1% to Cygram Heritage and 49.9% to Elite Holdings. See Exhibit K: Anna Dunedin Operating Agreement.

8. Anna Dunedin's ownership interests have changed because since on or before January 1, 2017 only member Cygram Heritage has paid all of Anna Dunedin's expenses for its mortgage because Anna Dunedin's tenant has not paid any bills and because member Elite Holdings has failed to pay any cash calls. See Exhibit E: Anna Dunedin Resolutions page 3.

9. And only member Cygram Heritage continues to pay Anna Dunedin's debts including its outstanding mortgage to another creditor in the Chapter 7 Petition, Hancock Bank.

10. As a result of member Elite Holding's failure to pay anything, only Member Cygram Heritage possesses any authority over Anna Dunedin. See Exhibit L: Statement of Authority. And See Exhibit E Anna Dunedin Resolutions.

11. Anna Dunedin was initially formed with the intent to own 353 Colonial and to serve as an assisted living facility that would be leased to Villa Anna Assisted Living Facility, LLC., another business entity that was initially jointly owned by Creditors and Debtors in this action. See Exhibit M: Vasiloudes Affidavit and see Exhibit N: Villa Anna Operating Agreement.

12. Villa Anna entered into a lease with Anna Dunedin requiring rent payment each month and also requiring that: 1) Villa Anna permit Anna Dunedin to enter the Property; 2) that Villa Anna pay the property taxes; and 3) that Villa Anna obtain and pay for all required insurance. See Exhibit G: Lease.

13. The explicit terms of the lease provide:

    a. "¶8.G. To permit [Anna Dunedin] to enter, inspect, and make such repairs to the leased property as lessor may reasonably desire, at all reasonable times." *Id.*

    b. "¶4. Taxes. [Villa Anna] agrees to pay all taxes," but the property taxes are 2 years in arrears totaling: $10,935.67 plus interest. See Exhibit F. *Id.*

    c. "¶8.A. To pay rent," "8¶B. to properly dispose of biohazardous waste," "8¶C. To keep and maintain public liability insurance totaling $1,000,000 / $3,000,000 for personal injuries and $250,00 for property damage. *Id.*

    d. "¶10, Default in Rent Payment – A. [Anna Dunedin] may cancel the lease and resume possession of the property and recover from [Villa Anna] the amount due." When any payment is in default and there has been a default since January 2017,

or, "B. Resume possession and release or rent the property, and C. recover all expenses incurred by [Villa Anna's] default." *Id.*

14. With regard to Elite Holdings, only Debtor Darina Talanga possesses authority to bind or otherwise operate the business entity. See Exhibit R: Statement of Corporate Authority.

15. With regard to Villa Anna, Debtor Darina Talanga is the only authorized member (See Exhibit S) and owns 100% of the business entity according to its licensure with the Florida Agency for Healthcare Administration. See Exhibit T.

16. Notably, Debtor Darina Talanga executed the lease between Villa Anna and Anna Dunedin on behalf of Villa Anna. See Exhibit G.

17. This lease was executed on March 10, 2016 and provided for a three-year term beginning on December 1, 2015 and ending on November 30, 2018, "provided the rent is paid on a timely fashion" with rent payments due on the first of each month totaling $3,000.00. If the rent had been paid, Villa Anna possessed the option of a renewal *Id.*

18. But, Villa Anna has not provided any rent payments since on or before January 1, 2017. See Exhibit M. Vasiloudes Affidavit.

19. Villa Anna has also not paid any property taxes for 2016 or 2017 or 2018. See Exhibit M and see Exhibit F: Unpaid taxes.

20. And upon information and belief Villa Anna has not obtained the necessary insurance required by the lease. See Exhibit M: Vasiloudes Affidavit.

21. Villa Anna, however, currently has a judgment against it by Waste Management for $10,524.23 entered on April 23, 2018 pursuant to Pinellas County Case 2017-009783-CO-42. Exhibit O: Waste Management. By not working with waste management, Villa Anna

is violating the lease requirement to properly dispose of biohazardous waste. See Exhibit G ¶8.B.

22. And Villa Anna also has a judgement against it by AMSCOT Corporation for $4,767.45 entered on July 19, 2018 pursuant to Pinellas County Case 2018-01999-SC. See Exhibit P. Amscot. Upon information and belief, this check with insufficient funds to AMSCOT is related to an employee wage claim against Villa Anna whereupon Villa Anna failed to pay its employee, Edita Pavlovic.

23. Additionally, the Florida Agency for Healthcare Administration adjudged that Villa Anna violated Florida Statutes §§120.569 and 120.57 and fined them $10,356.27 for class II deficient practices relating to resident abandonment and failing to provide residents with proper supervision. See Exhibit Q: AHCA, page 1.

24. Notably, on review of the Administrative Complaint, and consistent with Debtors testimony at 4 of the #341 Hearings held for this Chapter 7 Petition, and claims Debtors raised against undersigned in their Petition, with the Florida Agency for Healthcare Administration, Debtors too claimed that their problems were related to undersigned counsel's not having appropriately provided them with sufficient notice or having done something improper. But the AHCA Hearing Officer held that Debtors' "vague reference to [the actions or inactions of] a previous attorney/registered agent…[were] not credible in light of the record." *Id.,* pages 18-19.

25. When significant differences arose between the principals of the business entitles owned or managed by Panayiotis Vasiloudes (Creditor) and the Debtors, Creditor sued Debtor in a civil action in Pinellas County Circuit Court case 2017-000681-CI. See Exhibit B: Elite v. Talanga. See also Exhibit M: Vasiloudes Affidavit.

26. Creditors alleged that Debtors defrauded them in excess of $2,300,000.00, and that essentially debtors operated a Ponzi-type scheme whereby debtors used later investments to pay off earlier investors. See Exhibit M: Vasiloudes Affidavit.

27. Ultimately, Creditors entered into a Settlement Agreement with Debtors a few months before Debtors filed this Chapter 7 Petition that Debtors appear to be using to void all their obligations under this Settlement Agreement. See Exhibit D 1-4.

28. Specifically, with regard to 353 Colonial, the Settlement Agreement provides:

> ¶10. The Talangas agree to refinance Anna Dunedin Realty, LLC, within 2 years from the date of this Agreement. Provided refinancing and payment are made within 2 years from the date of this Agreement, at closing on refinancing when any outstanding mortgages are paid in full, and payment of $150,000.00 is made to Cygram Heritage LLLP, the Companies will convey to the Talangas and/or their assigns any and all interest they may have in Anna Dunedin Realty, LLC. If refinancing and payment are not made within 2 years from the date of this Agreement, **or the lease with Villa Anna Assisted Living Facility is found to be in default or cancelled for any reason, at any time Companies [Anna Dunedin and/or Cygram Heritage LLLP] may evict any tenants and/or sell the or otherwise dispose of the real property.** Except for refinancing noted above, the Talangas may not use Anna Dunedin Realty, LLC as a guarantee for any mortgages and may not sue the property as surety while it is pledged to Cygram Heritage LLLP unless approved in writing. Violation will be terms for immediate default of the Mortgage. See Exhibit B1 Settlement Agreement. (**emphasis added**).

29. This Settlement Agreement also provides:

> ¶12. The Talangas will bring current the past rent due on Villa Anna Assisted Living Facility, LLC, in the amount of $12,300 paid to Anna Dunedin Realty, LLC., within 60 days of this Agreement. The rent is set at $3,000.00 per month and rent for June (2017) and July (2017) will be made thereafter timely [on the first of each month]. There are unpaid tax liabilities that the Talangas must also pay in full. Upon written documentation by the Talangas to Cygram Heritage LLLP of the rent being brought current, all outstanding tax liabilities being paid, and the Talangas being current with the terms of this [Settlement] Agreement, the Companies [Anna Dunedin and Cygram Heritage] will dismiss with prejudice the pending eviction action against Villa Anna Assisted Living Facility, LLC., and will transfer to the Talangas the entire ownership interest, including all assets and

7

      liabilities for Villa Anna Assisted Living Facility as if the transfer occurred on January 1, 2017. By their execution of this Agreement, the entire ownership interest in Villa Anna Assisted Living Facility unanimously instructs the Florida Legal Advocacy Group of Tampa Bay to prepare such documents for execution. *Id.*

30. Further the Settlement Agreement was secured by a Mortgage on all of the Talangas' properties including: 353 Colonial Court, 1925 Dolphin Drive, the car lot at 18400 US Highway 19 North and the Sophia Highland Realty, LLC., property that was sold after being abandoned and having code enforcement issues before the Talangas field their Chapter 7 petition. *Id.* ¶ *13*

31. Importantly, the terms of the lease were effectively restated and committed to in the Settlement Agreement in ¶15. "Any and all prior understandings and agreements between the parties with respect to the subject matter of this Agreement are merged into this Agreement." *Id.*

32. In good faith the Creditors fulfilled the terms of the Settlement Agreement having: 1. abandoned the action for Eviction; and by having 2: transferred the Villa Anna ownership interest to the Debtors.

33. But the Debtors never acted in good faith, never made any payments, failed to make any rent payments, continued to collect federal funds from the Residents and use them for their own personal gain. See Exhibit M. Vasiloudes Affidavit.

34. And the Debtors are using this Court to shield their continued bad acts and refuse to allow Creditors onto 353 Colonial Court.

35. Notably, rather than paying Villa Anna's legitimate expenses such as rent, waste removal, taxes, and insurance, Debtor Darina Talanga testified during the four 341 hearings that she

was using Villa Anna Assisted Living Facility's checking account to pay for her personal debts and expenses because she did not have a personal bank account.

36. As a result of the multiple lease Defaults, Anna Dunedin cancelled the lease, and notified Debtors that they were in default. Anna Dunedin also placed 353 Colonial Court on the market for sale for what its commercial realtor believed was a fair market value of $349,000.00.

37. Upon information and belief, Debtors have failed to pay any obligation secured by 353 Colonial that is owed to Anna Dunedin or to Cygram Heritage nor have the Debtors tendered any payments to Anna Dunedin or Cygram Heritage, or any other non-party or third party.

38. On or about August 1, 2018, Anna Dunedin received and negotiated an offer to buy 353 Colonial from a *bona fide* purchaser. The initial offer was for $300,000.00. And Anna Dunedin negotiated this offer and ultimately agreed to sell 353 Colonial Drive for $345,000.00.

39. The offer is contingent upon a walk-through of the property occurring within 14 days or on or before August 17, 2018.

40. The Debtors prevented such a walk through on August 10, 2018, as noted below by claiming that the Automatic Stay and this Bankruptcy Court protected them.

41. Given the sales price of $345,000.00, depending on expenses Anna Dunedin incurs in the eviction of its tenant and enforcing its rights, if Anna Dunedin's expenses are minimal, and in the absence of any other debts due to cross-collateralization of funds between the business entities, the distribution of the sales price should reasonably approximate:

    a.  6% commercial brokerage fee             $ 20,700.00

|   |   |   |
|---|---|---|
| b. | 1% closing costs | $ 3,499.00 |
| c. | 2016 Tax Lien | $ 5,899.00 |
| d. | 2016 Tax Lien Interest (2 years) | $ 1,501.00 |
| e. | 2017 Tax Lien | $ 5,870.00 |
| f. | 2017 Tax Lien Interest (1 year) | $ 704.00 |
| g. | Past Due Mortgage (July, August 2018) | $ 5,388.00 |
| h. | CHLLLP Payments (mortgages, accountant legal, etc.) | $ 53,565.00 |
| i. | Mortgage Payoff | $198,377.00 |
| j. | Eviction Costs | $ ??* |
| k. | Member Distribution: and expenses. | $ 49,496.89; less further fees, costs, |

42. Anna Dunedin notified Debtors Attorney that it would be conducting a walk-through pursuant to its lease on August 10, 2018 at 10:00 am.

43. At 10:00 am on August 10, 2018 undersigned along with Anna Dunedin's realtor, the listing agent, the broker, and the buyer and his agent appeared for a walk through but were denied entry by Debtors through their son, Ivan and 2 Pinellas County Sheriff's Officers (Corporal Kevin Boulton and Deputy Jayson Young) who stated that the property was the subject of a bankruptcy action and that they would not permit access because of the Automatic Stay claimed by Debtors.

44. Undersigned provided the Deputies with the following documents and spent over 1.5 hours explaining them and also explaining how the automatic stay should not apply to a walkthrough and because the automatic stay should not apply to a party who has not filed a bankruptcy action. The following documents were provided:

    a. The property Deed listing Anna Dunedin as the lawful owner;

    b. The Pinellas County Property Appraiser listing for the property also listing Anna Dunedin as the lawful owner;

    c. The lease between Anna Dunedin and Villa Anna permitting Anna Dunedin to enter and inspect at any time;

    d. The Sunbiz documents for Anna Dunedin, Villa Anna, Cygram Heritage, and Elite Holdings demonstrating ownership of each entity;

    e. A copy of the Settlement Agreement stating that the property may be sold in the event of a default;

    f. A copy of the delinquent tax bills and delinquent rent for 18 months demonstrating lease default;

    g. A copy of the Chapter 7 Petition Docket indicating that Elite Holdings was not involved in the bankruptcy and that it was a personal petition;

45. Both Corporal Boulton and Deputy Young stated that they would not permit access without an order from this Court because the property was subject to an Automatic Bankruptcy Stay.

## Request for Relief

46. Anna Dunedin and Cygram Heritage seek entry of an order modifying the automatic stay to the extent necessary for Anna Dunedin to enter 353 Colonial, inspect and repair 353 Colonial, to evict Villa Anna and its residents, and to sell 353 Colonial.

47. Anna Dunedin and Cygram Heritage do not believe the automatic stay precludes either entry onto the property or its sale. But Debtors are using this Court to prohibit the Pinellas County Sheriff's from assisting Anna Dunedin and Anna Dunedin suspects that once an

eviction is filed. Debtors will also use this Court to continue to allow them to squat on the property, use it, and not make any payments for it.

48. This Court possess jurisdiction over 353 Colonial because: 1) Debtors own some portion of Elite Holdings, and Elite Holdings owns some portion of Anna Dunedin Realty, and Anna Dunedin owns some portion of 353 Colonial; 2) Because Debtors are refusing access to the property through the Pinellas County Sheriff's Office claiming protection under Automatic Stay provisions; and 3) Potentially because Debtor owns 100% of the tenant being evicted, Villa Anna. And because Villa Anna is in default of its lease, in arrears and already has judgments and debts totaling $93,186.92.

49. Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest … the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause, including lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

50. In determining "cause" under section 362 of the Bankruptcy Code, the Court must examine the totality of the circumstances of a case. *In re Aloisi*, 261 B.R. 504, 508 (Bankr. M.D. Fla. 2001). The totality of the circumstances encompasses, among other things, how the parties have conducted themselves, their good or bad faith, and their motives, including prepetition and postpetition conduct. *In re Mack*, 347 B.R. 911, 915 (Bankr. M.D. Fla. 2006). In determining the whether the automatic stay should be terminated, the Court should balance the prejudice to the debtor against the hardship to the moving party. *Aloisi*, 261 B.R. at 508.

51. Pursuant to Bankruptcy Rule 4001(a), Creditors Cygram Heritage LLLP., and Anna Dunedin Realty, LLC., respectfully request that the Court modify any automatic stay provisions of the Bankruptcy Code and permit Creditors to sell the real property described below and/or evict its delinquent tenant, Villa Anna Assisted Living Facility, LLC.

52. Respectfully, because of the significant debt already incurred by Creditor Cygram Heritage, because this debt continues to increase, because an existing mortgage on the property must be paid, and because the ability to sell or dispose of the property will be hindered if the property cannot be entered and the tenants evicted in a timely fashion, Creditors respectfully request that this Court waive the 14 day stay period pursuant to Bankruptcy Rule 4001(a)(3).

53. And respectfully, because the Pinellas County Sheriffs believe that this Court possesses jurisdiction, Creditors request that this Court enter an order stating that there is no automatic stay impacting 353 Colonial and that Anna Dunedin may enter the property at will and dispose of it, also at will.

54. Creditors also request that this Court enter a prophylactic order permitting Anna Dunedin to proceed with an action to evict Villa Anna from the premises in a court in Pinellas County, Florida.

55. Cause also exists to waive the 14 day stay because:
    a. The relief sought is prophylactic in nature;
    b. Debtors are not providing any protection with respect to the real property in question;
    c. Debtors are not making any payments to Creditors that were secured by the property;

d. Debtors are not paying the property taxes that are now two years delinquent – soon to be three years delinquent;

e. Debtors do not appear to be escrowing any amounts for upcoming property taxes;

f. Unless the sale is made for profit, Debtors will possess potentially no equity in the real property;

g. And, Debtor's failure to pay is wasting any equity that might be present and may be used to repay other creditors, including Creditors here.

**Wherefore**, Creditor prays this court:

A. Grant this Motion for Relief from Stay; and

B. Modify the automatic stay provided by §362 of the Bankruptcy Code, to the extent necessary to:

C. Permit Creditors to sell the real property at 353 Colonial Court, Dunedin, Florida; and

D. Order Debtors to permit Creditors, real estate agents, and buyers access to the real property; and

E. Order the Pinellas County Sheriff's Department to assist Creditors entry onto the property;

F. Order that the Creditors may Evict delinquent tenant Villa Anna at will;

G. Order that Debtors to vacate the property; and

H. Order that any excess funds due Elite Holdings, LLC., be paid to resolve the outstanding terms of the Settlement Agreement between Debtors and Creditors; and

I. Order Relief from stay permitting Creditors to file and pursue any action(s) against Debtors related to the Settlement Agreement so that Creditors may foreclose upon the property as necessary;

J.  Order that Anna Dunedin may sell 353 Colonial;

K.  Alternatively confirm that no automatic stay applies;

L.  Grant any aid or relief that this Court deems necessary and proper.

## Certificate of Service

I certify that I filed a true and correct copy of the foregoing with the Clerk of Court and all interested parties through the CMECF Electronic Filing System on this Date.

**Respectfully Submitted on this 14th day of August 2018**

>**The Florida Legal Advocacy Group of Tampa Bay**
> /s/  Adam S. Levine
>Adam S. Levine, M.D., J.D.
>Florida Bar #78288
>1180 Gulf Boulevard, Suite 303, Clearwater, Florida 33767
>(727)512 – 1969 [Telephone]
>(866)242 – 4946 [Facsimile]
>aslevine@msn.com [Primary E-mail]
>alevine@law.stetson.edu [Secondary E-mail]
>Attorney for Creditors Anna Dunedin Realty, LLC., and Cygram Heritage LLLP.