# MEMBERS' OPERATING AGREEMENT
for
# ANNA DUNEDIN REALTY , L.L.C.

**FEBRUARY 2016**

This Operating Agreement (Agreement) for ANNA DUNEDIN REALTY LLC., (Dunedin) a manager-managed Florida Limited Liability Company is entered into by and between Cygram Heritage, LLLP, a Florida limited liability limited partnership (CHLLLP), and Elite Holdings LLC (EHLLC), a Florida limited liability company and was effective on October 1, 2015. This Agreement is entered into subject to and pursuant to §§ 605 *et seq.*, Fla. Stat. (2014), the Florida Revised Limited Liability Company Act.

## RECITALS

**Whereas**, the Members desire to correct a scrivener's error to correct ownership of this business entity by Elite Holdings, LLC and not the Talanga Family Trust; and

**Now Therefore,** in consideration for the mutual agreements and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Members intend to be legally bound and agree:

## I. DEFINITIONS

a. **ACT** refers to Chapter 605 of the Florida Statutes, 2014.

b. **BOD** refers to the Board of Directors composed of the Members.

c. **Dunedin** refers to the business entity comprising Anna Dunedin Realty, LLC.

d. **Writing** refers to any form of writing including those by hand or electronically.

## II. ARTICLES OF ORGANIZATION:

a. **Article I:** The name of the Limited Liability Company is ANNA DUNEDIN REALTY LLC.

b. **Article II:**

  i. The street address of the principal office of the Limited Liability Company is 5210 Web Road, Tampa, Florida 33615

  ii. The mailing address of the Limited Liability Company is 5210 Web Road, Tampa, Florida 33615

c. **Article III:**

  i. The Name and Florida street address of the registered agent is: Panos Vasiloudes, 5210 Web Road, Tampa, Florida 33615

  ii. By his signature below in the signature block Panos Vasiloudes agrees to be named as a Registered Agent, and to accept service of process for the above stated limited liability company at the place designated above in II(d)(i). Panos Vasiloudes hereby accepts the



appointment as Registered Agent and agrees to act in this capacity. Panos Vasiloudes further agrees to comply with the provisions of all statutes relating to the proper and complete performance of her duties, and is familiar with and accepts the obligations of her position as Registered Agent.

d. **Article IV:** The name and address of the person(s) authorized to manage the LLC:
   i. **Authorized Member** – Cygram Heritage LLLP, 5210 Webb Road, Tampa, Florida 33615
   ii. **Authorized Member** – Elite Holdings LLC, 1925 Dolphin Drive, Belleair Bluffs, FL 33770

**III. DIVISIONS AND LOCATIONS:** 353 Colonial Court, Dunedin, Florida 34698

**IV. MEMBERS**

a. **Members, Positions, and Ownership Interests:**

| | | | |
|---|---|---|---|
| **i.** | Elite Holdings LLC (EHLLC) | Member | 49.9% ownership interest |
| **ii.** | Cygram Heritage LLLP (CHLLLP) | Member | 50.1% ownership interest |

b. **Appointment of Corporate Representatives**:
   i. **Elite Holdings LLC** hereby appoints Darina Talanga as its representative.
   ii. **Cygram Heritage LLLP** hereby appoints Panos Vasiloudes as its representative.

c. **Initial Board of Directors, Office, and Ownership Share for Voting Purposes**

| | | |
|---|---|---|
| **i.** | Panos Vasiloudes for CHLLLP, Member, Secretary/Treasurer | 50.1%ownership interest. |
| **ii.** | Darina Talanga for EHLLC, Member &President | 49.9% ownership interest |

d. **Meetings**
   i. **Place:** Meetings will be held at any time and place so designated by the BOD.
   ii. **Attendance:** Attendance at all meetings may be in person, telephonic or other electronic means of transmission, or by proxy.
   iii. **Annual Meeting:** The time and place of the Annual Meeting will be set by the BOD to transact any necessary business.
   iv. **Special Meetings:** Any Member may call special Meetings provided appropriate Notice is provided.
   v. **Notice:** Written notice including the date, time and purpose of the Annual Meeting or any Special Meetings will be provided by electronic transmission between the Members as soon as practicably possible but all meetings shall be called at least 48 hours in advance.
   vi. **Quorum:** At all Meetings, a Quorum requires the attendance of both Members. But if one Member fails to attend after adequate Notice, a Quorum may be defined by the number of Members actually present.
   vii. **Voting:**
      1. Voting may be in person, electronically, or by proxy.
      2. After the BOD certifies a Quorum, a majority of the votes cast will determine the outcome of any issue or election. Majority will be determined by percentage of



membership interest and the outcome will be determined by greater than 50% of the membership interest.

viii. **Action by Written Consent:** Any action permitted the BOD may be undertaken in the absence of a meeting provided appropriate Notice is given.

## V. MEMBER-MANAGED LIMITED LIABILITY COMPANY

a. **Managers:**

i. **Authorized Member** – Cygram Heritage LLLP, 5210 Webb Road, Tampa, Florida 33615

ii. **Authorized Member** – Elite Holdings LLC, 1925 Dolphin Drive, Belleair Bluffs, FL 33770

b. **Board of Directors:** The BOD will be composed of all Authorized Members.

c. **Election and Term of Directors:** BOD members will remain as members of the BOD perpetually.

d. **Meetings**

i. **Place:** Meetings will be held at any time and place so designated by the BOD.

ii. **Attendance:** Attendance at all meetings may be in person, telephonic or other electronic means of transmission, or by proxy.

iii. **BOD Meetings:** The time and place of the BOD Meetings will be set by the BOD to transact any necessary business.

iv. **Notice:** Written notice including the date, time and purpose of the Annual Meeting or any Special Meetings will be provided by electronic transmission between the BOD.

v. **Quorum:** At all Meetings, a Quorum requires the attendance of both Members. But if one Member fails to attend after adequate Notice, a Quorum may be defined by the number of Members actually present.

vi. **Voting:**

1. Voting may be in person, electronically, or by proxy.
2. After the Authorized Member certifies a Quorum, a majority of the votes cast will determine the outcome of any issue or election. Majority will be determined by percentage of membership interest and the outcome will be determined by greater than 50% of the membership interest.

vii. **Action by Written Consent:** Any action permitted the BOD may be undertaken in the absence of a meeting provided appropriate Notice is given.

e. **Compensation:** A member of the BOD may serve in any other position or capacity. Any compensation, retainer, expense reimbursement or otherwise will be determined by the Authorized Member in conjunction with the BOD.

f. **Officers:**

i. **President:** Darina Talanga will be the President on behalf of EHLLC.

ii. **Secretary/Treasurer:** Panos Vasiloudes will be the Secretary/Treasurer on behalf of CHLLLP.

iii. **Agents:** The BOD may employ any agents and/or employees as it deems necessary for the benefit of Dunedin.

____ EHLLC ____ CHLLLP

## VI. OWNERSHIP INTEREST

a. **Proportional Ownership Interest:**

| | |
|---|---|
| i. Elite Holdings LLC | 49.9% ownership interest |
| ii. Cygram Heritage LLLP | 50.1% ownership interest |

b. **Ownership Transfer:** Ownership interest may only be transferred by affirmative vote of the BOD. The BOD shall have first right of refusal for any purchase of any other Member's ownership interest.

c. **Transfer or Surrender:** Upon the transfer, surrender, abandonment, or return of any shares of stock or ownership interest, the Authorized Member in conjunction with the BOD will determine whether winding up and shutting down is necessary. Ownership Interest may be transferred to Dunedin or to another Authorized Member following approval of the BOD. In the event that Ownership Interest is surrendered, abandoned, or returned, any outstanding liabilities attached to such Ownership Interest will remain with the individual person or entity surrendering, abandoning, or returning (without BOD acceptance) such interest unless the BOD accepts any such liability. But, any profit from such surrendered, abandoned, or returned Membership Interest and such liability that arises after the date of surrendering, abandonment, or return will belong to Dunedin. Surrendered, abandoned, or returned Membership Interest may not be voted or used to determine the outcome of any majority vote unless it has been transferred to an Authorized Member.

## VII. CAPITAL CONTRIBUTIONS AND LOANS

a. **Capital Accounts:** Dunedin will maintain a joint Capital Account holding each Founding Member's initial Capital Contribution.

i. The Capital Account will be increased by Dunedin profits and the amount of any Dunedin liabilities assumed by the Member or which are secured by property distributed to the Member.

ii. The Capital Account will be decreased by Dunedin losses and the amount of any Dunedin liabilities assumed by Dunedin or that are secured by any property contributed by the Member to Dunedin.

iii. The Capital Account will be adjusted in accordance with any applicable rules and requirements promulgated by the United States Treasury and the United States Tax Code.

iv. The BOD may adjust the Capital Accounts to comply with such United States Treasury and Tax regulations provided a minimal likely impact on the amounts available at dissolution.

b. **Capital Contributions:** Each New Member will make in-kind contributions and any necessary capital contributions as determined by the BOD.

c. **Capital Property:** Dunedin intends to hold all real property in its Limited Liability Companies. Such real properties shall be owned by Dunedin and by each Member pursuant to their individual ownership share.

d. **Loans:** The BOD may make or cause a loan to be made to or for Dunedin in any amount, under any terms.

e. **Additional Capital:** At its discretion the BOD may seek additional Capital Contributions by: watering stock, issuing additional shares, or selling shares held by Dunedin. Approval for watering stock or

issuing additional shares will require a majority vote. Selling shares held by Dunedin requires a majority vote.

## VIII. ALLOCATIONS, SALARIES AND DISTRIBUTIONS

a. **Profit and Loss Allocation:** Profit and Loss allocation will be determined by percentage ownership.

b. **Special Allocations:**

   i. **Minimum Gain Chargeback:** To comply with minimum gain chargeback requirements, if there is a net decrease in Dunedin's Minimum Gain during any year, each Member will be specially allocated items of income and gain for that and subsequent years in an amount equal to the Member's share of the net decrease in Dunedin's Minimum Gain.

   ii. **Stockholder Minimum Gain Chargeback:** If there is a net decrease in the Member's Nonrecourse Debt Minimum Gain attributable to any Member in any year, that Stockholder will be specially allocated items of Dunedin income and gain for that and subsequent years in an amount equal to that Member's share of the net decrease in the Member's Nonrecourse Debt Minimum Gain.

   iii. **Code Adjustments:** To the extent an adjustment to the adjusted tax basis of any asset is required as a result of a Member's liquidation of interests in Dunedin, the adjustment to the Capital Accounts will be treated as a gain or loss allocated to that Member.

   iv. **Nonrecourse Deductions:** Nonrecourse deductions for any period will be specially allocated proportionally among the Members.

c. **Distributions:** Distributions will be equally divided based on a determination by the BOD. Preference will be given to growing the business.

   i. Except as required for day-to-day operations, the BOD may distribute Dunedin profits, losses, income, gains, deductions, credits, etc.

   ii. The BOD may borrow funds and grant a lien against Dunedin Accounts Receivables. Such funds may be distributed to the Members or used for business expansion.

      1. In the event of a distribution, such distributed sums will be allocated by Dunedin to each Member as a liability and direct expense of that Member.

      2. All such distributed funds related to any Accounts Receivable Loan must be repaid in full before transfer, sale or withdrawal of any Stockholder.

d. **Distribution Priority:**

   i. **Initial Distributions:** The BOD will issue initial distributions, where possible, no later than March 1 to cover any tax liabilities for the preceding year.

   ii. **Subsequent Distributions:** Subsequent distributions will be made pursuant to the discretion of the BOD.

   iii. **Distribution on Dissolution:** On dissolution, any remaining assets will be proportionally distributed to the Members based on ownership interest.

## IX. MANAGEMENT

a. **Management:** The BOD will determine Dunedin's ultimate goals and provide day-to-day direction.

b. **Annual Reports and Fees**. The BOD will file any necessary annual or intermittent reports on behalf of Dunedin including any Statement's of Authority and Dunedin will pay any necessary filing fees or otherwise.

c. **Agents & Employees:** The BOD may enter into any agreements to hire and/or terminate any necessary agents and employees. Nothing in this Agreement precludes any Member from entering into a separate agency or employment relationship with Dunedin provided: such agency or employment relationship is memorialized in writing and approved by the BOD.

d. **Bank Accounts:** Dunedin funds will be kept in commercial or private bank accounts with signatories determined by the BOD.

e. **Annual Accounting:** The BOD will provide Members with an Annual Accounting on or before the Annual Meeting that will include a projected budget for the forthcoming year.

f. **Common Property Title:** Dunedin will maintain title in its name to all property, real and personal, tangible and intangible, acquired by Dunedin.

g. **Personnel Salaries and Benefits:** The BOD will determine any salaries and benefits for all personnel including the BOD and all Officers, Agents & Employees.

h. **Dunedin Expenses & Reimbursed Expenses:** The BOD will set a policy for approval of any necessary expenses and reimbursed expenses subject to BOD approval.

## X. MEMBER LIABILITY

a. **Limitation of Liability:** Members, Directors, Officers, and Agents will possess no liability for Dunedin debt(s) or other liabilities.

b. **Transactions with Members, Directors, and Officers:** Dunedin may enter into agreements with its own Members, Directors, and Officers for the provision of property, goods, or services provided that the price and terms are no less favorable than otherwise reasonably available.

## XI. DISSOLUTION AND TERMINATION

a. **Events Causing Dissolution:** Winding up and Dissolution will occur if:

   i. Any event making it unlawful for the Dunedin to continue to operate;

   ii. A majority vote of the BOD;

b. **The Members specifically waive the right to a judicial dissolution. The Members agree that irreparable harm would occur to Dunedin if any action were brought to dissolve Dunedin. The Members warrant that care was taken to protect their interests on termination or withdrawal and that each Member explicitly agrees to waive and renounce his right to court ordered dissolution, any partition, sale, or appointment of a liquidator for Dunedin or its assets.**

c. **The Withdrawal of any individual Member will not automatically cause Winding up and Dissolution to occur.**

DD EHLLC ____ CHLLLP

d. **Winding Up and Dissolution Procedure:** Upon majority vote, the BOD may direct an officer, agent, or employee to Wind Up and Dissolve Dunedin according to a time, manner, and terms determined by the BOD. The BOD will determine disbursement of any remaining assets by majority vote.

e. **Articles of Dissolution:** The BOD or its designee agent will execute any necessary Articles of Dissolution and file them with the State of Florida.

**XII. INDEMNIFICATION:**

a. Dunedin will individually indemnify its Members, Authorized Members, directors, officers, agents, and employees to the maximum extent provided by Florida Law for taking or refusing to take any action on behalf of Dunedin. Such indemnification will be in addition to any other benefit provided by the BOD or the Members by majority vote.

b. Nothing in this Agreement shall prevent any Member from working in any other business relationship or opportunity provided such work does not compete with Dunedin.

**XIII. AMENDMENTS:** Amendment, repeal, revision or alteration of this Agreement requires a majority vote of the Membership Interest.

**XIV. GENERAL PROVISIONS**

a. **Applicable Law: the Laws of the State of Florida govern This Agreement**. Venue and Jurisdiction are within any competent court in Pinellas County, Florida.

b. **Binding Provisions:** This Agreement is binding upon and inures to the benefit of the Members and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns.

c. **Compliance with Florida Statutes**: This Agreement will be amended to comply with any valid Florida Statutes. To the extent that any section or sections herein directly conflict with the Florida Statutes, the Florida Statutes will control until these By Laws are amended.

d. **Corporate Seal:** The corporate seal will bear the name, "Anna Dunedin Realty, LLC, 2012 Corporate Seal, Florida," and may be a facsimile, engraved, printed or otherwise reproduced.

e. **Entire Agreement:** This Agreement constitutes the entire understanding and agreement between the parties. No other agreements, understandings, restrictions, representations, or warranties exist between or among the parties. No modification or amendment of this Agreement will be binding unless it is in a writing signed by the parties.

f. **Fiscal Year:** Will run from January 1st to December 31st.

g. **Further Effect:** The parties agree to execute any other documents reasonably necessary to further effect and evidence the terms of this Agreement.

h. **Instrument Execution:** any person authorized or designated by the BOD will execute instruments and documents. This Agreement may be executed in duplicate copies and/or by facsimile and all such copies shall together be deemed an original document for any legal purpose.



i. **Notice:** All required notices under this Agreement will be in writing and delivered when actually delivered if by hand or three (3) days from mailing if by certified return receipt. Notice will be to the address listed below under each signature. Each signatory is responsible for providing the other signatories notice of any address changes in writing.

j. **Recitals:** The above listed Recitals are true and correct and incorporated into this Agreement.

k. **Representations and Warranties:** The parties represent and warrant:

   i. They each received, reviewed, and understood copies of this Agreement and any attachments;

   ii. They sought independent legal counsel where necessary and this Agreement was mutually drafted by all parties and should be interpreted as such whereby no inferences shall be given to one or the other party;

   iii. Each party possesses full authority to enter into and perform the terms of this Agreement;

   iv. Each party recognizes and intends that this is a legally binding Agreement.

   v. Each party is purchasing an ownership interest for investment and each understands that the ownership interest is not regulated by the Securities and Exchange Commission, is not registered under any applicable securities laws and is not transferable except as provided in this Agreement.

l. **Section Titles:** Headings are inserted for convenience and do not limit, define nor describe the scope or intent of this Agreement.

m. **Severability and Change in Law:** Each provision of this Agreement is to be considered severable. If any provision is not valid or contrary to any now existing or future law, such provision will not impair the remaining provisions. In the event there is a change in law that invalidates a provision of this Agreement, the Stockholders agree to modify this Agreement by the least amount necessary to comply with the change in law.

IN WITNESS, THE MEMBERS AGREE AND EXECUTE THIS AGREEMENT ON THE DATE SO INDICATED.

**Authorized Member:**

______________________________ Date: February 28, 2016

Darina Talanga for Elite Holdings LLC
1925 Dolphin Drive, Belleair Bluffs, Florida 33770

**Authorized Member:**

______________________________ Date: 3/1/16

Panos Vasiloudes, for Cygram Heritage LLLP.
5210 Webb Road, Tampa, Florida 33615

_____ EHLLC _____ CHLLLP

# ANNA DUNEDIN REALTY , L.L.C.
# MEMBER'S RESOLUTION

**FEBRUARY 28, 2016**

Following a duly noticed meeting in which a quorum was certified and present, the Members met on February 28, 2016 and unanimously voted to correct a scrivener's error and substitute "Elite Holdings, LLC" for "Talanga Family Trust" because the Talanga Family Trust owns Elite Holdings, LLC, and because the original intent was for Elite Holdings LLC., to own the membership interest.

**Member:**

______________________________________

Darina Talanga for Elite Holdings LLC
1925 Dolphin Drive, Belleair Bluffs, Florida 33770

Date: February 28, 2016

**Member:**

______________________________________

Panos Vasiloudes, for Cygram Heritage LLLP.
5210 Webb Road, Tampa, Florida 33615

Date: 3/1/16