# Settlement Agreement

# CONFIDENTIAL SETTLEMENT AGREEMENT

This Confidential Settlement Agreement (**Agreement),** is made and entered into by and between Cygram Heritage, LLLP., a Florida limited liability limited partnership on behalf of Elite Financial Edge, LLC., a Florida limited liability company, Elite Car Sales, LLC., a Florida limited liability company, Elite Care Sales of Clearwater, Inc., a Florida corporation, Villa Anna Assisted Living Facility, LLC., a Florida limited liability company, Sophia Highlands Realty, LLC., a Florida limited liability company, and Anna Dunedin Realty, LLC., a Florida limited liability company (collectively the foregoing will be referred to as the "**Companies**") and Zdravko Talanga, an individual, Darina Talanga, an individual, Ivan Talanga, an individual, Anna Talanga, an individual, Elite Holdings, LLC., a Florida limited liability company, Ivan's Auto Repair, Inc., a Florida corporation, and the Adriatic Café LLC., a Florida limited liability company (collectively the individuals and Elite Holdings, LLC., Ivan's Auto Repair, Inc., and the Adriatic Café, LLC., will be referred to as the "**Talangas**") (The Companies together with the Talangas will be referred to as the "**Parties**" and individually may be referred to as a "**Party**"). This Agreement will first be executed by the Talangas and then will be dated on the date executed by the Companies.

## W I T N E S S :

**WHEREAS**, the Parties wish to fully and finally resolve those claims alleged by the Companies in *Elite Financial Edge, LLC, et al. v. Zdravko Talanga, et al.,* Case Number 17-CA-000681-CI, filed in the Circuit Court of the Sixth Judicial Circuit in Pinellas County, Florida ("**Lawsuit**"), as well as any and all claims each may have against the other regardless of whether the same arise out of, or are related to, whether by complaint, compulsory counter-claim, permissive counter-claim, third-party, cross-claim or otherwise, the allegations in the Lawsuit; and

**WHEREAS**, the Parties have been advised to carefully review this Agreement and to discuss its provisions with legal representative(s) of their choice;

**NOW, THEREFORE**, it is agreed between the Parties as follows:

1.      This Agreement shall not be construed as an admission by the Companies or the Talangas or by any person or entity associated with them, of any alleged wrongful acts. The Companies and their agents, associates, and employees and the Talangas and their agents, associates, and employees each specifically disclaim any liability or wrongdoing whatsoever. However, nothing in this Agreement shall serve as a consent, or acceptance of the other Party's alleged wrongful acts by a Party.

2.      The Companies and their related and affiliated companies, subsidiaries, as well as their past and present officers, directors, owners, managers, members, shareholders, supervisors,

employees, agents, insurers, assigns, including, but not limited to Dr. Panayiotis Vasiloudes, individually, Helen Vasiloudes, individually, Pat Margas, individually, and all those who may claim by or through them agree that, in consideration of the promises of the Talangas contained in this Agreement, unconditionally shall release and waive any and all existing civil claims, legal or equitable, against the Talangas, including but not limited to (a) claims as the same appear in the Lawsuit; (b) claims in tort; (c) claims arising under any statute; and (d) claims for costs and attorney's fees. By executing this Agreement, the Companies hereby release all past civil claims, known or unknown, against the Talangas until the date of the Settlement Agreement.

3.      The Talangas agree that in consideration of the Companies' promises as contained in this Agreement, they unconditionally shall release and waive any and all existing civil claims, legal or equitable, against the Companies, their related and affiliated companies, and their respective past and present directors, officers, supervisors, employees, agents, insurers, assigns, including, but not limited to Dr. Panayiotis Vasiloudes, individually, Helen Vasiloudes, individually, Pat Margas, individually, and all those who may claim by or through them of (a) potential counterclaims which the Talangas could have brought in the Lawsuit; (b) claims in tort; (c) claims arising under any statute; and (d) claims for costs and attorney's fees. By executing this Agreement, the Talangas hereby release all past civil claims, known or unknown, against the Companies until the date of the Settlement Agreement.

4.      Each Party will bear their own costs and attorney's fees arising out of or related to the Parties' disputes as resolved by this Agreement, as such costs and attorney's fees have been incurred to the date of execution of this Agreement.

5.      The Parties acknowledge that they have no legal obligation to provide each other with the consideration set forth herein, other than pursuant to this Agreement.

6.      The Parties represent that they have not previously assigned or transferred, or purported to assign or transfer, to any person or entity, all or part of any claim against the other Party or against the other Party's releasees. This Agreement will be binding upon the Parties and their heirs, administrators, executors, successors and assigns.

7.      The Talangas will bring that certain Pat Margas loan (present total of $58,000.00) current within 45 days from the date of this Agreement and thereafter agree to pay per the terms of the Margas Loan for payment in full by December 1, 2017. In the event of a default of the Pat Margas Loan, the Companies may seek: any remedy pursuant to the terms of the existing loan document; may immediately hold the Talangas in Default of this Agreement; and/or may accelerate any promissory notes and foreclose upon any mortgages. Pat Margas has already notified the Talangas of bounced or non-sufficient funds checks, has filed Civil Theft Letters and has reported such bounced or non-sufficient funds checks to the Pinellas County State Attorney's

Office. Pat Margas agrees to forego treble damages and to drop any charges with the State Attorney's Office but only when his loan is repaid in full.

8.      The Talangas will pay to Helen Vasiloudes a total of $38,000.00 on or before December 1, 2017, related to the sale of her vehicle. In the event that Helen Vasiloudes is not paid $38,000.00 on or before December 1, 2017, the Companies may: immediately hold the Talangas in Default of this Agreement; accelerate any promissory notes; and/or foreclose upon any mortgages. Helen Vasiloudes has already notified the Talangas of bounced or non-sufficient funds checks, has filed Civil Theft Letters, and has reported such of bounced or non-sufficient funds checks to the Pinellas County State Attorney's Office. Helen Vasiloudes agrees to forego treble damages and to drop any charges with the State Attorney's Office but only when she is paid in full.

9.      Within 5 business days of the Talangas paying-in-full the Rent due for Villa Anna for June 2017 and July 2017, and the taxes for 2016, the Companies will authorize the release of the Mercedes C300, that was leased by Villa Anna Assisted Living Facility to the Talangas from a location designated by the Companies in Pinellas County, Florida. Notwithstanding the foregoing, and regardless of the ownership of Villa Anna Assisted Living Facility, the Talangas agree that such vehicle may be held by the Companies' designee without harm or recourse and only released to the Talangas until the terms of this paragraph are met.

10.     The Talangas agree to refinance Anna Dunedin Realty, LLC, within 2 years from the date of this Agreement. Provided refinancing and payment are made within 2 years from the date of this Agreement, at closing on refinancing when any outstanding mortgages are paid in full, and payment of $150,000.00 is made to Cygram Heritage LLLP, the Companies will convey to the Talangas and/or their assigns any and all interest they may have in Anna Dunedin Realty, LLC. If refinancing and payment are not made within 2 years from the date of this Agreement, or the lease with Villa Anna Assisted Living Facility is found to be in default or cancelled for any reason, at any time the Companies may evict any tenants and/or sell or otherwise dispose of the real property. Except for refinancing noted above, the Talangas may not use Anna Dunedin Realty, LLC as a guarantee for any mortgages and may not use the property as a surety while it is pledged to Cygram Heritage LLLP unless approved in writing. Violation will be terms for immediate default of the Mortgage.

11.     The Talangas agree to refinance Sophia Highland, LLC, within 2 years from the date of this Agreement.  Provided refinancing and payment are made within 2 years from the date of this Agreement, at closing on refinancing when any outstanding mortgages are paid in full, and payment of $100,000.00 is made to Cygram Heritage LLLP, the Companies will convey to the Talangas and/or their assigns any and all interest they may have in Sophia Highland Realty, LLC. If refinancing and payment are not made within 2 years, or the lease with Villa Anna Assisted Living Facility is found to be in default or cancelled for any reason, at any time the Companies

may evict any tenants and/or sell or otherwise dispose of the real property. Except for refinancing noted above, the Talangas may not use Sophia Highland Realty, LLC as a guarantee for any mortgages and may not use the property as a surety while it is pledged to Cygram Heritage LLLP unless approved in writing. Violation will be terms for immediate default of the Mortgage.

12.    The Talangas will bring current the past rent due on Villa Anna Assisted Living Facility, LLC, in the amount of $12,300.00 paid to Anna Dunedin Realty, LLC, within 60 days of this Agreement.   The rent is set at $3,000.00 per month and rent for June and July will be made thereafter timely. There are unpaid tax liabilities that the Talangas must also pay in full. Upon written documentation by the Talangas to Cygram Heritage LLLP of the rent being brought current, all outstanding tax liabilities being paid, and the Talangas being current with the terms of this Agreement, the Companies will dismiss with prejudice the pending eviction action against Villa Anna Assisted Living Facility, LLC., and will transfer to the Talangas the entire ownership interest, including all assets and liabilities, for Villa Anna Assisted Living Facility as if the transfer occurred on January 1, 2017. By their execution of this Agreement, the entire ownership interest in Villa Anna Assisted Living Facility unanimously instructs the Florida Legal Advocacy Group of Tampa Bay to prepare such documents for execution.

13.    The Talangas will execute an attached Promissory Note (**Promissory Note)** in the amount of $1,169,100.00, and Mortgages (**Mortgages**) for 1925 Dolphin Drive, 18400 US Highway 19 North, Villa Anna, and Sophia Highland that are made part of this Agreement. Provided the Talangas comply with the terms of this Agreement and its related Notes, Mortgages, and Leases, the Companies agree not to formally record the Mortgages for 6 months from the date of this Agreement. But the Talangas agree that the Companies may formally record any or all Mortgages in the event of any material breach of this Agreement provided the Companies provide the Talangas with the same Notice and Opportunity to Cure as that provided in the attached Promissory Note, before 6 month's time. The Talangas further agree that the proceeds from their refinancing of any real property and/or the use of any associated line of credit line will first be used to pay off Pat Margas and Helen Vasiloudes, as noted above, and then to complete construction on the Sophia Highland property.   The Talangas will be responsible for reimbursing the Companies expenses related to recording the Mortgage and any fees and costs associated with the same within 30 days of being presented with written documentation of such costs or expenses.

14.    The Parties will cooperate to wind down and close Elite Car Sales, LLC, Elite Car Sales of Clearwater, Inc., and Elite Financial Edge, LLC (**Elite Entities**). Such a winding down and closure will be managed and directed by Panayiotis Vasiloudes for Cygram Heritage LLLP on behalf of each of the Companies. Cygram Heritage LLLP., will provide the Talangas with all necessary documentation. The Talangas agree that immediately upon signing this Agreement that they will not in any way represent that they own, manage, or direct any of the Elite Entities. The Talangas will immediately surrender any and all access to any bank accounts, other intangible and

tangible assets related to the Companies. The Talangas will be responsible, jointly and severally, for their pro-rata share of any financial losses or company shortfalls. And, the Talangas will be responsible for payment for the entire share of any company property used for individual or personal gain and documented by the company records; such as any boats, motor vehicles, motor cycles, three-wheel cycles, personal watercraft, and other goods. Any intangible or tangible assets possessed by the Companies related to Villa Anna Assisted Living Facility will be provided to the Talangas when the ownership interests, in ¶12 are transferred. The Companies will provide the Talangas with any company business or financial records necessary for the Talangas to file their taxes.

15.     Any and all prior understandings and agreements between the parties with respect to the subject matter of this Agreement are merged into this Agreement, which fully and completely expresses the entire Agreement. However, the Promissory Note, the Mortgages, the Leases, and any and all existing corporate documents current at the time this Agreement is executed; shall be considered additional terms to this Agreement and shall be enforced as if all such terms were incorporated into this Agreement. In the event of any conflict, the terms of this Agreement shall control.

16.     The Companies will dismiss with prejudice the above captioned Lawsuit within 5 business days of the date of this Agreement.

17.     The Parties represent that no inducements, statements or representations have been made that are not set out in this Agreement and that they do not rely on any inducements, statements or representations not set forth here. The Parties further represent that they are of sound mind and body to enter into this Agreement, have all the necessary authority to enter into this Agreement on behalf of a the companies and corporations, and completely understand its contents, that they have been given a full and fair opportunity to discuss the legal significance and ramifications of the Agreement with legal representative(s) of their choice, and that they enter into the Agreement freely and voluntarily and with the intent to be bound. This Agreement will not be subject to the rule of construction that contractual ambiguities are to be construed against the drafter of a contract.

18.     This Agreement is made and entered into in the state of Florida, and shall in all respects be interpreted, enforced and governed under the laws of Florida.  The state courts located in Pinellas County, Florida will be the exclusive venue for the resolution of any and all disputes arising out of or connected in any way with this Agreement, and the Parties hereby agree to submit to the jurisdiction of the said courts. The Parties agree that Cygram Heritage may enforce this Agreement at any time. In the event of a breach of this Agreement, the non-breaching Party may recover, in addition to damages, the reasonable costs and fees, including attorney's fees, incurred in establishing the breach of the Agreement and securing judicial relief. In addition, in the event

that any provisions of this Agreement are breached, the non-breaching party may recover damages for the breach without waiving the right to insist on the breaching Party's continued fulfillment of all other obligations under this Agreement.

19.     Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the remaining parts, terms or provisions shall remain valid unless declared otherwise by the court.   Any part, term or provision that is determined to be illegal or invalid shall be deemed not to be a part of this Agreement.

20.     This Agreement may be amended, modified or changed only by written instrument executed by authorized representatives of both Parties.

21.     The Parties agree to keep the terms of this Agreement confidential and they will refrain from disclosing to others the terms of this Agreement, except for disclosures to their own legal counsel and necessary and limited disclosures in the context of accounting, tax, securities, banking or insurance matters, as required by regulatory agencies, or disclosures resulting from a properly issued request for production of documents or subpoena in a lawsuit pending in a court of competent jurisdiction.

22.     This Agreement may be executed in one or more counterparts, all of which together shall constitute one and the same instrument and agreement, but this Agreement will only be effective after fully executed by all Parties.

23. The Talangas agree that Attorney Adam Levine and/or the Florida Legal Advocacy Group may represent the Companies, Panayiotis Vasiloudes, Helen Vasiloudes, or Pat Margas to enforce this Agreement. The Companies agree that Craig Rothburd may represent the Talangas to enforce this Agreement.

24. The Parties each agree that all proceeds from: the winding up and closing of any or all of the Companies' business entities; the sale of company-owned goods or intangible property; or from the sale of any real property belonging to any of the Companies, will be first be used to satisfy the 2 million dollars Hancock Bank Loan and then used to satisfy other outstanding promissory notes before any shareholder or member distributions.

EACH PARTY HERETO HEREBY ACKNOWLEDGES THAT HE/SHE POSSESSES THE REQUISITE AUTHORITY TO SIGN IN THE SPECIFIC CAPACITY OR CAPACITIES ENUMERATED HEREIN, WAS REPRESENTED BY COUNSEL FO THEIR CHOOSING, AND EXECUTED THE INSTANT MUTUAL GENERAL RELEASE FREELY AND VOLUNTARILY.

Date: _6/29/17_

**Panayiotis Vasiloudes**, for Cygram Heritage, LLLP., on behalf of Elite Financial Edge, Elite Car Sales, Elite Car Sales of Clearwater, Villa Anna Assisted Living Facility, Anna Dunedin Realty, and Sophia Highland Realty

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

The following was sworn and subscribed before undersigned authority on this **29** rd day of June 2017, by Panayiotis Vasiloudes who ____ is _personally known to me_ or who ____ produced _____ as proof of his identity and each took an oath as to the veracity and intent to comply with this instrument.

NOTARY PUBLIC

**ELIZABETH F SMOOK**
MY COMMISSION # FF206924
EXPIRES March 05, 2019
[Notary SEAL]
(407) 398-0153    FloridaNotaryService.com

SIGNATURE

Commission Number: _FF 206924_

My Commission Expires: _3/5/19_

EACH PARTY HERETO HEREBY ACKNOWLEDGES THAT HE/SHE POSSESSES THE REQUISITE AUTHORITY TO SIGN IN THE SPECIFIC CAPACITY OR CAPACITIES ENUMERATED HEREIN, WAS REPRESENTED BY COUNSEL FO THEIR CHOOSING, AND EXECUTED THE INSTANT MUTUAL GENERAL RELEASE FREELY AND VOLUNTARILY.

**Zdravko Talanga,** individually

Date: 6/29/17

**Zdravko Talanga,** for Elite Holdings
Ivan's Auto Repair, and the Adriatic
Café.

Date: 6/29/17

STATE OF FLORIDA

COUNTY OF Hillsborough

The following was sworn and subscribed before undersigned authority on this 29th day of June 2017, by Zdravko Talanga who ____ is personally known to me or who ✓ produced Florida Drivers license as proof of his identity and each took an oath as to the veracity and intent to comply with this instrument.

MARIA GATTA ROPP
Notary Public - State of Florida
Commission # FF 928552
My Comm. Expires Oct 24, 2019
Bonded through National Notary Assn.

[Notary SEAL]

NOTARY PUBLIC

SIGNATURE

Commission Number: FF 928552

My Commission Expires: 10/24/19

**EACH PARTY HERETO HEREBY ACKNOWLEDGES THAT HE/SHE POSSESSES THE REQUISITE AUTHORITY TO SIGN IN THE SPECIFIC CAPACITY OR CAPACITIES ENUMERATED HEREIN, WAS REPRESENTED BY COUNSEL FO THEIR CHOOSING, AND EXECUTED THE INSTANT MUTUAL GENERAL RELEASE FREELY AND VOLUNTARILY.**

_____     Date: _6/29/17_

**Darina Talanga,** individually

_____     Date: _6/29/17_

**Darina Talanga,** for Elite Holdings
Ivan's Auto Repair, and the Adriatic
Café.


STATE OF FLORIDA

COUNTY OF Hillsborough

The following was sworn and subscribed before undersigned authority on this 20th day of June 2017, by Darina Talanga who ___ is personally known to me or who ✓ produced Florida Drivers licens as proof of his identity and each took an oath as to the veracity and intent to comply with this instrument.

```
MARIA GATTA ROPP
Notary Public - State of Florida
Commission # FF 928552
My Comm. Expires Oct 24, 2019
Bonded through National Notary Assn.
```

NOTARY PUBLIC

[Notary SEAL]

_____
SIGNATURE

Commission Number: FF928552

My Commission Expires: 10/24/19

**EACH PARTY HERETO HEREBY ACKNOWLEDGES THAT HE/SHE POSSESSES THE REQUISITE AUTHORITY TO SIGN IN THE SPECIFIC CAPACITY OR CAPACITIES ENUMERATED HEREIN, WAS REPRESENTED BY COUNSEL FO THEIR CHOOSING, AND EXECUTED THE INSTANT MUTUAL GENERAL RELEASE FREELY AND VOLUNTARILY.**

_____

**Anna Talanga,** individually

Date: 29 JUNE 2017

_____

**Anna Talanga,** for Elite Holdings Ivan's Auto Repair, and the Adriatic Café.

Date: 29 JUNE 2017

STATE OF FLORIDA

COUNTY OF Hillsborough

The following was sworn and subscribed before undersigned authority on this 29th day of June 2017, by Anna Talanga who ___ is personally known to me or who ✓ produced Florida Drivers License as proof of his identity and each took an oath as to the veracity and intent to comply with this instrument.

NOTARY PUBLIC

MARIA GATTA ROPP
Notary Public - State of Florida
Commission # FF 928552
My Comm. Expires Oct 24, 2019
Bonded through National Notary Assn.

[Notary SEAL]

_____

SIGNATURE

Commission Number: FF 928552

My Commission Expires: 10/24/19

**EACH PARTY HERETO HEREBY ACKNOWLEDGES THAT HE/SHE POSSESSES THE REQUISITE AUTHORITY TO SIGN IN THE SPECIFIC CAPACITY OR CAPACITIES ENUMERATED HEREIN, WAS REPRESENTED BY COUNSEL FO THEIR CHOOSING, AND EXECUTED THE INSTANT MUTUAL GENERAL RELEASE FREELY AND VOLUNTARILY.**

_____     Date: 06-29-17

**Ivan Talanga, individually**

_____     Date: 06-29-17

**Ivan Talanga, for Elite Holdings**
Ivan's Auto Repair and the Adriatic
Café.

STATE OF FLORIDA

COUNTY OF Hillsborough

The following was sworn and subscribed before undersigned authority on this 29th day of June 2017, by Ivan Talanga who ___ is personally known to me or who ✓ produced Florida Driver License as proof of his identity and each took an oath as to the veracity and intent to comply with this instrument.

MARIA GATTA ROPP
Notary Public - State of Florida
Commission # FF 928552
My Comm. Expires Oct 24, 2019
Bonded through National Notary Assn.

NOTARY PUBLIC

_____
SIGNATURE

[Notary SEAL]

Commission Number: FF 928 552

My Commission Expires: 10/24/19

# Promissory Note

## SECURED BALLOON PROMISSORY NOTE

$1,169,100.00                                                          May 31, 2017

FOR VALUE RECEIVED, the undersigned, Zdravko Talanga, Darina Talanga, Ivan Talanga, Anna Talanga, Elite Holings, LLC., Ivan's Autobody, and the Adriatic Café, (collectively "Maker"), jointly and severally promise to pay to the order of Cygram Heritage, LLLP. ("Holder"), at 5210 Webb Road, Tampa Florida, or at such other place as Holder hereof may designate, the sum of One Million One Hundred Sixty-nine Thousand and One Hundred Dollars ($1,169,100.00) of principal, together with interest at the rate of Seven percent (7%) on the unpaid balance of such amount from the date of this Note according to the amortization schedule attached.

This Note shall be repaid in three steps:

> Step 1: Months 1 – 7, seven (7) equal monthly installments of interest only based on a principal balance of $768,100.00, for a total of $4,480.58 per month. Month 1 shall begin on July 1, 2017.

> Step 2: Months 8 – 60, fifty three (53) equal monthly installments of interest only based on the principal balance of $1,169,100.00, for a total of $6,819.75 per month.

> Step 3: one hundred and twenty (120) equal monthly installments of principal and interest based on the principal balance of $1,169,100.00, for a total of $9,064.02 per month.

Each payment under this Note is payable monthly, in arrears, at an interest rate of seven percent (7%), which shall be compounded annually. All payments of principal and interest shall be made and immediately available in United States Dollars. The outstanding principal indebtedness, together with all accrued and unpaid interest thereon, if not sooner paid, shall be due and payable Fifteen (15) years from the date of this Note.

Payment is due on the first day of each month. Maker may prepay this Note in full or in part without penalty. There shall be a 5 day grace period before this Note will be in default. If any due date falls on a Saturday, Sunday, or legal Holiday, then the due date, inclusive of any grace period, will be extended until the next   business day.

Maker and Holder agree that there shall be a 10 day Opportunity to Cure Period immediately following the 5 day grace period, where Maker may cure. Holder may provide provide Notice of Default on the Fifth Day of the Grace Period or at anytime thereafter. If Maker does not pay Holder in full before the end of the Opportunity to Cure Period (10 days following the 5 day grace period), Maker agrees that Holder may, without further demand, foreclose on all or some of the attached Mortgages for 1925 Dolphin Drive, 353 Colonial Court, 1201 North Highland Avenue and the Highland Lot, and/or 18400 US Highway 19 North.

Upon the occurrence as to Maker of any of the following events, Holder hereof, at Holder's sole election, may accelerate and declare all or any portion of the principal on this Note to be immediately due and payable, and may proceed at once and without further notice to enforce this Note or any instrument securing or security for this Note, or both, in accordance with their terms: (a) failure to pay any amount due on the Note (or any renewal or extension hereof when due) after any applicable grace period and no prior written notice of default; (b) the breach of any of the provisions of that certain Leases for Anna Dunedin and/or Sophia Highland and the Mortgage between Maker and the Holder as defined in the Mortgage; (c) voluntary or involuntary application for, or appointment of a receiver for Maker; filing of a voluntary or involuntary petition by or against Maker under any of the bankruptcy laws or amendments thereto; and (d) any falure to make any payment under this Note, under the Confidential Settlement Agreement, or the Leases. Failure of Holder to exercise its rights or remedies provided herein at any time or times shall not be construed as a waiver thereof by Holder, nor shall Holder be prohibited from thereafter exercising such rights or remedies at any subsequent time.

Maker represents and warrants that, to the extent possible, this Mortgage may not be discharged in bankruptcy and that if necessary the Trustee may sell any associated Real Property to make the Holder whole.

The debt represented by this Note is secured by the real property more specifically described in that certain Mortgage between the Maker and the Holder.

Maker agrees to pay all costs of collection, including, in case the principal of this Note or any payment of the principal is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security thereof, whether suit be brought or not, attorneys' fees, court costs, collection expenses and other expenses which Holder may incur or pay in the prosecution or defense of its rights hereunder, whether in judicial proceedings, including bankruptcy court and appellate proceedings, or whether out of court.

No delay or failure of Holder in the exercise of any right or remedy hereunder or under any other agreement or undertaking securing or related hereto shall affect any such right or remedy, and no single or partial exercise of any such right or remedy shall preclude any further exercise thereof, and no action taken or omitted by Holder shall be deemed a waiver of any such right or remedy.

This Note shall be binding upon Maker and the personal representatives, heirs and assigns of Maker and upon Holder and its personal representatives, heirs and assigns.

**Miscellaneous:**

**Severability**.  If any provision of this Note or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Note nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

**Binding Effect**.  The covenants, obligations and conditions herein contained shall be binding on and inure to the benefit of the heirs, legal representatives, and assigns of the parties hereto.

**Descriptive Headings**.  The descriptive headings used herein are for convenience of reference only and they are not intended to have any effect whatsoever in determining the rights or obligations under this Note.

**Entire Agreement.** This Note represents the entire agreement between the Parties. No agreements, understandings, restrictions, representations, or warranties exist between or among the parties other than those directly written in this Note. No amendment or modification of this Note will be binding unless in writing signed by all Parties.

**Construction**.  The pronouns used herein shall include, where appropriate, either gender or both, singular and plural.

**Governing Law**.  This Note shall be governed, construed and interpreted by, through and under the Laws of the State of Florida.

**Jurisdiction and Venue.** Borrower and Payee agree that authority over this Promissory Note

shall lie in the appropriate Courts of the State of Florida in Pinellas County.

**Duplicates.** This Promissory Note may be executed in duplicate and shall be considered as if executed on the same page.

**Unconditional Payment.** Borrower is responsible for all obligations represented by this Promissory Note and is and shall be obligated to pay principal and any and all other amounts which become payable hereunder absolutely and unconditionally and without any abatement, postponement, diminution or deduction and without any reduction for counterclaim or setoff.

**Notices.** Notice maybe by overnight delivery, hand delivery, currier, or E-mail provided a receipt is obtained. Notice shall be deemed delivered on the date of mailing or delivery. Copies of all Notices to the Maker shall be delivered to 1925 Dolphin Drive, Belleair Bluffs, Florida and to Maker's Counsel, Craig Rothburd, 320 W. Kennedy Boulevard, Suite 700, Tampa, Florida 33606. Copies of all Notices to the Holder shall be delivered to 5210 Webb Road, Tampa, Florida and to Adam S. Levine, 1180 Gulf Boulevard, Suite 303, Clearwater, Florida 33767. Holder and Maker are each responsible for keeping each other informed, in writing, of any changes in counsel or address.

**Attorneys Fees and Costs.** The prevailing party shall be entitled to reasonable attorneys' fees, costs and disbursements in addition to any other relief to which such party may be entitled.

[The remainder of this page left blank]

**MAKER:**

_Talang_ (signature)

Date: 6/29/17

**Zdravko Talanga,** individually

_Talb_ (signature)

Date: 6/29-17

**Zdravko Talanga,** for Elite Holdings
Ivan's Auto Repair, and the Adriatic
Café.

STATE OF FLORIDA
COUNTY OF Hillsborough

The following was sworn and subscribed before undersigned authority on this 29th day of June 2017, by Zdravko Talanga who ___ is personally known to me or who ✓ produced ~~Florida Drivers licu~~ as proof of his identity and each ~~took an oath~~ as to the veracity and intent to comply with this instrument.

MARIA GATTA ROPP
Notary Public - State of Florida
Commission # FF 928552
My Comm. Expires Oct 24, 2019
Bonded through National Notary Assn.

[Notary SEAL]

NOTARY PUBLIC

SIGNATURE

Commission Number: ~~FF~~ 928552

My Commission Expires: 10/24/19

Exhibit D: Elite v. Talanga Settlement                    018

**MAKER**

_(signature)_

_____
**Darina Talanga,** Individually

Date: ___6/29/17___

_(signature)_

_____
**Darina Talanga,** for Elite Holdings
Ivan's Auto Repair, and the Adriatic
Café.

Date: ___6/29/17___

STATE OF FLORIDA

COUNTY OF ___Hillsborough___

The following was sworn and subscribed before undersigned authority on this __29th__ day of June 2017, by Darina Talanga who ___ is personally known to me or who __✓__ produced __Florida Drivers License__ as proof of his identity and each took an oath as to the veracity and intent to comply with this instrument.

MARIA GATTA ROPP
Notary Public - State of Florida
Commission # FF 928552
My Comm. Expires Oct 24, 2019
Bonded through National Notary Assn.

[Notary SEAL]

NOTARY PUBLIC

_____
SIGNATURE
Commission Number: __FF 928552__
My Commission Expires: __10/24/19__

**MAKER**

_(signature)_

**Anna Talanga,** individually

Date: 29 JUNE 2017

_(signature)_

**Anna Talanga,** for Elite Holdings
Ivan's Auto Repair, and the Adriatic
Café.

Date: 29 JUNE 2017

STATE OF FLORIDA

COUNTY OF Hillsborough

The following was sworn and subscribed before undersigned authority on this 29th day of June 2017, by Anna Talanga who ___ is personally known to me or who ✓ produced Florida Drivers License as proof of his identity and each took an oath as to the veracity and intent to comply with this instrument.

MARIA GATTA ROPP
Notary Public - State of Florida
Commission # FF 928552
My Comm. Expires Oct 24, 2019
Bonded through National Notary Assn.

[Notary SEAL]

NOTARY PUBLIC

_(signature)_

SIGNATURE

Commission Number: FF 928552

My Commission Expires: 10/24/19

**MAKER**

Date: 06-29-17

Ivan Talanga, individually

Date: 06-29-17

Ivan Talanga, for Elite Holdings
Ivan's Auto Repair and the Adriatic
Café.

STATE OF FLORIDA
COUNTY OF Hillsborough

The following was sworn and subscribed before undersigned authority on this 29th day of
June 2017, by Ivan Talanga who ___ is personally known to me or who ✓ produced
Florida Drivers License as proof of his identity and each took an oath as to the veracity and
intent to comply with this instrument.

MARIA GATTA ROPP
Notary Public - State of Florida
Commission # FF 928552
My Comm. Expires Oct 24, 2019.
Bonded through National Notary Assn.

[Notary SEAL]

NOTARY PUBLIC

SIGNATURE
Commission Number: FF 928552
My Commission Expires: 10/24/19

# Promissory Note Amortization Schedule

| Month / Payment Number | Principal Balance* | Annual Interest Rate | Interest Payment | Principal Payment | Total Payment = Principal + Interest | Remaining Principal Balance |
|---|---|---|---|---|---|---|
| 1 | *Pr nc pa Ba ance s $1,169,100 but payment based on $768,100.00 for f rst 7 months | 7% | 4,480.58 | 0.00 | 4,480.58 | 1,169,100.00 |
| 2 | *Pr nc pa Ba ance s $1,169,100 but payment based on $768,100.00 for f rst 7 months | 7% | 4,480.58 | 0.00 | 4,480.58 | 1,169,100.00 |
| 3 | *Pr nc pa Ba ance s $1,169,100 but payment based on $768,100.00 for f rst 7 months | 7% | 4,480.58 | 0.00 | 4,480.58 | 1,169,100.00 |
| 4 | *Pr nc pa Ba ance s $1,169,100 but payment based on $768,100.00 for f rst 7 months | 7% | 4,480.58 | 0.00 | 4,480.58 | 1,169,100.00 |
| 5 | *Pr nc pa Ba ance s $1,169,100 but payment based on $768,100.00 for f rst 7 months | 7% | 4,480.58 | 0.00 | 4,480.58 | 1,169,100.00 |
| 6 | *Pr nc pa Ba ance s $1,169,100 but payment based on $768,100.00 for f rst 7 months | 7% | 4,480.58 | 0.00 | 4,480.58 | 1,169,100.00 |
| 7 | *Pr nc pa Ba ance s $1,169,100 but payment based on $768,100.00 for f rst 7 months | 7% | 4,480.58 | 0.00 | 4,480.58 | 1,169,100.00 |
| 8 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |
| 9 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |
| 10 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |
| 11 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |
| 12 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |
| 13 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |
| 14 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |
| 15 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |
| 16 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |
| 17 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |
| 18 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |
| 19 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |
| 20 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |
| 21 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |
| 22 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |
| 23 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |
| 24 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |
| 25 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | 6,819.75 | 1,169,100.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 26 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 27 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 28 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 29 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 30 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 31 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 32 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 33 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 34 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 35 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 36 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 37 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 38 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 39 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 40 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 41 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 42 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 43 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 44 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 45 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 46 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 47 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 48 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 49 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 50 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 51 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 52 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 53 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 54 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 55 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 56 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 57 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 58 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 59 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 60 | $1,169,100.00 | 7% | 6,819.75 | 0.00 | **6,819.75** | 1,169,100.00 |
| 61 | $1,169,100.00 | 7% | 6,819.75 | 2,244.27 | **9,064.02** | 1,166,855.73 |
| 62 | $1,166,855.73 | 7% | 6,806.66 | 2,257.36 | **9,064.02** | 1,164,598.37 |
| 63 | $1,164,598.37 | 7% | 6,793.49 | 2,270.53 | **9,064.02** | 1,162,327.84 |
| 64 | $1,162,327.84 | 7% | 6,780.25 | 2,283.77 | **9,064.02** | 1,160,044.07 |
| 65 | $1,160,044.07 | 7% | 6,766.92 | 2,297.10 | **9,064.02** | 1,157,746.97 |
| 66 | $1,157,746.97 | 7% | 6,753.52 | 2,310.50 | **9,064.02** | 1,155,436.47 |
| 67 | $1,155,436.47 | 7% | 6,740.05 | 2,323.97 | **9,064.02** | 1,153,112.50 |
| 68 | $1,153,112.50 | 7% | 6,726.49 | 2,337.53 | **9,064.02** | 1,150,774.97 |
| 69 | $1,150,774.97 | 7% | 6,712.85 | 2,351.17 | **9,064.02** | 1,148,423.80 |
| 70 | $1,148,423.80 | 7% | 6,699.14 | 2,364.88 | **9,064.02** | 1,146,058.92 |
| 71 | $1,146,058.92 | 7% | 6,685.34 | 2,378.68 | **9,064.02** | 1,143,680.24 |
| 72 | $1,143,680.24 | 7% | 6,671.47 | 2,392.55 | **9,064.02** | 1,141,287.69 |
| 73 | $1,141,287.69 | 7% | 6,657.51 | 2,406.51 | **9,064.02** | 1,138,881.18 |
| 74 | $1,138,881.18 | 7% | 6,643.47 | 2,420.55 | **9,064.02** | 1,136,460.63 |
| 75 | $1,136,460.63 | 7% | 6,629.35 | 2,434.67 | **9,064.02** | 1,134,025.96 |
| 76 | $1,134,025.96 | 7% | 6,615.15 | 2,448.87 | **9,064.02** | 1,131,577.09 |
| 77 | $1,131,577.09 | 7% | 6,600.87 | 2,463.15 | **9,064.02** | 1,129,113.94 |
| 78 | $1,129,113.94 | 7% | 6,586.50 | 2,477.52 | **9,064.02** | 1,126,636.42 |
| 79 | $1,126,636.42 | 7% | 6,572.05 | 2,491.97 | **9,064.02** | 1,124,144.45 |
| 80 | $1,124,144.45 | 7% | 6,557.51 | 2,506.51 | **9,064.02** | 1,121,637.94 |
| 81 | $1,121,637.94 | 7% | 6,542.89 | 2,521.13 | **9,064.02** | 1,119,116.81 |

Exhibit D: Elite v. Talanga Settlement        024

| 82 | $1,119,116.81 | 7% | 6,528.18 | 2,535.84 | **9,064.02** | 1,116,580.97 |
| 83 | $1,116,580.97 | 7% | 6,513.39 | 2,550.63 | **9,064.02** | 1,114,030.34 |
| 84 | $1,114,030.34 | 7% | 6,498.51 | 2,565.51 | **9,064.02** | 1,111,464.83 |
| 85 | $1,111,464.83 | 7% | 6,483.54 | 2,580.48 | **9,064.02** | 1,108,884.35 |
| 86 | $1,108,884.35 | 7% | 6,468.49 | 2,595.53 | **9,064.02** | 1,106,288.82 |
| 87 | $1,106,288.82 | 7% | 6,453.35 | 2,610.67 | **9,064.02** | 1,103,678.15 |
| 88 | $1,103,678.15 | 7% | 6,438.12 | 2,625.90 | **9,064.02** | 1,101,052.25 |
| 89 | $1,101,052.25 | 7% | 6,422.80 | 2,641.22 | **9,064.02** | 1,098,411.03 |
| 90 | $1,098,411.03 | 7% | 6,407.40 | 2,656.62 | **9,064.02** | 1,095,754.41 |
| 91 | $1,095,754.41 | 7% | 6,391.90 | 2,672.12 | **9,064.02** | 1,093,082.29 |
| 92 | $1,093,082.29 | 7% | 6,376.31 | 2,687.71 | **9,064.02** | 1,090,394.58 |
| 93 | $1,090,394.58 | 7% | 6,360.64 | 2,703.38 | **9,064.02** | 1,087,691.20 |
| 94 | $1,087,691.20 | 7% | 6,344.87 | 2,719.15 | **9,064.02** | 1,084,972.05 |
| 95 | $1,084,972.05 | 7% | 6,329.00 | 2,735.02 | **9,064.02** | 1,082,237.03 |
| 96 | $1,082,237.03 | 7% | 6,313.05 | 2,750.97 | **9,064.02** | 1,079,486.06 |
| 97 | $1,079,486.06 | 7% | 6,297.00 | 2,767.02 | **9,064.02** | 1,076,719.04 |
| 98 | $1,076,719.04 | 7% | 6,280.86 | 2,783.16 | **9,064.02** | 1,073,935.88 |
| 99 | $1,073,935.88 | 7% | 6,264.63 | 2,799.39 | **9,064.02** | 1,071,136.49 |
| 100 | $1,071,136.49 | 7% | 6,248.30 | 2,815.72 | **9,064.02** | 1,068,320.77 |
| 101 | $1,068,320.77 | 7% | 6,231.87 | 2,832.15 | **9,064.02** | 1,065,488.62 |
| 102 | $1,065,488.62 | 7% | 6,215.35 | 2,848.67 | **9,064.02** | 1,062,639.95 |
| 103 | $1,062,639.95 | 7% | 6,198.73 | 2,865.29 | **9,064.02** | 1,059,774.66 |
| 104 | $1,059,774.66 | 7% | 6,182.02 | 2,882.00 | **9,064.02** | 1,056,892.66 |
| 105 | $1,056,892.66 | 7% | 6,165.21 | 2,898.81 | **9,064.02** | 1,053,993.85 |
| 106 | $1,053,993.85 | 7% | 6,148.30 | 2,915.72 | **9,064.02** | 1,051,078.13 |
| 107 | $1,051,078.13 | 7% | 6,131.29 | 2,932.73 | **9,064.02** | 1,048,145.40 |
| 108 | $1,048,145.40 | 7% | 6,114.18 | 2,949.84 | **9,064.02** | 1,045,195.56 |
| 109 | $1,045,195.56 | 7% | 6,096.97 | 2,967.05 | **9,064.02** | 1,042,228.51 |
| 110 | $1,042,228.51 | 7% | 6,079.67 | 2,984.35 | **9,064.02** | 1,039,244.16 |
| 111 | $1,039,244.16 | 7% | 6,062.26 | 3,001.76 | **9,064.02** | 1,036,242.40 |
| 112 | $1,036,242.40 | 7% | 6,044.75 | 3,019.27 | **9,064.02** | 1,033,223.13 |
| 113 | $1,033,223.13 | 7% | 6,027.13 | 3,036.89 | **9,064.02** | 1,030,186.24 |
| 114 | $1,030,186.24 | 7% | 6,009.42 | 3,054.60 | **9,064.02** | 1,027,131.64 |
| 115 | $1,027,131.64 | 7% | 5,991.60 | 3,072.42 | **9,064.02** | 1,024,059.22 |
| 116 | $1,024,059.22 | 7% | 5,973.68 | 3,090.34 | **9,064.02** | 1,020,968.88 |
| 117 | $1,020,968.88 | 7% | 5,955.65 | 3,108.37 | **9,064.02** | 1,017,860.51 |
| 118 | $1,017,860.51 | 7% | 5,937.52 | 3,126.50 | **9,064.02** | 1,014,734.01 |
| 119 | $1,014,734.01 | 7% | 5,919.28 | 3,144.74 | **9,064.02** | 1,011,589.27 |
| 120 | $1,011,589.27 | 7% | 5,900.94 | 3,163.08 | **9,064.02** | 1,008,426.19 |
| 121 | $1,008,426.19 | 7% | 5,882.49 | 3,181.53 | **9,064.02** | 1,005,244.66 |
| 122 | $1,005,244.66 | 7% | 5,863.93 | 3,200.09 | **9,064.02** | 1,002,044.57 |
| 123 | $1,002,044.57 | 7% | 5,845.26 | 3,218.76 | **9,064.02** | 998,825.81 |
| 124 | $998,825.81 | 7% | 5,826.48 | 3,237.54 | **9,064.02** | 995,588.27 |
| 125 | $995,588.27 | 7% | 5,807.60 | 3,256.42 | **9,064.02** | 992,331.85 |
| 126 | $992,331.85 | 7% | 5,788.60 | 3,275.42 | **9,064.02** | 989,056.43 |
| 127 | $989,056.43 | 7% | 5,769.50 | 3,294.52 | **9,064.02** | 985,761.91 |
| 128 | $985,761.91 | 7% | 5,750.28 | 3,313.74 | **9,064.02** | 982,448.17 |
| 129 | $982,448.17 | 7% | 5,730.95 | 3,333.07 | **9,064.02** | 979,115.10 |
| 130 | $979,115.10 | 7% | 5,711.50 | 3,352.52 | **9,064.02** | 975,762.58 |
| 131 | $975,762.58 | 7% | 5,691.95 | 3,372.07 | **9,064.02** | 972,390.51 |
| 132 | $972,390.51 | 7% | 5,672.28 | 3,391.74 | **9,064.02** | 968,998.77 |
| 133 | $968,998.77 | 7% | 5,652.49 | 3,411.53 | **9,064.02** | 965,587.24 |
| 134 | $965,587.24 | 7% | 5,632.59 | 3,431.43 | **9,064.02** | 962,155.81 |
| 135 | $962,155.81 | 7% | 5,612.58 | 3,451.44 | **9,064.02** | 958,704.37 |
| 136 | $958,704.37 | 7% | 5,592.44 | 3,471.58 | **9,064.02** | 955,232.79 |
| 137 | $955,232.79 | 7% | 5,572.19 | 3,491.83 | **9,064.02** | 951,740.96 |

| | | | | | |
|---|---|---|---|---|---|
| 138 | $951,740.96 | 7% | 5,551.82 | 3,512.20 | 9,064.02 | 948,228.76 |
| 139 | $948,228.76 | 7% | 5,531.33 | 3,532.69 | 9,064.02 | 944,696.07 |
| 140 | $944,696.07 | 7% | 5,510.73 | 3,553.29 | 9,064.02 | 941,142.78 |
| 141 | $941,142.78 | 7% | 5,490.00 | 3,574.02 | 9,064.02 | 937,568.76 |
| 142 | $937,568.76 | 7% | 5,469.15 | 3,594.87 | 9,064.02 | 933,973.89 |
| 143 | $933,973.89 | 7% | 5,448.18 | 3,615.84 | 9,064.02 | 930,358.05 |
| 144 | $930,358.05 | 7% | 5,427.09 | 3,636.93 | 9,064.02 | 926,721.12 |
| 145 | $926,721.12 | 7% | 5,405.87 | 3,658.15 | 9,064.02 | 923,062.97 |
| 146 | $923,062.97 | 7% | 5,384.53 | 3,679.49 | 9,064.02 | 919,383.48 |
| 147 | $919,383.48 | 7% | 5,363.07 | 3,700.95 | 9,064.02 | 915,682.53 |
| 148 | $915,682.53 | 7% | 5,341.48 | 3,722.54 | 9,064.02 | 911,959.99 |
| 149 | $911,959.99 | 7% | 5,319.77 | 3,744.25 | 9,064.02 | 908,215.74 |
| 150 | $908,215.74 | 7% | 5,297.93 | 3,766.09 | 9,064.02 | 904,449.65 |
| 151 | $904,449.65 | 7% | 5,275.96 | 3,788.06 | 9,064.02 | 900,661.59 |
| 152 | $900,661.59 | 7% | 5,253.86 | 3,810.16 | 9,064.02 | 896,851.43 |
| 153 | $896,851.43 | 7% | 5,231.63 | 3,832.39 | 9,064.02 | 893,019.04 |
| 154 | $893,019.04 | 7% | 5,209.28 | 3,854.74 | 9,064.02 | 889,164.30 |
| 155 | $889,164.30 | 7% | 5,186.79 | 3,877.23 | 9,064.02 | 885,287.07 |
| 156 | $885,287.07 | 7% | 5,164.17 | 3,899.85 | 9,064.02 | 881,387.22 |
| 157 | $881,387.22 | 7% | 5,141.43 | 3,922.59 | 9,064.02 | 877,464.63 |
| 158 | $877,464.63 | 7% | 5,118.54 | 3,945.48 | 9,064.02 | 873,519.15 |
| 159 | $873,519.15 | 7% | 5,095.53 | 3,968.49 | 9,064.02 | 869,550.66 |
| 160 | $869,550.66 | 7% | 5,072.38 | 3,991.64 | 9,064.02 | 865,559.02 |
| 161 | $865,559.02 | 7% | 5,049.09 | 4,014.93 | 9,064.02 | 861,544.09 |
| 162 | $861,544.09 | 7% | 5,025.67 | 4,038.35 | 9,064.02 | 857,505.74 |
| 163 | $857,505.74 | 7% | 5,002.12 | 4,061.90 | 9,064.02 | 853,443.84 |
| 164 | $853,443.84 | 7% | 4,978.42 | 4,085.60 | 9,064.02 | 849,358.24 |
| 165 | $849,358.24 | 7% | 4,954.59 | 4,109.43 | 9,064.02 | 845,248.81 |
| 166 | $845,248.81 | 7% | 4,930.62 | 4,133.40 | 9,064.02 | 841,115.41 |
| 167 | $841,115.41 | 7% | 4,906.51 | 4,157.51 | 9,064.02 | 836,957.90 |
| 168 | $836,957.90 | 7% | 4,882.25 | 4,181.77 | 9,064.02 | 832,776.13 |
| 169 | $832,776.13 | 7% | 4,857.86 | 4,206.16 | 9,064.02 | 828,569.97 |
| 170 | $828,569.97 | 7% | 4,833.32 | 4,230.70 | 9,064.02 | 824,339.27 |
| 171 | $824,339.27 | 7% | 4,808.65 | 4,255.37 | 9,064.02 | 820,083.90 |
| 172 | $820,083.90 | 7% | 4,783.82 | 4,280.20 | 9,064.02 | 815,803.70 |
| 173 | $815,803.70 | 7% | 4,758.85 | 4,305.17 | 9,064.02 | 811,498.53 |
| 174 | $811,498.53 | 7% | 4,733.74 | 4,330.28 | 9,064.02 | 807,168.25 |
| 175 | $807,168.25 | 7% | 4,708.48 | 4,355.54 | 9,064.02 | 802,812.71 |
| 176 | $802,812.71 | 7% | 4,683.07 | 4,380.95 | 9,064.02 | 798,431.76 |
| 177 | $798,431.76 | 7% | 4,657.52 | 4,406.50 | 9,064.02 | 794,025.26 |
| 178 | $794,025.26 | 7% | 4,631.81 | 4,432.21 | 9,064.02 | 789,593.05 |
| 179 | $789,593.05 | 7% | 4,605.96 | 4,458.06 | 9,064.02 | 785,134.99 |
| 180 | $785,134.99 | 7% | 4,579.95 | 785,134.99 | 789,714.94 | 0.00 |

# 18400 US 19 North Mortgage

Property Appra ser Genera  nformat on                                                              5/30/17  2 04 PM

Interactive Map of this parcel      Sales Query      Back to Query Results      New Search      Tax Collector Home Page      Contact Us      WM

## 19-29-16-00000-440-1100
### Compact Property Record Card

Portability Calculator          **Updated** May 30, 2017          Email  Print          Radius Search          FEMA/WLM

| Ownership/Mailing Address Change Mailing Address | Site Address |
|---|---|
| TALANGA, ZDRAVKO<br>TALANGA, DARINA<br>18400 US HIGHWAY 19 N<br>CLEARWATER FL 33764-2758 | 18400 US HIGHWAY 19 N<br>(Unincorporated) |

Property Use: 2739 (Automobile Rental Agency, Used Car Lot, Trailer Rental, Truck & Van Rental)          Living Units: 0

[click here to hide] **Legal Description**

N 200FT OF W 125FT OF E 225FT OF SE 1/4 OF SE 1/4 OF SE 1/4 OF SEC 19-29-16

| ⊞ File for Homestead Exemption | | | 2017 Parcel Use |
|---|---|---|---|

| Exemption | 2017 | 2018 |
|---|---|---|
| Homestead: | No | No |
| Government: | No | No |
| Institutional: | No | No |
| Historic: | No | No |

Homestead Use Percentage: 0.00%
Non-Homestead Use Percentage: 100.00%
Classified Agricultural: No

### Parcel Information Latest Notice of Proposed Property Taxes (TRIM Notice)

| Most Recent Recording | Sales Comparison | Census Tract | Evacuation Zone<br>(NOT the same as a FEMA Flood Zone) | Plat Book/Page |
|---|---|---|---|---|
| 18029/1199 ■ | Sales Query | 121030254122 | B | |

### 2016 Final Value Information

| Year | Just/Market Value | Assessed Value/ SOH Cap | County Taxable Value | School Taxable Value | Municipal Taxable Value |
|---|---|---|---|---|---|
| 2016 | $245,000 | $245,000 | $245,000 | $245,000 | $245,000 |

[click here to hide] Value History as Certified (yellow indicates correction on file)

| Year | Homestead Exemption | Just/Market Value | Assessed Value/ SOH Cap | County Taxable Value | School Taxable Value | Municipal Taxable Value |
|---|---|---|---|---|---|---|
| 2016 | No | $245,000 | $245,000 | $245,000 | $245,000 | $245,000 |
| 2015 | No | $225,800 | $225,800 | $225,800 | $225,800 | $225,800 |
| 2014 | No | $225,600 | $225,600 | $225,600 | $225,600 | $225,600 |
| 2013 | No | $228,000 | $228,000 | $228,000 | $228,000 | $228,000 |
| 2012 | No | $230,000 | $230,000 | $230,000 | $230,000 | $230,000 |
| 2011 | No | $228,753 | $228,753 | $228,753 | $228,753 | $228,753 |
| 2010 | No | $330,000 | $330,000 | $330,000 | $330,000 | $330,000 |
| 2009 | No | $430,000 | $430,000 | $430,000 | $430,000 | $430,000 |
| 2008 | No | $476,500 | $476,500 | $476,500 | $476,500 | $476,500 |
| 2007 | No | $450,000 | $450,000 | $450,000 | N/A | $450,000 |
| 2006 | No | $234,700 | $234,700 | $234,700 | N/A | $234,700 |
| 2005 | No | $177,000 | $177,000 | $177,000 | N/A | $177,000 |
| 2004 | No | $177,500 | $177,500 | $177,500 | N/A | $177,500 |
| 2003 | No | $160,100 | $160,100 | $160,100 | N/A | $160,100 |
| 2002 | No | $160,500 | $160,500 | $160,500 | N/A | $160,500 |
| 2001 | No | $157,900 | $157,900 | $157,900 | N/A | $157,900 |

Elite v. Talanga Settlement Agreement                                                              028
Exhibit D: Elite v. Talanga Settlement                                                              028

Property Appra ser Genera  nformat on                                                                                    5/30/17  2 04 PM

| | | | | | | |
|---|---|---|---|---|---|---|
| 2000 | No | $158,000 | $158,000 | $158,000 | N/A | $158,000 |
| 1999 | No | $160,100 | $160,100 | $160,100 | N/A | $160,100 |
| 1998 | No | $160,400 | $160,400 | $160,400 | N/A | $160,400 |
| 1997 | No | $159,500 | $159,500 | $159,500 | N/A | $159,500 |
| 1996 | No | $159,600 | $159,600 | $159,600 | N/A | $159,600 |

### 2016 Tax Information

Click Here for 2016 Tax Bill                  Tax District: CTF
2016 Final Millage Rate                                    21.3612
2016 Est Taxes w/o Cap or Exemptions            $5,233.49
A significant change in taxable value may occur when sold due to changes in the market or the removal of exemptions. Click here for more information.

### Ranked Sales (What are Ranked Sales?)   See all transactions

| Sale Date | Book/Page | | Price | Q/U | V/I |
|---|---|---|---|---|---|
| 31 May 2013 | 18029 / 1199 | ■ | $495,000 | U | I |
| 01 May 2009 | 16571 / 0018 | ■ | $593,400 | U | I |
| 12 Feb 2007 | 15632 / 1828 | ■ | $650,000 | Q | I |
| 12 Apr 2004 | 13496 / 1319 | ■ | $126,700 | U | I |
| 23 Apr 2003 | 12693 / 0526 | ■ | $190,000 | Q | I |

### 2016 Land Information

Seawall: No                    Frontage: None                          View:

| Land Use | Land Size | Unit Value | Units | Total Adjustments | Adjusted Value | Method |
|---|---|---|---|---|---|---|
| Vehicle Sl/Serv/Rent (27) | 200x125 | 10.50 | 25000.0000 | 1.0000 | $262,500 | SF |

### [click here to hide] 2017 Building 1 Structural Elements Back to Top
#### Site Address: 18400 US HIGHWAY 19 N

Quality: Average
Square Footage: 770.00
Foundation: Piers
Floor System: Wood
Exterior Wall: Frame Metal
Roof Frame: Flat Shed
Roof Cover: Mh Roof Cover
Stories: 1
Living units: 0
Floor Finish: Carpet/Vinyl/Asphalt/S
Interior Finish: Drywall/Plaster/Panel
Fixtures: 2
Year Built: 1993
Effective Age: 14
Heating: Central Duct

Cooling: Cooling (Central)

BAS

OPF

Compact Property Record Card

Open plot in New Window

### Building 1 Sub Area Information

| Description | Building Finished Ft² | Gross Area Ft² | Factor | Effective Ft² |
|---|---|---|---|---|
| Open Porch | 0 | 22 | 0.18 | 4 |
| Base | 748 | 748 | 1.00 | 748 |
| | Total Building finished SF: 748 | Total Gross SF: 770 | | Total Effective SF: 752 |

### [click here to hide] 2017 Extra Features

| Description | Value/Unit | Units | Total Value as New | Depreciated Value | Year |
|---|---|---|---|---|---|
| ASPHALT | $1.75 | 1,000.00 | $1,750.00 | $1,750.00 | 0 |
| FENCE | $14.00 | 500.00 | $7,000.00 | $3,780.00 | 1999 |

Elite v. Talanga Settlement Agreement                                    029

Exhibit D: Elite v. Talanga Settlement                                    029

Property Appra ser Genera  nformat on

5/30/17  2 04 PM

| [click here to hide] Permit Data | | | |
|---|---|---|---|
| Permit information is received from the County and Cities. This data may be incomplete and may exclude permits that do not result in field reviews (for example for water heater replacement permits). We are required to list all improvements, which may include unpermitted construction. Any questions regarding permits, or the status of non-permitted improvements, should be directed to the permitting jurisdiction in which the structure is located. | | | |
| **Permit Number** | **Description** | **Issue Date** | **Estimated Value** |
| CB186701 | PARTIAL DEMO | 22 Oct 1998 | $0 |



Interactive Map of this parcel     Map Legend          Sales Query     Back to Query Results     New Search     Tax Collector Home Page          Contact Us

Elite v. Talanga Settlement Agreement          030

Exhibit D: Elite v. Talanga Settlement          030

After Recording Return To:
Florida Legal Advocacy Group of Tampa Bay
Attn: Adam Levine
1180 Gulf Boulevard, Suite 303
Clearwater, Florida 33767

_____ **[Space Above This Line for Recording Data]** _____

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument, "**  means this document, which is dated on the date executed together with all Riders to this document including: a Settlement Agreement; Promissory Notes; and Mortgages for properties, see attached, located at 18400 US Highway 19 North, Unincorporated Clearwater, Pinellas County, Florida; 1201 N. Highland Avenue and its associated Vacant Lot, Unincorporated Clearwater Pinellas County, Florida; 335 Colonial Court, Dunedin, Pinellas County, Florida; and 1925 Dolphin Drive, Belleair Bluffs, Pinellas County, Florida.
**(B)** **"Borrower"** refers, in whole or in part to, Zdravko Talanga, Darina Talanga, Anna Talanga, Ivan Talanga, Elite Holdings, LLC, or any other business entity, partnership or trust owned by Zdravko Talanga, Darina Talanga, Ivan Talanga, Anna Talanga, or Elite Holdings.  Borrower is the mortgagor under this Security Instrument.
**(C)** **"Lender"** is Cygram Heritage, LLLP.  Lender is a limited liability limited partnership organized and existing under the laws of Florida.  Lender's address is 5210 Webb Road, Tampa, Florida 33615.  Lender is the mortgagee under this Security Instrument.
**(D)** **"Note"** means the secured balloon promissory note signed by Borrower and dated May 31, 2017 The Note states that Borrower owes Lender one million one hundred and sixty-nine thousand one hundred dollars and no cents Dollars (U.S. $1,169.100.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments pursuant to a Secured Balloon Promissory Note and to pay the debt on time and in full not later than fifteen years from the time it is executed. There is no renewal term.
**(E)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(G)** **"Riders"** means all Riders or additions to this Security Instrument that are executed by Borrower.  The only Rider attached will be a Balloon Rider.

**18400 US Highway 19 North Mortgage**                                                                                      1

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions. Specifically, here Applicable Law refers to the laws of the State of Florida in Pinellas County, Florida.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowner's association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following property described by the Pinellas County, Florida, Property Appraiser's Office:

Street Address:      18400 U.S. Highway 19 North, Clearwater, Pinellas County, Florida 33764

Property Appraiser Folio Number:      19-29-16-00000-440-1100

**18400 US Highway 19 North Mortgage**                                                        2

Legal Description:     N 200FT OF W 125FT OF E 225FT OF SE 1/4 OF SE 1/4 OF SE 1/4 OF SEC 19-29-16. Specifically:

The North 200 feet of the following described property:

Starting at the Southeast corner of Section 19, Township 29 South, Range 16 East, and thence run North 89°19'38" West, 225.00 feet; thence continue North 01°26'21" East, 371.67 feet to the Point of Beginning; thence continue North 01°26'21" East, 300.00 feet, thence run South 89°22'01" East, 125.00 feet to the Westerly right-of-way of U.S. Highway 19; thence run South 01°26'21" West along said Westerly right-of-way, 300.00 feet; thence run North 89°22'01" West, 125.00, to the Point of Beginning, all lying and being situate in Section 19, Township 29 South, Range 16 East, Pinellas County Florida.


Subject to easements, restrictions, and reservations of record, and taxes for the year 2013 and thereafter.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges and any and all other Fees, Costs, and Expenses detailed in the Secured Balloon Promissory Note.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note along with all fees, costs and expenses indicated by the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3 as necessary. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's      check      or      cashier's      check,      provided      any      such      check      is

drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to

Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall

pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.  Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.  Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender,

but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use

Exhibit D: Elite v. Talanga Settlement                     037

the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal place of business (if 18400 US Highway 19 North) or as Borrower's principal residence (if 1925 Dolphin Drive), or as an assisted living facility (if 335 Colonial Court or 1201 North Highland Avenue) after the execution of this Security Instrument and shall continue to occupy the Properties for at least fifteen years, unless Lender otherwise agrees in writing or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property or managing a business entity, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.**   Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.   Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but

are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** Lender requires that Borrow seek Mortgage Insurance coverage for their Secured Balloon Promissory Note where Lender is the named primary beneficiary in the event of a default. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

(a)    **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b)    **Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be