If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the

charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower Agrees to Having No Right to Reinstate After Acceleration.** Borrower agrees to waive any right have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. This right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

Borrower also specifically agrees that Borrower may not, for any reason, encumber, pledge, assign, sell, waste, dispose or otherwise the Mortgaged properties without the express written consent of the Lender and that all funds received for such property be first paid to fulfill Borrower's obligations under the Note. Borrower's pledge that any entry into bankruptcy protection will include Borrower's pledge to honor and fulfill the terms of the Note.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the

Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.   Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.   Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument.   Borrower shall pay any recordation costs.   Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

## BALLOON MORTGAGE RIDER

**NOTE: THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE ON MATURITY WILL BE $ 789,714.94 (SEVEN HUNDRED AND EIGHTY-NINE THOUSAND SEVEN HUNDRED AND FOURTEEN DOLLARS AND NINETY-FOUR CENTS). THIS BALANCE IS AN ESTIMATED BASED**

**UPON THE SPREADSHEET PROVIDED ALONG WITH THE SECURED BALLOON PROMISSORY NOTE. TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ANY AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE. THE ACTUAL BALANCE DUE UPON MAJORITY MAY VARY DEPENDING ON ANY ADDITIONAL FEES AND COSTS RELATED TO THE SETTLEMENT AGREEMENT, SECURED BALLOON PROMISSORY NOTE OR LEASES FOR ANNA DUNEDIN AT 335 COLONIAL COURT AND/OR SOPHIA HIGHLAND AT 1201 NORTH HIGHLAND AVENUE.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**For Borrower:**

Zdravko Talanga     _(signature)_     Date: 6/29/17

Darina Talanga     _(signature)_     Date: 6-29-17

Anna Talanga     _(signature)_     Date: 29 JUNE 2017

Ivan Talanga     _(signature)_     Date: 06-29-17

Darina Talanga for     _(signature)_     Date: 6-29-17
Elite Holdings, LLC.

Witness 1 Name: _(signature)_   Brennan Ram   Date: 6-29-17

Witness 2 Name: _(signature)_   Bernice Cruz   Date: 6/29/17

STATE OF Florida

COUNTY OF Hillsborough

The foregoing instrument was acknowledged before undersigned authority this ~~31~~ 29th day of ~~May~~ June 2017, by Zdravko Talanga, Darina Talanga, Ivan Talanga, Anna Talanga and Darina Talanga for Elite Holdings who ___ are personally known to me or who ✓ produced Florida Drivers License as proof of his identity and each took an oath as to the veracity and intent to comply with this instrument.



MARIA GATTA ROPP
Notary Public - State of Florida
Commission # FF 928552
My Comm. Expires Oct 24, 2019
Bonded through National Notary Assn.

[Notary SEAL]

NOTARY PUBLIC

_(signature)_

SIGNATURE

Commission Number: FF 928552

My Commission Expires: 10/24/19

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**For Lender:**

Panayiotis Vasiloudes for
Cygram Heritage, LLLP.                                                Date: 6/29/17

Witness 1 Name: Melisa Alvarez                                 Date: 6/29/17

Witness 2 Name: Bridgette Mauch                             Date: 6/29/17

STATE OF _Florida_

COUNTY OF _Hillsborough_

~~June~~ The foregoing instrument was acknowledged before undersigned authority this ~~31~~ 29th day of ~~May~~ 2017, by Panayiotis Vasiloudes who ___ is personally known to me or who ___ produced _____ as proof of his identity and each took an oath as to the veracity and intent to comply with this instrument.



ELIZABETH F SMOOK
MY COMMISSION # FF206924
EXPIRES March 05, 2019
(407) 390-0153   FloridaNotaryService.com

NOTARY PUBLIC

[Notary SEAL]

SIGNATURE

Commission Number: FF 206924

My Commission Expires: 3/5/19

Sophia Highland Lease and Amendment

> ### ASSISTED LIVING FACILITY LEASE
> #### BETWEEN
> ## SOPHIA HIGHLAND REALTY, LLC.
> #### AND
> ## VILLA ANNA ASSISTED LIVING FACILITY, LLC.

THIS INDENTURE, made on 02/29/2016 (date), by and between Sophia Highland Realty, LLC., hereafter called "Lessor", whose address for purposes of notice under this lease is 5210 Webb road, Tampa, Florida 33615, and Villa Anna Assisted Living Facility, LLC., hereafter called "Lessee" identified herein, whose address for purposes of notice under this lease is 1925 Dolphin Drive, Belleair Bluffs, Florida 33770.

### WITNESSETH:

WHEREAS, Lessee desires to lease from Lessor and the Lessor desires to lease to the Lessee assisted living facility space in the premises hereafter described, on the terms, covenants, and conditions set forth in this agreement.

NOW, THEREFORE, in consideration of the rents and the mutual covenants, terms, conditions and agreements herein set forth, the parties agree as follows:

1.    DEFINITIONS:
    A.    "Lessor" means Sophia Highland Realty, LLC.
    B.    "Lessee" means Villa Anna Assisted Living Facility, LLC.

2.    AGREEMENT TO LEASE:  DESCRIPTION OF THE PROPERTY.
The Lessor leases and demises unto the Lessee, and the Lessee rents and hires from the Lessor, certain assisted living facility space located at 1201 North Highland Avenue, Clearwater, Florida 33755.

    A.    Lessee shall have the exclusive use of the space located at 1201 North Highland Avenue, Clearwater, Florida 33755.

1.    TERMS OF LEASE: RENT.
The term of the lease and the rent to be paid by the Lessee in consideration of the lease are as follows:

    1.    This lease shall be for a three year term, commencing on March 1, 2016 and ending on the last day of the thirty sixth month thereafter, provided the rent is paid in a timely fashion. Timely fashion is defined as no later than the 5th of each month.
    2.    Provided there is no event of default, the Lessee shall have the right to renew the Lease for additional three-year terms; if the Lessee decides not to re-lease the property, the Lessor must be notified in writing no later than 30 days prior to the termination date.
    B.    Lessee shall pay to Lessor at the address herein set forth, or at such other address, as Lessor from time to time shall designate, as rental for the promises, an agreed-upon fixed annual rent of $16,200.00

C.      The initial annual rent shall be payable in monthly installments of $1,350.00 and shall be paid in advance on the 1st day of each calendar month during the life of this lease. Lessee is also responsible for payment of any applicable sales tax.

4.  TAXES.

Lessee agrees to pay all taxes levied against the personal property and trade fixtures of the Lessee in and about the demised premises, provided, however, that if any such taxes of Lessee are levied against Lessor, or Lessor's property, or if the assessed value of Lessor's property is increased by the inclusion of the value placed on Lessee's property, and if Lessor pays those taxes, Lessee, on demand, shall reimburse Lessor for all taxes actually paid on Lessee's behalf, together with interest at 12% per annum.

Lessor shall provide the ad valorem tax bills to Lessee and Lessee shall pay at least 30 days prior to the date upon which they become delinquent real estate taxes imposed during the Initial Term and any Renewal Term upon or against the Premises ("Real Estate Taxes"). Real Estate Taxes for the year in which the initial Term shall begin and in the year in which the Lease shall terminate shall be prorated so that the Lessee shall pay only those portions which correspond with the portion of said years as are within the Initial Term or Renewal Term.

5. HAZARD INSURANCE, PREMISES LIABILITY INSURANCE, PROFESSIONAL LIABILITY INSURANCE

Lessor shall provide the Property Hazard, Premises Liability Insurance, and/or Professional Liability Insurance bills to Lessee and Lessee shall pay at least 30 days prior to the date upon which they become due. Insurance Premiums imposed during the Initial Term and any Renewal Term shall be prorated for the time Lessee is bound by this Lease. But, notwithstanding the foregoing, upon evaluation of insurance coverage obtained by Lessee, Lessor, at its sole discretion, may allow Lessee to obtain its own Hazard, Premises Liability, Professional Liability, or other insurance

6.  LESSEE'S MISCELLANEOUS EXPENSES.

In addition to other obligations herein, Lessee shall pay for the following:

A.  Tenant's public liability insurance on the premises.
B.  Monthly telephone line charges (with applicable taxes thereon).
C.  Telephone equipment and telephone charges.
D.  Cable and other Internet and Broadcast equipment..
E.  Building cleaning and maintenance.
F.  Security alarm system monitoring charges.
G.  Parking lot maintenance and repaving;
H.  Landscape/grounds maintenance and irrigation.
I.  Water and sewer.
J.  Sanitation and waste removal, including bio-hazardous waste disposal
K.  Electricity

7. SUBORDINATION.

This lease and all rights of Lessee under it are, and shall be, subject to and subordinate to the rights of any mortgage holder having a security interest or mortgage lien in the demised premises.

8.    LESSEE'S COVENANTS.

Lessee further covenants and agrees as follows:

A.    To pay the rent and every installment of it when and as it comes due; to use the premises in a careful and proper manner for the expressed purpose of running an assisted living facility; and to commit or permit no waste or damages to the premises; not to conduct or permit to be conducted on the premises, any business, or commit or permit any act that is a nuisance or is or may be contrary to or in violation of any federal, state or local law or ordinance; to surrender the premises on expiration or termination of this lease in clean condition and good repair, normal wear and tear excepted; provided, however, all alterations, additions and improvements permanently attached and made by Lessee, its successors, sublessees and assigns (excepting movable furniture, equipment, supplies, and inventory) shall become and remain the property of Lessor on the termination of Lessee's occupancy of the premises.

B.    To properly dispose of all bio-hazardous waste resulting from the Lessee's use of the promises, at Lessee's expense.

C.    To keep and maintain at all times during the lease term, at Lessee's cost, a comprehensive public liability insurance policy protecting Lessor against all claims or demands that may arise or be claimed on account of Lessee's use of the premises, in an amount of at least $1,000,000 for injuries to persons in one accident, $3,000,000 for injuries to any one person and $250,000 for damages to property.  The insurance shall be written by a company or companies authorized to engage in the business of general liability insurance in the State of Florida, with a company or companies acceptable to Lessor, and there shall be delivered to Lessor certificates evidencing the paid up insurance on an annual basis, and copies of the insurance policies, issued by the insurance companies.  Lessee further agrees to keep and maintain at all times during the lease term at Lessee's cost, broad-coverage fire and casualty insurance on its property (including inventory) and to provide Lessor with a copy of the policy and a certificate evidencing paid up insurance, issued by the insurance company.  Lessor, at its option, may request Lessee to obtain a certified statement by each insurance carrier containing a clause providing that the insurance carrier will give Lessor ten (10) days written notice before any cancellation shall be effective.  The policies of insurance are to be provided by Lessee and shall be for a period of not less than one (1) year.  If Lessee fails to furnish policies or certificates showing policies to be paid in full as provided in this lease, Lessor may obtain the insurance and the premiums on that insurance shall be deemed additional rental to be paid by Lessee to Lessor on demand, together with interest at 12% per annum.

D.    To prohibit and refrain from engaging in or allowing any use of the demised premises that will increase Lessor's premiums for insurance on the building, without the express written consent of Lessor.

E.    To indemnify and save harmless Lessor and the demised premises from all costs, loss, liability, damage, expense, penalty and fine whatsoever that may arise from or be claimed against Lessor or the demised premises by any person or persons for any injury to person or property, or damage of whatever kind or character consequent on or arising from the use of occupancy of the demised premises by Lessee, or consequent on or arising from any neglect or fault of Lessee or the agents and the employees of Lessee, in the use and occupancy of the premises, or consequent on or arising from any failure by Lessee so to comply and confirm with all laws, statutes, ordinances and regulations of any governmental body or subdivision, now or hereafter in force; if any lawsuit or proceeding shall be brought against Lessor or the demised premises on account of any alleged violations thereof, or failure to comply or conform therewith, or on account of any damage, omission, neglect (or use of the premises) by Lessee, or the agents and employees of Lessee, or any

other person on the premises, Lessee agrees that Lessee, or any other person on the premises, will defend it and will pay whatever judgments may be recovered against Lessor or against the premises on account thereof, and to pay for all attorneys' fees in connection therewith, including attorneys' fees on appeal.

F.   Lessee will carry all the expenses to convert the property or maintain it as an assisted living facility. Such expenses include partition of the space, placement of sinks in the patient rooms, carpeting, telephone wiring and computer network and installation. Lessee agrees that Lessee will save harmless Lessor from and against all expenses, liens, claims and damages to either property or person that may or might arise by reason of the making of any repairs, alterations, additions or improvements.

G.   To permit Lessor to enter, inspect and make such repairs to the leased property as Lessor may reasonably desire, at all reasonable times.

H.   To subordinate any interest in the demised premises to any encumbrance or mortgage that Lessor may desire to place on the property.

9.    LESSOR'S COVENANTS.
      Lessor covenants and agrees as follows:
      A.   To warrant and defend Lessee in the enjoyment and peaceful possession of the premises during the term of the lease, in common with other physicians and their employees, in accordance with the attached exhibit. Lessor agrees that the annual rent mentioned above will remained fixed for the life of the lease. Lessor understands that Lessee invested a considerable amount of expenses to convert the place to serve the purpose of the lease. This was done under the preposition that the annual rent will remain stable for the life of the lease to enable Lessee to recoup his initial investment.

      B.   If the premises are destroyed, or so damaged by fire, casualty, or other disaster that they become untenable, Lessor shall have the right to render the premises tenable by repairs within 90 days from the date of damage with reasonable additional time, if necessary, for Lessor to adjust the loss with insurance companies insuring the premises, or other delay occasioned by conditions beyond the control of Lessor.  If the premises are not rendered tenable within that time, it shall be optional with either party to cancel this lease, and in the event of such cancellation, the rent shall be paid only to the date of the damage.  If the lease is not canceled, rent nevertheless shall be abated during the period of time from the date of damage to date of physical occupancy by Lessee or date of complete restoration, whichever shall occur first.  The cancellation provided for by this paragraph shall be in writing.

10.   DEFAULT IN PAYMENT OF RENT.
      If any rent required by this lease shall not be paid when due, Lessor shall have the option to:
      A.   Terminate this lease, resume possession of the property and recover immediately from Lessee the difference between the rent specified in the lease and the fair rental value of the property for the remainder of the term, reduced to present value; or

      B.   Resume possession and re-lease or rent the property for the remainder of the term for the account of Lessee, and recover from Lessee at the end of the term or at the time each payment of rent comes due under this lease as Lessor may choose, the difference between the rent specified in the lease and the rent received on the re-leasing or renting.

In either event, Lessor shall also recover all expenses incurred by reason of the breach, including reasonable attorney's fees.

11.    DEFAULTS OTHER THAN RENT.

If either Lessor or Lessee shall fail to perform, or shall breach, any agreement on this lease other than the agreement of Lessee to pay rent, the complaining party may, after 10 days' written notice specifying the performance required, institute action in a court of competent jurisdiction to terminate this lease or to complete performance of the agreement, and the prevailing party in that litigation shall recover all expenses of the litigation, including reasonable attorney's fees.  In the alternative, if a party fails to perform or breaches any agreement of this lease other than the payment of rent, the complaining party may, after 10 days' written notice to the other, comply therewith correcting any such breach (without creating any obligation to comply), and the costs of that compliance shall be payable on demand, together with interest of 12% per annum.

12.    LESSOR TO HAVE LIEN.

Lessor shall have a lien against all goods, equipment, furniture and other personal property of Lessee brought, stored or kept on the leased premises during the lease term, in the aggregate amount of all rent, damages and other sums that may at any time be owed by Lessee to Lessor under the lease.  Lessor, in the event of any default by Lessee, may foreclose the lien as a mortgage would be foreclosed, and in that event Lessee shall be obligated to Lessor for all court costs and a reasonable attorney's fee.

13. ELECTION BY LESSOR NOT EXCLUSIVE.

The exercise by Lessor of any right or remedy to collect rent or enforce Lessor's rights arising under this lease shall not constitute a waiver of, or a binding election precluding the exercise of, any other right or remedy afforded Lessor by this lease agreement or by statute or law.  The failure of Lessor in one or more instances to insist on strict performance or observations of one or more of the covenants or conditions of this lease, or to exercise any remedy, privilege or option conferred by this lease on or reserved to Lessor, shall not operate or be construed as a relinquishment or waiver for the future of the covenant or condition or the right to enforce it or to exercise that privilege, option or remedy, but that right shall continue in full force and effect.  The receipt by Lessor of rent, or any other payment required to be made by the Lessee, or any part thereof, shall not be a waiver of any other additional rent or payment then due, nor shall receipt, though with the knowledge of the breach of any covenant of condition of this lease, operate as or be deemed to be a waiver of such breach, and no waiver by Lessor of any of the provisions of this lease, or any of Lessor's rights, remedies, privileges, or options under this lease shall be deemed to have been made unless made by Lessor in writing.  No surrender of the premises for the remainder of the term of this lease shall be valid unless accepted by Lessor in writing.

14.    NO ASSIGNMENT OR SUBLETTING.

Lessee shall not assign nor sublet this lease, as this lease is personal to the Lessee.

15.    ADDRESSES FOR PAYMENTS AND NOTICES.

Rent, payments and notices to Lessor shall be mailed or delivered to the address of Lessor given at the beginning of this lease, unless Lessor shall advise Lessee differently in writing.  Notices to Lessee may be mailed or delivered to the leased premises and proof of mailing or posting of those notices to the leased premises shall be deemed the equivalent of personal service on Lessee.

16.    CAPTIONS.

The captions and paragraph headings or titles appearing in this lease are inserted only as a

matter of convenience and in no way define, limit, construe or describe the scope or intent of the sections, articles or paragraphs of this lease nor in any way affect this lease.

17.    FLORIDA LAW.
This lease shall be governed by the laws of the State of Florida, both as to interpretation and performance. Venue and Jurisdiction shall be in a court in Pinellas County, Florida.

18.    ENTIRE AGREEMENT.
This lease sets forth all the promises, agreements, conditions and understandings between Lessor and Lessee relative to the leased premises, and there are no other promises, agreements, conditions or understandings, either oral or written, between them other than as set forth in this lease. No subsequent alteration, amendment, change or addition to this lease shall be binding on Lessor or Lessee unless reduced to writing and signed by them, and by direct reference made a part of it.

19.    TERMS INCLUSIVE.
As used herein, the terms "Lessor" and "Lessee" shall include the plural whenever the context requires or admits.

20.    REPRESENTATIVES, ETC. BOUND HEREBY.
The terms of this lease shall be binding and obligatory on the respective successors, representatives and assigns of the parties.


IN WITNESS WHEREOF, Lessor and Lessee have duly executed this lease on _____3/10/16_____.


Signed in the presence of:


_____
Witness as to Lessor


_____
Panos Vasiloudes for Sophia Highland Realty, LLC, Lessor

Date: _____3/10/16_____


_____
Witness as to Lessee


_____
Darina Talanga for Villa Anna ALF, LLC

Date: _____3/10/16_____


8

## Sophia Highland Lease Renewal

In witness on this 31st day of May 2017, Lessor and Lessee amend the terms of the indenture and lease executed on March 10, 2016 and further agree:

1. Provided the current  Lease terms are met, the Lease shall be extended until midnight May 31, 2019.

2. Lessee shall pay the arrearage pursuant to the Settlement Agreement.

3. All rent shall be due each month on or before the first day of the Month.

4. Lessee agrees that if rent is not received by the close of business on the 5th day of any month, that Lessor may begin Eviction proceedings without notice.

5. Lessee will pay all taxes of any kind, liens of any kind, debts of any kind, encumbrances of any kind, repairs of any kind, maintenance of any kind, and all other expenses of any kind related to the leased property.

6. Lessee will reimburse Lessor for any funds expended that should have been paid by Lessee.

7. This is a triple net lease where Lessee will pay for all ongoing expenses of or relating to the property including taxes, insurance, maintenance, rent and utilities.

8. Lessor and Lessee agree that Lessee will be responsible to make the building and its curtilage habitable and Lessee's own expense. Lessee will complete all renovations and will insure the building and pay its taxes. Lessee will be responsible for securing the premises and repairing any damages.

9. Lessor agrees that Lessee may withhold rent payments of $3,000 per month until such time as the earlier of either a Certificate of Occupancy is in place or any person resides in or on the property.

10. In the event of any breach of these terms, Lessor may evict tenant and/or may sell the property at the Lessor's sole discretion.

**For Lessee**

Darina Talanga for
Villa Anna Assisted Living Facility, LLC..

Date: 6/29/17

Witness 1 Name: _____    Date: 6/29/17

Witness 2 Name: _____    Date: 6/29/17

STATE OF Florida

COUNTY OF Hillsborough

The foregoing instrument was acknowledged before undersigned authority this 31st day of May 2017, by Darina Talanga who ___ is personally known to me or who __✓__ produced Florida Drivers license as proof of his identity and each took an oath as to the veracity and intent to comply with this instrument.

MARIA GATTA ROPP
Notary Public - State of Florida
Commission # FF 928552
My Comm. Expires Oct 24, 2019
Bonded through National Notary Assn.

NOTARY PUBLIC

[Notary SEAL]

SIGNATURE

Commission Number: FF928552

My Commission Expires: 10/24/19

**For Lessor**

Panayiotis Vasiloudes for
Sophia Highland Realty, LLC.. _____ Date: 6/29/17

Witness 1 Name: Melissa Alvarez    Date: 6/29/17

Witness 2 Name: Bridgette Mauch    Date: 6/29/17

STATE OF Florida

COUNTY OF Hillsborough

June The foregoing instrument was acknowledged before undersigned authority this 3̶1̶s̶t̶ 29th day of M̶a̶y̶ 2017, by Panayiotis Vasiloudes who ___is personally known to me or who ____ produced _____ as proof of his identity and each took an oath as to the veracity and intent to comply with this instrument.

SETH F SMOOK
COMMISSION # FF206924
EXPIRES March 05, 2019
FloridaNotaryService.com

[Notary SEAL]

NOTARY PUBLIC

_____
SIGNATURE

Commission Number: FF 206924

My Commission Expires: 3/5/19.