SIXTH JUDICIAL CIRCUIT COURT
PINELLAS COUNTY, FLORIDA
CIVIL DIVISION

**ELITE FINANCIAL EDGE, LLC,** a Florida limited liability company, **ELITE CAR SALES, LLC,** a Florida limited liability company, **ELITE CAR SALES OF CLEARWATER, INC.,** a Florida for profit corporation, **VILLA ANNA ASSISTED LIVING FACILITY, LLC,** a Florida limited liability company, **ANNA DUNEDIN REALTY, LLC.,** a Florida limited liability company, and **SOPHIA HIGHLANDS REALTY, LLC.,** a Florida limited liability Company,
  **Plaintiffs,**

v.

Case: _____

**ZDRAVKO TALANGA,** an individual person, **DARINA TALANGA,** *an* individual person, **ANNA TALANGA,** an individual person, **IVAN TALANGA,** an individual person, and **ELITE HOLDINGS, LLC.,** a Florida limited Liability company, and **IVAN'S AUTO REPAIR, INC.,** a Florida for profit corporation.
  **Defendants.**
_____/

## DECLARATORY ACTION FOR INJUNCTIVE RELIEF AND DAMAGES

Through undersigned counsel and pursuant to the Florida Rules of Civil Procedure, Plaintiffs sue Defendants for Injunctive Relief and Damages alleging: Count I, Injunctive relief against all Defendants; Count II, Civil Conspiracy against all Defendants; Count III, Breach of Fiduciary Duty against all Defendants; Count IV, Accounting; Count V, Unjust Enrichment; and Count VI Declaratory Judgment. Plaintiffs seek injunctive relief, an accounting, negligence, damages, and to declare Defendants actions *ultra vires* to prevent Defendants from violating the

1

***ELECTRONICALLY FILED 02/01/2017 01:34:29 AM: KEN BURKE, CLERK OF THE CIRCUIT COURT, PINELLAS COUNTY***

plain terms of the Operating Agreements, wasting company assets, and causing the financial ruin of the companies and allege:

## Summary

1. Plaintiffs Zdravko, Darina, Anna, and Ivan Talanga (collectively the, "Talangas") and a business entity they completely own and manage, Elite Holdings, LLC (Talanga Holdings) sold the majority of their ownership interest in: Elite Financial Edge, LLC (Financing); Elite Car Sales of Clearwater Inc., (Clearwater Cars); Elite Car Sales, LLC (Cars); Villa Anna Assisted Living Facility, LLC., (Villa Anna); Anna Dunedin Realty, LLC.; (Dunedin), and Sophia Highland Realty, LLC., (Highland), to various Buyers.

2. Collectively throughout all business entities owned by the various Buyers and Talanga Holdings are referred to as the, "Common Businesses." The Common Businesses do not include either Talanga Holdings or Repair which are solely owned by the Talangas.

3. The Talangas use Repair to repair and/or service the motor vehicles sold by Cars and/or Clearwater Cars. Upon information and belief, the Talangas also used Repair to improperly transfer funds from the Common Businesses to the Talangas personal accounts.

4. And as demonstrated below and in several exhibits, the Talangas used straw or fake companies to write checks to that were ultimately deposited into Talanga Holdings.

5. The Buyers purchased majority equity positions in the Common Businesses leaving the Talanga Holdings with a 1/3 share of Financing, Cars, and Clearwater Cars and a 49.9% ownership interest in Villa Anna, Anna Dunedin, and Sophia Highland. See attached Exhibits A-F containing the most recent Operating Agreements for each.

6. In addition, the Buyers loaned more than: $800,000.00 to Cars and/or Clearwater Cars, $400,000 to Anna Dunedin and Sophia Highland; and personally guaranteed additional commercial loans more than $2,000,000.00 for the Common Businesses.

7. The Talangas and the Buyers agreed to use all the motor vehicles owned by Cars and/or Clearwater Cars as security for these commercial and personal business loans and commercial loan guarantees.

8. However the Buyers, now majority shareholders in all the Common Businesses, recently uncovered a long-standing conspiracy between the Talangas to divert and deprive each of the Common Businesses of significant funds such that the Businesses paid for the Talangas personal motor vehicles, college tuition, books, and supplies, personal legal fees, personal legal settlements, and other improper expenses over at least a two-year period as alleged below.

9. On reviewing banking records, the Talangas appear to have conspired together to divert funds from a Common Business to a non-existent company and then to themselves for personal gain to the immediate detriment of each of the Common Businesses.

10. The Common Businesses possess assets including: books, papers, and records; goods; and belongings including automobiles owned by Cars and Clearwater Cars on a lot owned by the Talangas at 18400 US Highway 19 North, Clearwater. And the Talangas have barred the Common Businesses from Entry.

11. And, despite corporate resolutions (See Exhibits A-C) terminating the Talangas' employment by the Common Businesses and the Common Businesses having transferred management of the Finance loan portfolio to New Wave, upon information and belief Ivan Talanga and Anna Talanga are calling the Common Businesses customers owing funds to

the Common Businesses and telling them not to cooperate with New Wave and to bring the funds to them directly.

12. In fact, Exhibit Q documents one loan customer who was called because he was in significant arrears. But, it appears that Ivan Talanga accepted $3,500.00 from this customer in cash and never credited his account or deposited such funds into the Finance account. Rather, when Ivan Talanga learned that New Wave contacted the customer directly, Ivan attempted to falsify a deposit in the computer records system.

13. Because the Talangas are acutely wasting corporate assets, because the Talangas have prevented the Common Businesses from accessing, managing or services their assets by locking the Common Businesses out and engaging in self-help, the Common Businesses were forced to file the instant action in an effort to prevent irreparable harm.

### Parties, Jurisdiction, & Venue

14. Plaintiff Elite Financial Edge, LLC., is a Florida authorized limited liability company that was doing business solely as a used motor vehicle financing company and principally located at 18400 US Highway 19 North, Clearwater, Pinellas County, Florida, 33764 until January 25, 2017 when it was moved to Hillsborough County, 5210 Webb Road, Tampa, Hillsborough County, Florida, 33615 to prevent further harm caused by the Talangas. See Exhibit A.

15. The Buyers intend that Elite Financial Edge, LLC., will be managed in Pinellas County, Florida, by a Florida business entity that is appropriately licensed and authorized to do business as an auto financing company.

16. Upon information and belief, the Talangas wrongfully diverted corporate assets from Elite Financial Edge, LLC., in Pinellas County, Florida. Plaintiff files suit on its behalf and on behalf of its majority Members.

17. Plaintiff Elite Car Sales of Clearwater, Inc., is a Florida authorized corporation solely in the business of selling used motor vehicles and principally located at 18400 US Highway 19 North, Clearwater, Pinellas County, Florida 33764. See Exhibit B.

18. Upon information and belief, the Talangas wrongfully diverted corporate assets from Elite Car Sales of Clearwater, Inc., in Pinellas County Florida. Plaintiff files suit on its behalf and on behalf of its majority Shareholders.

19. Plaintiff Elite Car Sales, LLC., is a Florida authorized limited liability company solely in the business of selling used motor vehicles and principally located at 18400 US Highway 19 North, Clearwater, Pinellas County, Florida 33764. See Exhibit C.

20. Upon information and belief, the Talangas wrongfully diverted corporate assets from Elite Car Sales, LLC., in Pinellas County Florida. Plaintiff files suit on its behalf and on behalf of its majority Members.

21. Plaintiff Villa Anna Assisted Living Facility, LLC., is a Florida authorized limited liability company solely licensed for and in the business of managing and servicing assisted living facilities and principally located at 353 Colonial Court, Dunedin, Pinellas County, Florida 34698. See Exhibit D.

22. Upon information and belief, the Talangas wrongfully diverted corporate assets from Villa Anna Assisted Living Facility, LLC., in Pinellas County Florida. Plaintiff files suit on its behalf and on behalf of its majority Members.

23. Plaintiff Anna Dunedin Realty, LLC., is a Florida authorized limited liability company solely in the business of providing real property for assisted living facility providers to utilize and principally located at 353 Colonial Court, Dunedin, Pinellas County, Florida 34698. See Exhibit E.

24. Upon information and belief, the Talangas wrongfully diverted corporate assets from Anna Dunedin, LLC., in Pinellas County Florida. Plaintiff files suit on its behalf and on behalf of its majority Members.

25. Plaintiff Sophia Highland Realty, LLC., is a Florida authorized limited liability company solely in the business of providing real property for assisted living facility providers to utilize and principally located at 5210 Webb Road, Tampa, Hillsborough County, Florida 33615 but with a real property address in Pinellas County, Florida. See Exhibit E.

26. Upon information and belief, the Talangas wrongfully diverted corporate assets from Sophia Highland Realty, LLC., in Pinellas County Florida. Plaintiff files suit on its behalf and on behalf of its majority Members.

27. Defendant Zdravko Talanga (Zdravko) is an adult individual person married to Darina Talanga and residing at 1925 Dolphin Drive, Belleair Bluffs, Pinellas County, Florida 33770 and otherwise *sui generis*.

28. Upon information and belief Defendant Zdravko Talanga misappropriated and received funds misappropriated from the Common Businesses and benefited from them in Pinellas County.

29. Defendant Darina Talanga (Darina) is an adult individual person married to Zdravko Talanga and residing at 1925 Dolphin Drive, Belleair Bluffs, Pinellas County, Florida 33770 and otherwise *sui generis*.

30. Upon information and belief Defendant Darina Talanga misappropriated and received funds misappropriated from the Common Businesses and benefited from them in Pinellas County.

31. Defendant Anna Talanga (Anna) is an adult, individual person and daughter of Zdravko and Darina Talanga, residing at 1925 Dolphin Drive, Belleair Bluffs, Pinellas County, Florida 33770 and otherwise *sui generis*.

32. Upon information and belief Defendant Anna Talanga misappropriated and received funds misappropriated from the Common Businesses and benefited from them in Pinellas County.

33. Defendant Ivan Talanga (Ivan) is an adult, individual person and daughter of Zdravko and Darina Talanga, residing at 1925 Dolphin Drive, Belleair Bluffs, Pinellas County, Florida 33770 and otherwise *sui generis*.

34. Upon information and belief Defendant Ivan Talanga misappropriated and received funds misappropriated from the Common Businesses and benefited from them in Pinellas County.

35. Defendant Elite Holdings, LLC., is a Florida authorized limited liability company solely owned by the Talangas and principally located at 1925 Dolphin Drive, Belleair Bluffs, Pinellas County, Florida, 33770. See Exhibit G.

36. Upon information and belief Defendant Elite Holdings received funds misappropriated from the Common Businesses and benefited from them in Pinellas County.

37. Defendant Ivan's Auto Repair, Inc is a Florida authorized for profit corporation principally located at 18400 Highway 19 North, Clearwater, Pinellas County, Florida, 33764.

38. Upon information and belief Defendant Elite Holdings received funds misappropriated from the Common Businesses and benefited from them in Pinellas County. See Exhibit G.

39. Pursuant to §26.012, *Fla. Stat.*, this Court possesses jurisdiction over this action because the amount in controversy for each of the individual Common Businesses exceeds $15,000.00 exclusive of pre-judgment interest, court costs, and attorney's fees.

40. Pursuant to §47.011, *Fla. Stat.*, venue is proper in Pinellas County, Florida, because this action arose in Pinellas County, because Defendants conducted business in Pinellas County, and because Defendants owe Plaintiff funds due in Pinellas County.

41. Plaintiff has met or will meet all conditions precedent necessary to proceed with this action by the time the trial commences.

42. Pursuant to §95.011, Plaintiff timely filed this action.

**General Allegations Common to All Counts**

43. The Common Businesses are each governed by operating agreements and both the Common Businesses, the Talangas, and Talanga Holdings are bound by the explicit terms of such operating agreements. See Exhibits A-F.

44. At all times relevant, Zdravko Talanga did not individually possess any ownership interest in any of the Common Businesses.

45. At all times relevant, Darina Talanga did not individually possess any ownership interest in any of the Common Businesses.

46. At all times relevant, Anna Talanga did not individually possess any ownership interest in any of the Common Businesses.

47. At all times relevant Ivan Talanga did not individually possess any ownership interest in any of the Common Businesses.

48. At all times relevant, only Elite Holdings possessed a minority ownership interest in any of the Common Businesses.

49. At all times relevant Repair did not individually possess any ownership interest in any of the Common Businesses.

50. And, specifically regarding Finance, only one member, Cygram Heritage and its corporate representative, Panayiotis Vasiloudes, possessed the authority to enter into financial transactions for the company.

    a. But see Exhibit L where Zdravko Talanga paid his personal attorney funds drawn on Finance's account for personal representation without permission.

    b. And see Exhibit K where Darina Talanga, Ivan Talanga, and Zdravko Talanga diverted funds to a false company, Elite Autos, and then actually deposited funds totaling $49,900.00 into Talanga Holdings personal bank account without permission or authority.

    c. See also Exhibit Q where a Finance client, "B" was called on January 31, 2017 about non-payment for 6 months. B stated that he paid Ivan Talanga $3,500 in cash and had a receipt. Such payment was not in the computer system as being credited to his account. Within one hour of the company contacting B, Ivan Talanga accessed the computer system, on January 31, 2017 and posted a false cash payment of $3,500.00 to B's account. Such funds were never deposited into Finance's account following a review of Finance's banking records.

    d. And, there is increasing evidence that the Talangas created many false loans for phantom vehicles. See Exhibits H-Q.

51. The diversion of funds and co-mingling are not only related to Finance's accounts – the Talangas used and abused the assets of all the Common Business for personal gain.

    a. See Exhibit J where Zdravko Talanga, Darina Talanga, Ivan Talanga, and Anna Talanga diverted funds to a variety of places including their false company, Elite Autos ($10,250.) among others including paying themselves and making a variety of cash withdrawals and co-mingled funds with Villa Anna Assisted Living Facility ($3,500.00).

    b. Also see Exhibits J and H and other bank statements are where the Talangas used company assets to pay off a settlement agreement with Parc Investments.

52. Despite Finance's failing loan portfolio, See Exhibits M and O, and despite corporate resolutions to the contrary See Exhibits A-C, the Talangas refuse to allow the Common Businesses access to their assets. Exhibit P.

53. Michael Kastrenakes (Kastrenakes) possesses extensive experience in motor vehicle sales and financing and owns part of Financial. See Exhibit M.

54. Kastrenakes indicated that the Talangas barred him from entering 18400 US Highway 19 North despite the fact that he is supposed to be managing the assets of Financial, Cars, and Clearwater Cars. *Id.*

55. Before being barred, Kastrenakes determined that the Talangas were wasting company assets and were improperly managing Financial, Cars, and Clearwater Cars by co-mingling funds, diverting funds to their personal use. *Id.*

56. Michael Taylor (Taylor) accompanied Kastrenakes to retrieve the papers, goods, belongings and assets of the Common Businesses and was turned away by the Talangas from 18400 US Highway 19 North.

57. Panayiotis Vasiloudes as corporate representative for Cygram Holdings and Cygram Heritage, majority owners of Villa Anna, Anna Dunedin, Sophia Highland and 1/3 owners of Financial, Cars, and Clearwater Cars determined, Exhibit O, that the Talangas were mismanaging the Common Businesses causing them irreparable harm because:

   a. Approximately ½ of the loan portfolio of Financial was not performing.

   b. The Talangas mismanagement has led to insolvent business entities, irreparably harming them and leading them to imminent collapse.

   c. The Talangas have co-mingled funds and diverted funds to their other business entities including Talanga Holdings and Repair.

   d. The Talangas are diverting funds for personal use including $7,500.00 to pay their personal legal counsel without permission, a $7,500.00 loan from one entity to another without any documentation of the need, and in excess of $65,000.00 in diverted funds from the Common businesses to pay their personal debts.

   e. Historically Zdravko Talanga wasted company assets when he became frustrated.

   f. The Talangas fail to provide our corporate attorney with service of process until the last possible minute before default.

58. The Talangas' financial misdeeds are likely sufficient to:

   a. Ruin the ability of any of the Common Businesses to obtain commercial financing.

   b. Subject all the Common Businesses to having all their current commercial financing cancelled with all promissory notes called due.

   c. Have the Florida Office of Consumer Finance cancel or revoke Finance's licensure status.

   d. Have Villa Anna's licensure investigated.

e. Cause some or all the Common Business to be without sufficient funds to survive and ultimately enter bankruptcy proceedings.

f. Injure Finance's clients such that they find it necessary to file suit over payments made but never posted to their accounts and cause the Common Business to expend even more funds in legal fees and costs.

g. Cause the Common Businesses to expend a significant amount of legal fees, court costs, and filing fees.

### Count I: Injunctive Relief Against All Defendants

59. Plaintiffs restate and reallege paragraphs 1 - 58 above and further state:

60. The Talangas actions are acutely causing immediate and irreparable harm to the companies.

61. The Talangas are diverting and co-mingling funds along with wasting company assets.

62. Time is of the essence because the value of motor vehicles diminishes rapidly over time.

63. The Talangas actions or inactions on behalf of Elite Holdings are causing immediate, irreparable harm to the Common Businesses and their business relationships by destroying the financial credibility of the Common Businesses

64. Plaintiffs possess no adequate remedy at law because the Talangas, Talanga Holdings, and Repair all collectively lack sufficient assets to even begin to remedy the diverted funds much less the harms already suffered and that will be suffered by the Common Businesses.

65. The Plaintiffs' harm far outweighs any hardship created by the entry of an injunction and enforcing the Common Businesses rights benefits the public at large in that those members or shareholders of business entities should not benefit personally to the detriment of their partners or the companies themselves.

66. The actions of the Talangas and Talanga Holdings with regard to such significant funds diversion are in such blatant violation of the Operating Agreements and their duties to their partners and investors that the Plaintiffs possess a substantial likelihood of success on the merits of this action.

### Count II: Civil Conspiracy Against All Defendants

67. Plaintiffs realleges and restate paragraphs 1 – 58 above and further state:

68. The Talangas, *sui generis*, each conspired between themselves to defraud their investors, the Buyers, their partners, and the Common Businesses of corporate funds that were improperly diverted to their own personal use.

69. The Talangas also conspired with Talanga Holdings and Repair to defraud their investors, the Buyers, their partners, and the Common Businesses of corporate funds that were improperly diverted to their own personal use.

70. Co-mingling funds between unrelated business entities in which you personally possess no ownership interest is improper and likely unlawful.

71. Diverting funds from a business entity in which you personally have no ownership interest is improper and unlawful.

72. Theft of funds from a business entity in which you personally have no ownership interest is improper and unlawful.

73. Zdravko, Darina, Anna, and Ivan Talanga each co-mingled, diverted, and stole funds from the Common Businesses that they were neither authorized to access nor were entitled to.

74. Zdravko, Darina, Anna, and Ivan Talanga each committed overt acts to perform these misdeeds such as writing checks, and accessing computer systems to enter false data.

75. The Talangas also conspired to hide their wrongdoing by failing to provide the Common Businesses with necessary documentation or with forged documentation. See Exhibit Q.

76. The Talangas conspired to prohibit the Common Businesses from accessing their own materials and goods by holding all such goods hostage on the Talanga's property.

77. The Common Businesses have all suffered significant economic losses as a result of Zdravko, Darina, Anna, and Ivan Talangas actions.

### Count III: Breach of Fiduciary Duty against the Talangas

78. Plaintiffs realleges and restate paragraphs 1 – 58 above and further state that the Talangas were employees of the Common Businesses and owned Talanga Holdings which itself owned a minority interest in each of the Common Businesses.

79. The Talangas held themselves out as experienced and knowledgeable in the business of motor vehicle financing, motor vehicle sales, assisted living, and renovating assisted living facilities.

80. The Talangas shared a relationship with each of the Plaintiffs by doing business with them on a daily basis and ostensibly working to further each of the Common Businesses interests.

81. The Plaintiffs were confident and trusted the Talangas ability to manage and run the Common Businesses and the Plaintiffs allowed their Members and Shareholders to freely invest in the businesses because of the Talangas supposed expertise.

82. The Talangas accepted the Plaintiffs' trust and themselves undertook a duty to advise and counsel the Common Businesses.

83. But, unfortunately, the Talangas breached their fiduciary duty to the Common Businesses when they used the Common Businesses' funds to pay for their own legal fees, to pay their own personal expenses, to divert funds from the Common Business for their own personal

use; all without either the authority to do so and without the permission to do so. See Exhibits H-L and Q.

84. Plaintiffs suffered significant damages because of Defendants actions.

### Count IV: Accounting against all Defendants

85. Plaintiffs realleges and restate paragraphs 1 - 58 above and further state:

86. Plaintiffs and Defendants each share a fiduciary relationship with each other and all equally entered into a series of complex transactions with loans from one entity to the other.

87. Defendants have likely carried on fraudulent transfers and funds diversions since the Buyers joined the Common Business as noted by the long history of the Talangas using Common Business assets for their personal good – i.e. paying off a settlement related to wrong-doing by using company assets that neither the Talangas nor Talanga Holdings owns.

88. The Talangas held themselves out as experienced and knowledgeable in the business of motor vehicle financing, motor vehicle sales, assisted living, and renovating assisted living facilities.

89. The Talangas shared a relationship with each of the Plaintiffs by doing business with them on a daily basis and ostensibly working to further each of the Common Businesses interests.

90. The Plaintiffs were confident and trusted the Talangas ability to manage and run the Common Businesses and the Plaintiffs allowed their Members and Shareholders to freely invest in the businesses because of the Talangas supposed expertise.

91. The Talangas accepted the Plaintiffs' trust and themselves undertook a duty to advise and counsel the Common Businesses.

92. The Talangas have unilaterally changed corporate records, hidden, diverted, or failed to timely deposit funds received into the Common Businesses. And the Talangas have changed bank accounts and banks along with passwords denying Plaintiffs access to either their assets or funds.

93. A remedy at law is likely inadequate because it is exceedingly unlikely that the motor vehicles the Talangas used to guarantee their promissory notes will be insufficient to provide the Plaintiffs with an adequate remedy.

94. And, a remedy at law is likely inadequate because neither the Talangas, nor Talanga Holdings, nor even Repair possess sufficient funds to repay their debts; or even to remain solvent.

95. As a result the Common Business have sustained significant damages.

### Count V: Unjust Enrichment (all Defendants)

96. Plaintiffs reallege and restate paragraphs 1 – 58 above and further state:

97. Plaintiffs benefited the Defendants by providing them with employment and/or payment for services.

98. Defendants each recognized and possessed knowledge of the benefits conferred by the Plaintiffs by virtue of receive such lawful payment. And because the Defendants improperly diverted assets from the Common Businesses to themselves.

99. Defendants each voluntarily accepted and retained both the rightful payments made to them by the Plaintiffs and those that they removed without authority or permission.

100.     Because the Defendants took the Plaintiffs' assets wrongfully, retaining such assets to the detriment of the Common Businesses would be inequitable unless the Defendants return all the "ill-gotten gains."

**Count VI: Declaratory Judgment Against All Defendants**

101.    Plaintiffs restate and realleges paragraphs 1 – 58 above and further state:

102.    Defendants systematically raided, plundered, and wasted the assets of the Common Businesses such that they are now almost insolvent.

103.    Defendants now prevent the Common Businesses from rightfully accessing their books and records, goods, and belongings.

104.    Plaintiffs now possess a bona fide and actual, present need for a declaration by this Court to permit them access to their books and records, goods, and belongings.

105.    The Plaintiffs books and records, goods, and belongings are held hostage by the Defendants on or at:

   a. The used car lot at 18400 US Highway 19 North, Clearwater, Florida 33764;

   b. The garage at the used car lot at 18400 US Highway 19 North, Clearwater, Florida 33764;

   c. The trailer and office at the used car lot at 18400 US Highway 19 North, Clearwater, Florida 33764;

   d. In the Talangas' home at 1925 1925 Dolphin Drive, Belleair Bluffs, Pinellas County, Florida 33770 or its curtilage including the shed(s) and garage(s);

   e. In the Talangas' café at 2241 Nursery Road, Suite A, Clearwater, Florida 33764;

   f. Or at some other unknown location.

106.    Plaintiffs seek a declaration by the Court that Defendants are neither the lawful nor rightful owners of the books and records, goods, belongings or even the Common Businesses themselves.

107. The Plaintiffs seek to enforce their rights and those of their Members and Shareholders to maintain their ability to conduct business and pay their debts.

108. The Talangas have sufficiently mismanaged the Common Businesses that the Talangas, Talanga Holdings, and Repair now possess an antagonistic and significantly adverse relationship with the other Members and Shareholders of the Common Businesses.

109. This antagonistic relationship will all be before the court by proper process and representation by the time a trial commences.

110. Plaintiffs seek actual relief and not the mere giving of advice. Plaintiffs seek entry of an order requiring that the Defendants immediately provide Plaintiffs with sufficient access to remove all the books and records, goods, and belongings of the Company.

**Prayer for Relief**

Wherefore, Plaintiff respectfully demands judgment against the Defendant(s) for:

a. All applicable economic damages to each of the Businesses including:

   a. Repayment of all diverted funds; and

   b. Repayment of all co-mingled funds;

   c. Reimbursement or repayment for the expenses related to Defendants misdeeds;

   d. Repayment for all overpayments to Repair;

   e. Repayment for all funds transferred to Elite Holdings;

   f. Repayment of all outstanding promissory notes to all Common Businesses, Members, and Shareholders

   g. Prejudgment Interest

   h. Attorney's Fees and Court Costs as applicable

b. All applicable non-economic damages;

## Demand for Jury Trial

Pursuant to the Florida Constitution and to Rule 1.430 F. R. Civ. P., Plaintiff demands a trial by jury for all triable issues and claims.

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was filed with the Hillsborough County Clerk of Court on this date through the Florida Courts E-filing system and will be served upon the Defendants by personal service along with an Emergency Motion for Temporary Injunction.

**Respectfully Submitted this 31st Day of January 2017**

        **The Florida Legal Advocacy Group of Tampa Bay**
        /s/   Adam S. Levine
        Adam S. Levine, M.d., J.D.
        Florida Bar #78288
        1180 Gulf Boulevard, Suite 303, Clearwater, Florida 33767
        (727) 512 – 1969 [Telephone]
        (866) 242 – 4946 [Facsimile]
        aslevine@msn.com [primary E-mail]
        alevine@law.stetson.edu [secondary E-mail].
        Attorney for the Plaintiffs