UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                                    Case No. 8:17-bk-09357-MGW
ZDRAVKO TALANGA and
DARINA TALANGA,
                                                                          Chapter 7
　　Debtors.
_____/


PARC INVESTMENT SERVICES CORP. Florida corporation,


　　Plaintiff,                                                            Adv. Proceeding 8:18-ap-00278-MGW

v.

ZDRAVKO TALANGA, an individual person
And DARINA TALANGA, an individual person,

　　Defendant.
_____/


### FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

Creditor PARC INVESTMENT SERVICES CORP. by and through its undersigned attorney, hereby files its Complaint against Debtor/Defendants to determine the dischargeability of certain debts, pursuant to 11 U.S.C. §523 and/or 11 U.S.C. §727 and in support therein states as follows:

### JURISDICTION AND VENUE

1. On or about December 21, 2017, (the "Petition Date"), the Defendants filed a voluntary petition in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, seeking relief pursuant to Chapter 7 of the United States Bankruptcy Code.

2. Carolyn Chaney has been appointed as Trustee over the case pursuant to 11 U.S.C. § 701.

3. Plaintiff is a creditor of the Defendant and therefore has standing to file this action.

4. Defendants are residents of Belleair Bluffs, Florida.

5. This Complaint commences an adversary proceeding pursuant to Fed. Bankr. P. 7001 *et. seq.*

6. Jurisdiction over this matter and over the Defendant is proper in this district, pursuant to 28 U.S.C. § 727 and 11 U.S.C. § 523.

7. Venue over this matter is proper in this district, pursuant to 28 U.S.C. § 1409.

8. This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and 28 U.S.C. § 157(b)(2).

## FACTUAL BACKGROUND

9. The debt which is the subject matter of this Complaint and of Plaintiff's previously filed Proof of Claim arose from a series of loans made by Plaintiff to the Debtors during a period of time from 2012 to 2014.

10. Plaintiff met Defendants in May of 2012 after being introduced to them by David Bond, a mutual business associate.

11. Defendants represented to Plaintiff that they owned a used car dealership and an auto repair shop. Defendants represented to Plaintiff that they owned numerous real and personal assets in Pinellas County and beyond.

12. From MAY 2012, Defendants carefully cultivated a so-called friendship with Plaintiff by inviting Plaintiff to their home, to meet their children and in general gaining his

confidence through friendly overtures.

13. During this time period, Defendants exhibited a flashy and extravagant lifestyle to convince Plaintiff that they were well-off financially, specifically:

    a. Defendants' lived in a large home in Belleair and had frequent parties with professional entertainment;

    b. Defendants drove flashy cars such as new Mercedes, BMWs and Jeeps, frequently in a different new vehicle each time Plaintiff saw them;

    c. Defendants each wore expensive jewelry such as Rolex watches and necklaces and earrings with precious and semi-precious stones;

    d. Darina Zdravko bought her husband a 24-foot cruiser boat for his birthday;

    e. Defendants bragged about frequent trips that they would take overseas to visit wealthy family members in Yugoslavia; and

    f. Defendants bragged about having substantial assets in Europe.

14. In June of 2012, Defendants asked to borrow $75,000 from Plaintiff for the purposes of increasing vehicle inventory at their car dealership, Elite Cars of Clearwater, Inc.

15. To induce Plaintiff to make this loan, Defendants made certain representations to him regarding the alleged business needs for the funds to increase vehicle inventory.

16. Trusting and relying upon the representations made by Defendants, Plaintiff made the loan in the amount of $75,000 with an interest rate of 15% for a term of one year, which was due in full on July 16, 2014.

17. This loan was documented by the Defendants signing a Letter of Understanding which contained clear repayment terms including due dates. See attached Exhibit 1.

18. In June of 2013, Defendants asked to borrow $105,000 from Plaintiff for the purposes of

completing improvements to a leased building in Largo for its use as a multi-unit assisted living facility.

19. To induce Plaintiff to make this loan, Defendants made certain representations to him regarding the alleged business needs for the funds and the urgency of the matter, ultimately convincing Plaintiff that if this loan were not made, the Defendants would suffer immediate and irreparable business financial harm.

20. Trusting and relying upon the representations made by Defendants, Plaintiff made the loan in the amount of $105,000 with an interest rate of 18% for a term of one year, which was due in full on June 3, 2014.

21. This loan was documented by the Defendants signing an Agreement to Borrow Money which contained clear repayment terms including due dates. See attached Exhibit 2.

22. In January of 2014, Defendants asked to borrow $32,000 from Plaintiff for the purposes of adding a required car park to the Largo assisted living facility.

23. To induce Plaintiff to make this loan, Defendants made certain representations to him regarding the alleged business needs for the funds and the urgency of the matter, ultimately convincing Plaintiff that if this loan were not made, the Defendants would suffer immediate and irreparable business financial harm.

24. Trusting and relying upon the representations made by Defendants, Plaintiff made the loan in the amount of $32,000 with an interest rate of 20% for a term of 90 days, which was due in full on March 20, 2014.

25. This loan was documented by the Defendants signing a promissory note which contained clear repayment terms including due dates. Said promissory note is not available but is referenced in Exhibit 4 herein.

26. In June of 2014, Defendants asked to borrow $50,000 from Plaintiff for the purposes of completing the purchase of the property located at 1679 Tampa Road in Largo, Florida for the purposes of converting same into an assisted living facility.

27. To induce Plaintiff to make this loan, Defendants made certain representations to him regarding the alleged business needs for the funds and the urgency of the matter, ultimately convincing Plaintiff that if this loan were not made, the Defendants would suffer immediate and irreparable business financial harm.

28. Trusting and relying upon the representations made by Defendants, Plaintiff made the loan in the amount of $28,000 with an interest rate of 15.25% for a term of 90 days, which was due in full on September 2, 2014.

29. This fourth loan was funded for less than the originally requested amount because the purpose of the loan changed in that the acquisition of the property was aborted.

30. Shortly after the funding of this fourth loan, the Defendants did repay $10,000 which left a principal balance of $18,000.

31. This loan was documented by the Defendants signing a promissory note which contained clear repayment terms including due dates. Said Promissory Note is not available but is referenced in Exhibit 4 herein.

32. In August of 2014, Defendants asked to borrow $43,000 from Plaintiff for the purposes of increasing vehicle inventory at their car dealership, Elite Cars of Clearwater, Inc. and for general operating cash for said business.

33. To induce Plaintiff to make this loan, Defendants made certain representations to him regarding the alleged business needs for the funds and the urgency of the matter, ultimately convincing Plaintiff that if this loan were not made, the Defendants would

suffer immediate and irreparable business financial harm.

34. Trusting and relying upon the representations made by Defendants, Plaintiff made the loan in the amount of $43,000, funded primarily from Plaintiff's credit cards, with a variable interest rate equal to Plaintiff's credit card interest rate plus 5%, for a term of one year.

35. It was understood and agreed to by the parties on August 7, 2014 that the fourth and fifth loans were consolidated into one loan with a balance of $61,000 and for a twelve month term at the aforementioned variable interest rate.

36. This loan was documented by the Defendants signing a promissory note which contained clear repayment terms including due dates. See attached Exhibit 3.

37. Plaintiff was not a wealthy man, and Defendants were well aware of the fact that a source of at least one of the loans was advances from Plaintiff's personal credit cards yet they had no qualms whatsoever about borrowing large sums of money from the Plaintiff.

38. The purpose of each of the loans was to be for very specific business purposes as aforementioned, and it was clearly understood between the parties that this was the only purpose for each of the loans.

39. Plaintiff never would have made any of the loans to Defendants for any other purpose but for the aforementioned, specific purposes.

40. Immediately after the loans were funded, it became clear that there would be problems getting repaid, and Defendants did not honor the terms of the loan or make timely repayments.

41. All of the loans ended up in default at some point, and Defendants continuously made excuses as to why they were not paid.

42. Also after making the loans, Plaintiff eventually discovered that the monies lent were not used for the intended purposes, but that upon information and belief much of the funds were used to repay other investors and/or for personal purposes such as home improvements.

43. The Defendants did not make payments as agreed, forcing the Plaintiff to file a civil lawsuit against them in Pinellas County, Florida.

44. To avoid litigation, the parties agreed to consolidate the financial obligations into an Interim Loan Agreement on August 10, 2014 which represents a new promise by the Defendants to pay Plaintiff the amount of $273,000 payable in monthly payments of $5,120 commencing August 7, 2014 and for a term of two years. See attached Exhibit 4.

45. Plaintiff, during the time period from February of 2015 all the way through July of 2017 attempted to work with Defendants in good faith to get repaid, and although some payments were made toward the loans, the majority of the so-called payments ended up being checks returned as NSF.

46. Of the total amount loaned a small portion had been repaid prior to the filing of the bankruptcy.

47. The parties entered into a stipulation for a judgment on or about March 20, 2017 which allowed the Defendants additional time to make the agreed upon payments and a lesser total amount of $200,000.. See attached exhibit 5.

48. Defendants defaulted yet again on the stipulated agreement, resulting in a judgment entered against them in the amount of $250,000 on November 2, 2017. See attached Exhibit 6.

49. Defendants immediately filed the pending Chapter 7 bankruptcy case.

50. Despite the Defendants' apparent extravagant lifestyle and representations that they made to induce Plaintiff to loan the aforementioned monies, Defendants were in fact insolvent at the time that they borrowed the money and they were being sued by other individual creditors similar to the Plaintiff.

51. Just prior to filing the bankruptcy, the Defendants transferred the leasehold, and all business operational controls for the location of the car repair shop known as Elite Car Sales of Clearwater to their adult son, Ivan Talanga, who is currently occupying the same location.

52. Just prior to the filing of the bankruptcy, the Defendants caused tools, equipment, inventory and financial data to be removed from the car repair shop.

53. Shortly before filing the bankruptcy and over a two year time period therefrom, the Defendants transferred at least $160,000 into their home in the form of home improvements and mortgage paydowns.

54. On June 29, 2017 the Defendants encumbered their homestead with a mortgage in the amount of $1,169,100 although they listed the value of said property as $850,000 on Schedule A.

55. Shortly before filing the bankruptcy, the Defendants sold a Rolex watch and a diamond ring "somewhere on Seminole Boulevard" according to their testimony under oath at the March 15, 2018 341 Meeting.

56. At the same 341 Meeting, Defendant Zarina Talanga admitted to frequently and liberally using one or more of the business accounts for personal expenses because she could not open a personal checking account.

57. The Plaintiff is listed as a creditor on Defendant's Schedule F

58. The Defendants filed Schedules A & B listing real and personal property and assigning values to same, said filing was made under penalties of perjury.

59. The Defendants filed a Statement of Financial Affairs which was signed under penalties of perjury.

60. The first scheduled 341 Meeting of creditors was December 7, 2014 at which time the Defendants appeared and did not have the documents requested by the Chapter 7 trustee, so the meeting was continued to December 22, 2017.

61. On December 22, 2017 the same thing happened, and the meeting was continued to March 15, 2018.

62. On March 15, 2018, the same thing happened again, and the meeting was continued to April 26, 2018.

63. On April 26, 2018, the meeting was concluded although there are still documents outstanding including but not limited to bank statements for Defendant's numerous business entities.

64. On April 22, 2018 merely four days before the final 341 Meeting, the Defendants closed their "Adriatic Café" business without seeking trustee approval, although said restaurant was operating for years, generating revenue, and represented to be the sole source of income for Zdravko Talanga at the December 7, 2017 Meeting of Creditors.

65. On March 12, 2018, the Defendants filed an amended Statement of Financial Affairs listing numerous partial transfers of business interests and equity which were not previously disclosed by Defendants.

66. At each of the four 341 Meetings, the Defendants made inconsistent statements under oath as to various material issues including but not limited to:The business operations of

the car repair shop;

## COUNT ONE: DETERMINATION OF DISCHARGEABILITY

## UNDER 11 U.S.C. § 523(a)(2)(A)

67. Plaintiff re-alleges and incorporates Paragraphs 1 through 66 herein.

68. Defendants made false representations to Plaintiff in order to obtain credit, both verbally and through written instruments are attached hereto as Exhibits 1, 2, 4 and 7 each of which contain these specific misrepresentations:

    a.    Exhibit 1 "Letter of Understanding" section (1) states expressly that the purpose of the business loan to the Defendants in the amount of $75,000 was to "carry out the purchase, repair and re-sale of a larger volume of additional vehicles." This agreement contains a specific and separate statement signed by DARINA TALANGA which states that she is "asking for a line of credit of $75000. Money will be primarily used for purchasing the vehicles and finish repairing those which need fixing."

    b.    Exhibit 1 "Letter of Understanding" section (10) contains an express statement by the Defendants that they have no outstanding obligations other than those set out in their financial statement.

    c.    Exhibit 2 "Agreement to Borrow Money" states expressly that the Defendants wish to borrow the sum of $105,000 for the exclusive use of completing the works to the leased premises for the assisted living home at 407 7th Avenue S/W in Largo, Florida.

    d.    Exhibit 4 "Interim Agreement" is an agreement between the parties which consolidated the five (5) loans referenced herein into one balance of $273,000, and in this document the Defendants again represented that the use of the funds would be allocated

specifically for specific business purposes, namely:

    (i)    $136,000 for business purposes including working capital for Elite Car Sales of Clearwater, Inc.; and

    (ii)    $136,000 for business purposes including working capital for the "Assisted Living Project."

    e.    Exhibit 7 "Financial Statement for Business" has numerous written mis-representations as well as material omissions including but not limited to:

    (i) Inflation of car inventory with the stated value of $120,000;

    (ii) Inflation of business assets owned, including a Porshe 911 allegedly worth $35,000 with no lien, A double-wide trailer allegedly worth $35,000 with no lien, and the car lot at 18400 U.S. 19 N allegedly worth $650,000 with $205,000 in equity.

    (iii) Omission of court proceedings against Defendants;

    (iv) Omission of current liabilities other than "AA Alliance" with a stated balance due of $315; and

69.    Plaintiff relied upon Defendants' false written statements as well as numerous verbal statements along the same lines as above, and suffered financial harm.

70.    Defendant incurred a financial obligation to Plaintiff through false pretenses and false representations, and said debt is not dischargeable in this bankruptcy under 523(a)(2)(A).

WHEREFORE, the Plaintiff respectfully requests that this Court enter a judgment pursuant to 11 U.S.C. § 523(a)(2)(A) denying the Defendants a discharge as to their liability to the Plaintiff and for such other and further relief as is just.

## COUNT TWO: DETERMINATION OF DISCHARGEABILITY

## UNDER 11 U.S.C. § 523(a)(2)(B)

71.  Plaintiff re-alleges and incorporates Paragraphs 1 through 66 herein.

72.     Defendants made statements in writing about their financial condition including their business experience to induce Plaintiff to extend credit as aforementioned, said written instruments are attached hereto as Exhibits 1, 2, 4 and 7 each of which contain these specific misrepresentations:

      a.        Exhibit 1  "Letter of Understanding" section (1)  states expressly that the purpose of the business loan to the Defendants in the amount of $75,000 was to "carry out the purchase, repair and re-sale of a larger volume of additional vehicles."  This agreement contains a specific and separate statement signed by DARINA TALANGA which states that she is "asking for a line of credit of $75000.  Money will be primarily used for  purchasing the vehicles and finish repairing those which need fixing."

      b.        Exhibit 1 "Letter of Understanding" section (10) contains an express statement by the Defendants that they have no outstanding obligations other than those set out in their financial statement.

      c.        Exhibit 2 "Agreement to Borrow Money" states expressly that the Defendants wish to borrow the sum of $105,000 for the exclusive use of completing the works to the leased premises for the assisted living home at 407 7th Avenue S/W in Largo, Florida.

      d.        Exhibit 4 "Interim Agreement" is an agreement between the parties which consolidated the five (5) loans referenced herein into one balance of $273,000, and in this document the Defendants again represented that the use of the funds would be allocated specifically for specific business purposes, namely:

    (i) $136,000 for business purposes including working capital for Elite Car Sales of Clearwater, Inc.; and

    (ii) $136,000 for business purposes including working capital for the "Assisted Living Project."

  e. Exhibit 7 "Financial Statement for Business" has numerous written mis-representations as well as material omissions including but not limited to:

    (i) Inflation of car inventory with the stated value of $120,000;

    (ii) Inflation of business assets owned, including a Porshe 911 allegedly worth $35,000 with no lien, A double-wide trailer allegedly worth $35,000 with no lien, and the car lot at 18400 U.S. 19 N allegedly worth $650,000 with $205,000 in equity.

    (iii) Omission of court proceedings against Defendants;

    (iv) Omission of current liabilities other than "AA Alliance" with a stated balance due of $315; and

73. Plaintiff relied upon each of these statements, believing them to be true.

74. The statements were false.

75. Plaintiff suffered damages as a direct result of Plaintiff's actual fraud.

76. Defendant incurred a financial obligation to Plaintiff through actual fraud and said debt is not dischargeable in this bankruptcy under 523(a)(2)(B)

WHEREFORE, the Plaintiff respectfully requests that this Court enter a judgment pursuant to 11 U.S.C. § 523(a)(2)(B) denying the Defendants a discharge as to their liability to the Plaintiff and for such other and further relief as is just.

## COUNT THREE: DETERMINATION OF DISCHARGEABILITY

## UNDER 11 U.S.C. § 727 (a)(2)(A)

77. Plaintiff re-alleges and incorporates Paragraphs 1 through 66 herein.

78. Within one year of the filing the bankruptcy case, the Defendant transferred property including business ownership and control of the car repair shop, as well as personal property.

79. Within one year of filing the bankruptcy case, the Defendants engaged in a scheme to use investor money to make home improvements and mortgage paydowns on their primary residence with the goal being to "protect" the homestead property from bankruptcy and creditors.

80. Within one year of the filing of the bankruptcy case, the Defendants transferred and/or concealed assets of the bankruptcy estate namely the assets and inventory of the car dealership of which they had an ownership interest, and there has of yet been no explanation as to what happened to the car inventory.

81. Defendants should be denied a discharge because they have hindered the trustee by transferring pre-petition assets in an effort to thwart justice in this bankruptcy Court.

WHEREFORE, the Plaintiff respectfully requests that this Court enter a judgment pursuant to 11 U.S.C. § 727(a)(2) denying the Defendants a discharge and for such other and further relief as is just.

## COUNT FOUR: DETERMINATION OF DISCHARGEABILITY

## UNDER 11 U.S.C. § 727 (a)(2)(B)

82. Plaintiff re-alleges and incorporates Paragraphs 1 through 66 herein.

83 After the filing of the bankruptcy, the Defendants, with intent to hinder, delay or defraud

their creditors, destroyed property of the bankruptcy estate namely the successfully operating Adriatic Café with said business owned 50% by the Defendants.

84. Wasting property of the bankruptcy estate is forbidden in bankruptcy and calls for a denial of discharge.

WHEREFORE, the Plaintiff respectfully requests that this Court enter a judgment pursuant to 11 U.S.C. § 727(a)(2)(B) denying the Defendants a discharge and for such other and further relief as is just.

## COUNT FIVE: DETERMINATION OF DISCHARGEABILITY

## UNDER 11 U.S.C. § 727 (a)(3)

85. Plaintiff re-alleges and incorporates Paragraphs 1 through 66 herein.

86. Throughout the course of this case, including of course all of the 341 Meetings that had to be continued, Defendants failed to provide the necessary documents to the trustee.

87.. It is believed that Defendants may have destroyed evidence of their financial misdeeds in order to conceal these transactions from the trustee.

88. As owners of numerous businesses, Defendants had a duty to maintain financial books, documents, records and papers kept in the ordinary course of business and they have either failed to do so, or they refuse to provide same to the trustee.

89. Defendants should be denied a discharge because they have hindered the trustee by concealing and/or failing to provide necessary financial documents in an effort to thwart justice in this bankruptcy Court.

WHEREFORE, the Plaintiff respectfully requests that this Court enter a judgment pursuant to 11

U.S.C. § 727(a)(3) denying the Defendants a discharge and for such other and further relief as is just.

## COUNT SIX: DETERMINATION OF DISCHARGEABILITY

## UNDER 11 U.S.C. § 727 (a)(4)(A)

90. Plaintiff re-alleges and incorporates Paragraphs 1 through 66 herein.

91. The Schedule B listed certain bank accounts but not all of the bank accounts which Defendants had access to were disclosed, as Zarina Talanga later admitted that she is a signor on the Villa Anna bank account at Synovus Bank.

92. Schedule A undervalues significantly the primary residence at $800,000 when in fact they recently obtained a mortgage for over $1,200,000 and the home has an oversized heated pool, tennis court, extended verandah seating 50-75 people, as well as numerous other upgrades.

93. Schedule B does not disclose any jewelry although it is known that the Defendants own and wear jewelry of significant value.

94. Defendants made material misrepresentations and false oaths in their sworn schedules in an effort to thwart the trustee and to hide assets from creditors and such actions are forbidden in bankruptcy and call for a denial of discharge.

WHEREFORE, the Plaintiff respectfully requests that this Court enter a judgment pursuant to 11 U.S.C. § 727(a)(4)(A) denying the Defendants a discharge and for such other and further relief as is just.

DATED on this 27th day of September, 2018.

Respectfully submitted,

        __/s/Samantha L. Dammer_____
**SAMANTHA L. DAMMER, ESQUIRE**
Florida Bar No.: 0036953
Tampa Law Advocates, P.A.
620 East Twiggs Street, Suite 110
Tampa, FL 33602
Ph: (813) 288-0303
Fx: (813) 466-7495
Attorney for Creditor
sdammer@attysam.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 27th day of September, 2018, a true and correct copy of the foregoing was sent by CM/ECF Electronic mail to all parties of interest on the Court's CM/ECF System.

Respectfully submitted,

        __/s/ Samantha L. Dammer_____
**SAMANTHA L. DAMMER, ESQUIRE**
Florida Bar No.: 0036953
Tampa Law Advocates, P.A.
620 East Twiggs Street, Suite 110
Tampa, FL 33602
Ph: (813) 288-0303
Fx: (813) 466-7495
Attorney for Creditors
sdammer@attysam.com