UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                    Case: 8:17-bk-09357-MG
                                                          Chapter 7
ZDRAVKO TALANGA and
DARINA TALANGA,
                    Debtors,

_____/

ELITE FINANCIAL EDGE, LLC., *et. al.,*
                    Plaintiffs,

          v.                                              Adv. No. 8:18-ap-00049-MGW

ZDRAVKO TALANGA, an individual person
and DARINA TALANGA, an individual person,
                    Defendants

_____/

**CREDITORS' JOINT MOTIONS FOR: 1) RECONSIDERATION AND REHEARING OF ORDER APPROVING BUT LIMITING THE MEDIATED SETTLEMENT AGREEMENT; 2) APPROVING THE SALE OF PENDING PRE-PETITION ASSETS TO DEBTORS; AND 3) FOR STAY OF THE MEDIATED SETTLEMENT AGREEMENT AND INCORPORATED MEMORANDUM OF LAW**

Through undersigned, Creditor-Plaintiffs most respectfully request that this Court: 1) Reconsider its September 18, 2019 Order (*In Re: Talanga,* 8:17-BK-09357, Doc. 179) to approve but limit the Mediated Settlement Agreement (MSA); 2) Approve the sale of all necessary pre-petition Estate assets to Debtors, **that were noticed for sale under negative notice on February 6, 2019,** so that debtors can fulfill their part of the bargain explicitly agreed to in the MSA; and 3) Issue a temporary of Stay of the MSA (*In Re: Talanga,* 8:17-BK-09357, Doc. 155) to prevent irreparable harm to Creditors and set these matters for hearing as necessary.

The MSA was opposed by the Trustee (*In Re: Talanga,* 8:17-BK-09357, Doc. 161) and another adverse party (*In Re: Talanga,* 8:17-BK-09357, Doc. 160) because the explicit terms of the MSA required that Debtors transfer 5 pre-petition assets to the Creditors including: 1) All Debtor's ownership interests in Anna Dunedin Realty; 2) All Debtor's ownership interests in Elite

1

Financial Edge, LLC; 3) Any legal claims against Adam Levine and the Florida Legal Advocacy Group; 4) Any legal claims against Cygram Heritage, LLLP; and 5) Any legal claims against Cygram Holdings, LP.

**But this Court approved the sale of Anna Dunedin Realty, LLC., and Elite Financial Edge, LLC., to Debtors at that Hearing. And without objection and pursuant to negative notice, on February 6, 2019 the Trustee noticed the private sale to the Debtors of all claims against Adam Levine, the Florida Legal Advocacy Group, Cygram Heritage, LLLP, and all others. But to date, the Court has not yet approved this sale that was filed under negative notice without any objections having been filed. Once approved, Debtors owned, will own, or should own, all assets necessary to fulfill their part of the bargain, without limitation, under the MSA.**

The MSA was mutually drafted requiring that the Creditors: 1) transfer to Debtors a pre-petition asset (all Creditor's ownership interests in Villa Anna Assisted Living Facility, LLC); 2) Release a mortgage on Debtors' real property located at 1925 Dolphin Drive; 3) Release all claims against Debtors' adult children Anna and Ivan Talanga; and 4) Release all claims against Debtors' partially owned business interests including Elite Holdings, LLC., and the Talanga Family Irrevocable Trust. See *In Re: Talanga,* 8:17-BK-09357, Doc. 155.

After objecting to the MSA but prior to hearing on the Motion to Approve it, the Trustee noticed the two of five remaining pre-petition assets for sale to the Debtor including: 1) All ownership interests in Anna Dunedin Realty; and 2) All ownership interests in Elite Financial Edge, LLC.[1] Despite opposition and based on Council Oaks Criteria, the Court approved the post-

---

[1] The other three were noticed under negative notice provisions without objection on February 6, 2019.

mediation sale of the two remaining pre-petition assets. But, in the same Order, and absent all Parties consent, the Court modified the explicit terms of the MSA to exclude the remaining three pre-petition Estate assets [1) Any legal claims against Adam Levine and the Florida Legal Advocacy Group; 2) Any legal claims against Cygram Heritage, LLLP; and 3) Any legal claims against Cygram Holdings, LP.] that had been noticed for sale in on February 6, 2019 without objection.

Because Creditors will not receive the full benefit of the bargain they struck, and because Debtors will unreasonably benefit from this modified agreement, Creditors now seek the Court's reconsideration to either approve or disapprove the MSA as originally written and executed, and: if approved, approve the Trustee's to sell all claims to the Debtors as noticed on February 6, 2019 and permit the Debtors to meet the terms of their bargain. If the Court disapproves of this sale, despite there having been no objections, Creditors request that the Court void the MSA and set the Adverse action for trial.

During the pendency of this Motion, Creditors respectfully request that the Court enter a temporary stay in the MSA to prevent irreparable harm to the Creditors and allowing Creditors to: 1) delay transfer to Debtors a pre-petition asset (all Creditor's ownership interests in Villa Anna Assisted Living Facility, LLC); 2) Delay release of a mortgage on Debtors' real property located at 1925 Dolphin Drive and pursue foreclosure; 3) Delay release all claims against Debtors' adult children Anna and Ivan Talanga and immediately pursue action in State Court; and 4) Delay release of all claims against Debtors' partially owned business interests including Elite Holdings, LLC., and the Talanga Family Trust and pursue actions in State Court. Creditors state:

1. Creditors sued Debtors to prevent discharge pursuant to U.S.C. §§ 523(a)(2)(A) and 523(a)(4) because Debtors' breached a settlement agreement reached in *Elite Financial*

*Edge, LLC.,* v. *Zdravko Talanga,* Pinellas County Case #2017-00681-CI. See 8:18-AP-0049-MGW, Doc 43.

2.  Creditors alleged that through a complex series of business relationships and jointly owned companies with Debtors, including but not limited to Elite Financial Edge, LLC., Anna Dunedin Realty, LLC., and Villa Anna Assisted Living Facility, LLC., that Debtors' misdeeds caused Creditors significant economic harms and losses. *Id.*

3.  Notably, the complex series of business relationships primarily included Florida limited liability companies that were owned: *Id.*

    a.  by the Creditors directly and indirectly through Creditors Cygram Heritage, LLLP and Cygram Holdings, LP; and

    b.  by the Debtors' directly and indirectly through Elite Holdings, LLC. Where Debtors testified during several 341 Hearings that Elite Holdings, LLC, was owned either 60 or 70% by Debtors and 30 or 40% by Debtors' adult children, Anna and Ivan Talanga.

4.  On March 11, 2019, in the Adversary Proceeding related to this case, *Elite Financial Edge, LLC.,* v *Talanga,* 8:18-AP-0049-MGW, Doc. 77, the Court Ordered Mediation.

5.  Importantly, while not noticing the sale of the Debtor's interests in either Anna Dunedin Realty, LLC., or Elite Financial Edge, LLC., before this Court-ordered Mediation, the Trustee did in fact notice the private sale of potential litigation claims against "Adam Levine, Cygram Heritage, LLLP, and others as may be determined," on February 6, 2019. *In Re: Talanga,* 8:17-BK-09357-MGW, Doc. 138. No objections were ever filed.

6.  On May 2, 2019 Mediation resulted in an MSA that was mutually negotiated, where all Parties were represented by Counsel; the Trustee was not present. *Id.* Docs. 79 and 155.

7.  The Parties to the MSA, *Id.* Doc. 155., included:

   a.  The Debtors Darina and Zdravko Talanga in addition to their Non-Party adult
       children Anna and Ivan Talanga, their pre-petition business entities including Elite
       Holdings, LLC, and the Talanga Family Irrevocable Trust, and their "predecessors,
       successors, assigns, parents, subsidiaries, affiliates, offices, directors, shareholders,
       agents, employees, servants, attorneys [specifically (including but not limited
       to…David Delrahim and Englander Fisher)], and representatives, as well as their
       respective heirs, personal representatives, successors and assigns." *Id.*

   b.  The Creditors Elite Financial Edge, LLC, Elite Car Sales, LLC, Elite Car Sales of
       Clearwater, Inc., Anna Dunedin Realty, LLC, Sophia Highland Realty, LLC, Pat
       Margas, Helen Vasiloudes, and Panayiotis Vasiloudes, Cygram Heritage LLLP,
       and Cygram Holdings, LP., and their "predecessors, successors, assigns, parents,
       subsidiaries, affiliates, offices, directors, shareholders, agents, employees, servants,
       attorneys [specifically (including but not limited to Adam Levine and The Florida
       Legal Advocacy Group…)], and representatives, as well as their respective heirs,
       personal representatives, successors and assigns." *Id.*

   c.  The Parties to the MSA included both Creditors and Debtors as well as third parties
       associated with Creditors and Debtors who were not party to either the Bankruptcy
       Petition or the related Adversary Proceeding.

8.  At issue here, the Mediated Settlement, *In Re; Talanga,* 8:17-BK-09357-MGW, Doc. 155,
    included an express Mutual Release on pages 3 and 4 stating:

   > **6. Mutual Release.** In consideration of the payments and actions called for
   > herein, each of the Parties, on behalf of themselves and their respective
   > predecessors, successors, assigns, parents, subsidiaries, affiliates, officers,
   > directors, shareholders, agents, employees, servants, attorneys and

representatives, as well as the respective heirs, personal representatives, successors and assigns of any or all of them fully, finally and forever release, acquit and discharge the other Parties and any affiliated company of the respective party and the children of each respective Party, their respective predecessors, successors, assigns, parents, subsidiaries, affiliates, officers, directors, shareholders, agents, employees, servants, attorneys and law firms (including but not limited to Adam Levine, Florida Legal Advocacy Group of Tampa Bay, David Delhrahim and Englander Fischer) and representatives, as well as the respective heirs, personnel representatives, successors, and assigns of any or all of them of and from any and all claims, demands, debts, actions, causes of action, suits, contracts, agreements, obligations, accounts, defenses, offsets and liabilities of any kind or nature whatsoever, known or unknown, suspected or unsuspected, in contract or in tort, at law or in equity, from the beginning of time to the date of this Agreement, which the Parties ever had, now have, may have, or claim to have, against each other, including but not limited to claims, demands, debts, actions, causes of action, suits, contracts, agreements, obligations, accounts, defenses, offsets and liabilities of any kind arising out of or related to the Lawsuit and the facts, acts or omissions that are the subject of the Lawsuit. Except that nothing herein will prohibit or release anyone other than the Defendants from loans owed to Elite Financial Edge, LLC. Any and all liens, judgement liens, mortgages or encumbrances taken by Plaintiff(s) and against Defendant(s) shall be dissolved, satisfied or otherwise removed by plaintiff within 15 days of the settlement being approved by the Court.

9.  The MSA, *Id.*, also included terms requiring that the Debtors:

    a.  Transfer to Cygram Heritage, LLLP, a pre-petition asset consisting of Elite Holding, LLC's 33.33% ownership interest in Elite Financial Edge, LLC; and

    b.  Transfer to Cygram Heritage, LLLP, a pre-petition asset consisting of Elite Holding, LLC's 49.9% ownership interest in Anna Dunedin Realty, LLC; and

    c.  Not to object to Creditor's claim to be owed $3,000,000.00 that would ultimately be discharged if the Bankruptcy Petition were ultimately approved; and

    d.  Debtors to bear their own costs; and

    e.  Debtors not to file any further legal actions against Creditors related to their past business relationship(s); and

10. And the MSA, *Id.*, required the Creditors:

    a. Transfer to Debtor Darina Talanga Cygram Heritage, LLLP's 50.1% ownership interest in a pre-petition asset consisting of its ownership in Villa Anna Assisted Living Facility, ALF; and

    b. To dismiss the Adversary Proceeding, 8:18-AP-0049-MG within 15 days of approval; and

    c. Release a Mortgage against Debtor's home at 1925 Dolphin Drive within 15 days of approval; and

    d. Creditors to bear own costs; and

    e. Creditors not to file any further legal actions against Debtors' adult children Anna and Ivan Talanga and Debtor's Business interests that are contingent estate assets including Elite Holdings, LLC, and the Talanga Family Irrevocable Trust.

11. The MSA required a writing executed by each of the Parties for modification. There were no provisions for Court modification, only for approval. And, the MSA required that, "13. All matters affecting the execution, interpretation, validity and enforceability of this Agreement shall be subject to and interpreted under, the laws of the State of Florida. *Id.*

12. On May 23, 2019, another adverse party objected to the Court's approval of the MSA because it contained pre-petition assets. *In Re: Talanga,* 8:17-BK-09357, Doc. 160.

13. On June 4, 2019 the Trustee also objected to the Court's approval of the MSA because it contained pre-petition assets. *In Re: Talanga* 8:17-BK-09357, Doc. 161.

14. But, despite the Trustee's objection to the MSA, on July 31, 2019 the Trustee filed a Notice of Intention to Sell two of the five pre-petition Estate interests,  Anna Dunedin Realty,

LLC., and Elite Financial Edge, LLC to Debtors that were required by the MSA. *In Re: Talanga,* 8:17-BK-09357-MGW, Doc. 167.

15. On September 4, 2019, during the hearing to approve the MSA, *In Re: Talanga,* 8:17-BK-09357-MGW, Doc. 176, the Court only approved the sale of two pre-petition assets without discussing the three remaining that had been negatively noticed on February 6, 2019.

16. And on September 18, 2019 the Court entered an Order approving a unilaterally Court-modified[2] MSA that significantly limited the mutually negotiated terms in its release by specifically excepting potential[3] claims against third parties including Adam Levine, The Florida Legal Advocacy Group of Tampa Bay, Cygram Heritage, LLLP., and Cygram Holdings, LP., that had been noticed for sale on February 6, 2019. *In Re: Talanga,* 8:17-BK-09357-MGW, Doc. 179.

Accordingly, Creditors most respectfully request that the Court reconsider the September 18, 2019 Order (*In Re: Talanga* 8:17-BK-09357, Doc. 179) that materially modified the terms of the MSA between the Parties and limited the benefit(s) due Creditors while unjustly enriching the Debtors.

### *The Court May Approve or Disapprove, But Not Modify, Explicit Terms of a MSAs*

The Eleventh Circuit favors and encourages settlements in order to conserve judicial resources. *Murchison* v. *Grand Cypress Hotel Corp.,* 13 F.3d 1483, 1486 (11th Cir. 1994). Pursuant to 28 U.S.C. §157, this Court may adjudge core proceedings including the approval or disapproval of MSAs as a matter concerning the administration of the Estate. 28. U.S.C. §157(b)(2). In *Affiliati,*( *Affiliati Network, Inc. v. Isaac*, No. 17-24054-CIV, 2018 WL 3730898, at

---

[2] Creditors object and objected to this modification and do not approve of any such modification because it unfairly limits the bargain they negotiated in good faith as part of the Mediation process and MSA.
[3] Aside from a non-specific allegation, no actual claims have been raised against either Adam Levine, the Florida Legal Advocacy Group, Cygram Heritage, LLLP or Cygram Holdings LP.

*2 (S.D. Fla. May 11, 2018), *report and recommendation adopted*, No. 17-24054-CIV, 2018 WL

6653078 (S.D. Fla. Sept. 17, 2018), the court determined that, "The construction and enforcement

of settlement agreements are governed by principles of state contract law. *Hayes v. Nat'l Serv.*

*Indust.,* 196 F.3d 1252, 1254 (11th Cir. 1999); *Schwartz v. Fla. Bd. Of Regents*, 807 F.2d 901, 905

(11th Cir. 1987).

And, under Florida law, "there must be a meeting of the minds as to the essential settlement

terms in order for settlement agreements to be enforceable." *Martins v. Royal Caribbean Cruises,*

*Ltd.,* No. 15-21124-CV, 2017 WL 1345117, at *16 (S.D. Fla. Apr. 12, 2017) (citation omitted).

"[C]ourts look to traditional notions of offer and acceptance ... to determine whether an enforceable

contract exists." *Vital*, 2007 WL 1655421, at *6 (citing *Robbie v. City of Miami*, 469 So.2d 1384,

1385 (Fla. 1985) ) Most importantly, under Florida Law, courts may not modify or construe

explicit terms in a settlement agreement.

**The Third District held in *Columbo* that "Settlement agreements are construed**

**according to principles of contract law, *Colombo v. Puig*, 793 So. 2d 1080, 1080–81 (Fla. Dist.**

**Ct. App. 2001) (quoting *De Cespedes v. Bolanos*, 711 So.2d 216 (Fla. 3d DCA 1998), and**

**where…there is an express provision in a settlement agreement, the courts may not modify**

**or construe those terms. *Colombo v. Puig*, 793 So. 2d 1080, 1080–81 (Fla. Dist. Ct. App. 2001).**

The, "[P]arties have broad discretion in fashioning the terms of a settlement agreement,

and courts must enforce a settlement agreement so long as the parties agree on the essential terms

and seriously understand and intend to be bound by the terms." *Swisher Intl., Inc.,* v. *Encore*

*Vapor, Inc.,* No. 3:16-CV-437-J-32PDB, 2018 WL 707421, at *2 (M.D. Fla. Feb 5, 2018) (*quoting*

*U.S. Bank Nat'l Ass'n* v. *Benoit,* 190 So. 3d 235, 237 (Fla. Dist. Ct. App. 2016). "The law in the

Eleventh Circuit is clear and unequivocal on this point: a court may enforce the terms of

a settlement agreement when the parties have agreed upon all material terms, even when those agreements are oral." *Zamber* v. *Am. Airlines, Inc.,* No. 16-23901-CIV, 2019 WL 2262914, at *14 (S.D. Fla. May 28, 2019). But neither any precedent nor any statutory language in 28. U.S.C. §157 authorizes a court to modify the explicit terms of a settlement agreement.

Here, the MSA was mutually negotiated, drafted, and contained all necessary, explicit terms where all Parties to the underlying litigation in addition to various third parties related to both Debtors and Creditors were represented by Counsel in addition to a Court-appointed, experienced mediator. As required under the Florida Statutes and Rules of Procedure, the settlement agreement, or contract, was attached to the Motion for Approval. There can be no reasonable question as to the existence of a contract. While a review of the Eleventh Circuit did find that courts may strike language in settlement agreements purporting to allow the Parties to amend such agreements following a judicial order, these cases were not contract related and pertained to the Fair Labor Standards Act. See *Fontanez* v. *E. US Trading Co., Inc.,* No. 6:16-CV-1917ORL41GJK, 2017 WL 3022928 (M.D. Fla. July 17, 2017), *Dominguez* v. *Circle K. Stores, Inc.,* No. 11-23196-CIV, 2013 WL 4773629 (S. D. Fla. Sept. 4, 2013) and *Tipton* v. *Patel,* No. 6:16-CV-286 ORL 28 KRS, 2016 WL 11582481 (M.D. Fla. Sept 16, 2016).

If the court finds the settlement agreement unacceptable rather than modify it, the court may disapprove the settlement and order that the parties return to mediation and modify the settlement agreement among themselves. If a new deal may be struck, the parties may then file a modified settlement agreement with the court for approval. See *Sutton* v. *Clayton Hospitality Group, Inc.,* No. 6:14-CV-571-ORL, 2015 WL 4066915 at •6 (M.D. Fla. June 30, 2015).

In *Lofton,* the court modified a settlement agreement after such a modification was recommended by the Magistrate but not opposed by either party. See *Lofton* v. *LL & J Concrete,*

*Inc.,* No. 5:17-CV-91-OC-41PRL, 2017 @L 4810781 (M.D. Fla. Oct. 25, 2017). Here, Creditors

strenuously object to the modification of language that required a great deal of time, effort, and

consideration during the negotiation. The result of the Court's Order modifying the language of

the MSA will be to cause significant irreparable harm to the Creditors and their associated third

parties by exposing them to future potential litigation while at the same time limiting Creditors'

rights to access the Courts[4] and pursue Debtor-related third parties; require that Creditors'

gratuitously surrender a mortgage against the Debtor's home[5] that will survive Debtors'

Bankruptcy Petition if ultimately successful; dismiss their Adversary Complaint; and finally

transfer all ownership interests in Villa Anna Assisted Living Facility, LLC., to Debtors. All to

Creditors' detriment while significantly, materially, and unjustly enriching the Debtors and their

related third parties and business interests.

### *Council Oaks Criteria permit the Court to Fashion a Remedy to Fulfill the Terms of an MSA*

During Hearing on the Motion to Approve the Settlement, 8:17-BK-09357, Doc. 176., the

Court stated,

> In response, the Debtors have negotiated with the Trustee a sale of the property
> needed to consummate the settlement, and that's the subject of a Notice of Intention
> to Sell. And so, it would be necessary for this Court to overrule any objection to the
> sale or to consummate the settlement. Settlements in bankruptcy are governed by a
> case called *Justice Oaks.* It's an Eleventh Circuit case. And it gives the Trustee and
> the parties much leeway in terms of effecting a settlement, even if the settlement
> isn't the best case that could occur so long as, overall, it makes sense to the Estate
> and it's fair and equitable. And it's an outcome that's in the range of the worst that
> probably would be probable to occur in litigation. Settlements are generally favored
> because they resolve complex and difficult litigation, often that's been pending for
> months, if not years. *In Re: Talanga,* 8:17-BK-09357, Doc. 176, p. 27. l. 10-25 and
> p. 28. L.1.

---

[4] A right protected by the Florida Constitution.
[5] A home that Debtors intend to maintain post-Bankruptcy if indeed the Bankruptcy itself is
successful.

Further, the Court stated, "I will overrule any objection to the reported notice of intention to sell, so long as it's clear that the compromise does not affect any post-petition cause of action and I'll also approve the motion to approve the compromise of controversy." *Id., p. 28, l 6-10.* During argument while considering another adverse parties' desire to bid the Court added, "…And we don't really have an apples to apples situation, which could result in any meaningful bids, so I'm not going to allow any competing bids in the compromise. We either stand or fall under its terms. And based on what I've said earlier, I will approve the compromise as set forth in the Motion to Approve the compromise…" *Id., p. 32. L. 12-19.* Missed, was any approval or discussion of the previously noticed sale from February 6, 2019.

While Court permitted the sale of two of the five necessary pre-petition assets to the Debtor (including a Shed, Debtors' ownership interests in Anna Dunedin Realty, LLC., and Debtors' ownership interests in Elite Financial Edge, LLC.), missed, was any approval or discussion of the previously noticed sale from February 6, 2019 of the remaining three pre-petition assets. Because the Debtors have purchased or will purchase two pre-petition assets in addition to already having purchased their personal goods from the Estate, and because the three remaining pre-petition assets are only potential in nature and were noticed under negative notice without objection, the Court should, in the interest of justice, approve the sale of the remaining Estate assets to Debtors to satisfy their part of the MSA bargain.

Justice because the explicit terms of the MSA applies to the third parties being excluded from the general release wherein it is conceivable that the MSA could have the effect of potentially prohibiting these third parties [Adam Levine, the Florida Legal Advocacy Group of Tampa Bay, Cygram Heritage, LLLP., (both a creditor and a third

party for whom the Trustee is attempting to sell potential litigation futures) and Cygram

Holdings, LP., (also a creditor and a third party for whom the Trustee is also attempting to

sell potential litigation futures)] from filing their own claims against the Debtors and their

related third parties and thus limiting their access to the Florida Courts and pursuing and/or

defending themselves. See *In Re: Talanga* 8:17-BK-09357-MGW, Doc. 138.

### *The Court Should Not Harm a Creditor By Modifying an MSA*

The Court Ordered, "The parties' settlement is approved. The settlement does not release

any of the Debtors' potential prepetition claims against any third party, including any potential

professional negligence claim against Adam Levine. All the Debtors' prepetition claims remain

property of the estate." (8:17-BK-09357, Doc. 179). But the MSA included a Mutual Release for

potential claims against third parties and Adam Levine stating:

> In consideration of the payments and actions called for herein, each of the
> Parties…, fully, finally and forever release, acquit and discharge the other Parties
> and any affiliated company of the respective party and the children of each
> respective Party, their respective predecessors, successors, assigns, parents,
> subsidiaries, affiliates, officers, directors, shareholders, agents, employees,
> servants, attorneys and law firms (including but not limited to Adam Levine,
> Florida Legal Advocacy Group of Tampa Bay, David Delhrahim and Englander
> Fischer) and representatives, as well as the respective heirs, personnel
> representatives, successors, and assigns of any or all of them of and from any and
> all claims, demands, debts, actions, causes of action, suits, contracts, agreements,
> obligations, accounts, defenses, offsets and liabilities of any kind or nature
> whatsoever, known or unknown, suspected or unsuspected, in contract or in tort, at
> law or in equity, from the beginning of time to the date of this Agreement, which
> the Parties ever had, now have, may have, or claim to have, against each other,
> including but not limited to claims, demands, debts, actions, causes of action, suits,
> contracts, agreements, obligations, accounts, defenses, offsets and liabilities of any
> kind arising out of or related to the Lawsuit.

Importantly, here third parties also include members of the business entities that were jointly

owned between the Debtors and Creditors such as Cygram Heritage. LLLP., and Cygram

Holdings, LP. And these claims had already been noticed for private sale to the Debtors without

objection.

As a result, the Court should reconsider its Order because it unfairly limits the benefit of the bargain to the Creditors and favors the Debtors by allowing potential claims against the Creditors and associated third parties while expressly preventing actual claims against the Debtors' associated third parties. The Order does not appear to comply with the Eleventh Circuit's holding that consideration of a proposed settlement requires consideration of the "paramount interest of the creditors and a proper deference to their reasonable views in the premises." *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir. 1990)(quoting *Martin* v. *Kane (In re A&C Properties),* 784 F. 2d 1377, 1381 (9th Cir.)(quoting *In re Flight Transp. Corp. Sec. Litig.,* 730 F. 2d 1128, 1135 (8th Cir. 1984), *cert. denied,* 469 U.S. 1207, 105 S. Ct. 1169, 84 L.Ed.2d 320 (1985)), *cert denied,* 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed2d 122 (1986)).

By approving a modified MSA, the Court actually prejudiced the Creditors without providing anything but a potential benefit to the Estate; no lawsuits have been filed, no claims actually made, only vague allegations of potential liability made, and these assets were already noticed for sale without objection. Should the Court approve the sale of all pre-petition assets necessary to fulfill their bargain, the Estate will actually realize an actual and immediate benefit.

Approving the already noticed, private sale (February 6, 20019 *In Re: Talanga,* 8:17-BK-09357-MGW, Doc. 138) is permitted under the rules, fulfills the Council Oak Criteria, and will avoid a complex, time consuming, and difficult trial. This alone should permit the Court to reconsider its Order and Approve the Mediated Settlement Agreement without reservation or modification.

**Wherefore**, the Creditors most respectfully request that this Court:

A. Enter a temporary Stay of the MSA until such time as the Court can reconsider its Order; and

B.  Set these matters for hearing as necessary; and either:

C.  Reconsider its Order and Approve of the MSA in its Entirety and without limitation; and

Approve the already noticed sale of the estate assets necessary for the Debtors to fulfill

their part of the MSA bargain; or

D.  Reconsider its Order and Disapprove of the MSA in its Entirety and set the Adverse

Proceeding for Trial.

### Certificate of Service

I certify that a true and correct copy of the foregoing was filed and served

via CM-ECF on all interested parties on this Date.

**Respectfully Submitted this 1st Day of October 2019**

> **The Florida Legal Advocacy Group of Tampa Bay, P.A.**
>  **/s/  Adam S. Levine**
> Adam S. Levine, M.D., J.D.
> Florida Bar #78288
> 1180 Gulf Boulevard, Suite 303, Clearwater, FL 33767
> (727) 512 – 1969 [Telephone]
> (866) 242 – 4946 [Facsimile]
> aslevine@msn.com [Primary E-mail]
> alevine@law.stetson.edu [Secondary E-mail]
> Attorney for Creditors: Academic Alliance in Dermatology, Elite Financial Edge, Elite Car Sales, Elite Car Sales of Clearwater, Anna Dunedin Realty, Sophia Highland Realty, Pat Margas Panayiotis Vasiloudes, Helen Vasiloudes, Cygram Heritage, Cygram Holdings, Adam Levine, and the Florida Legal Advocacy Group